UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

20-CV-3387

KUNTZ, J.
BLOOM, M.J.

**FILED**
**in the Clerk's Office**
**United States District Court,**
**Eastern District of New York**

**JUL 23rd 2020**

**Brooklyn Office**

——————————————————X

Mark Garnes,                                   :

        Plaintiff,                        :

                        :

                        :

        -against-                          :

City of New York,                           :
New York City Police Department
and Detective Douglas W. Carr,     :
Shield No. 5126 (77th Pct.),

                        :

        Defendants.

——————————————————X

**COMPLAINT**
**Docket Number:**
**PRO SE**
**JURY TRIAL DEMANDED**

Plaintiff here, Mark Garnes, Pro Se, alleges herein the complaint as follows:

I
**PRELIMINARY STATEMENT**

1. This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. 1983, 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, as well Discrimination under the Fifth Amendment of the United States Constitution.

1

2.  The claims here derived from an incident with subsequent arrest, search and seizure on May 15th, 2018, in which Detective ("Det.") Douglas W. Carr, Shield No. 5126, acting under the color of law, intentionally and willfully subjected Plaintiff to false arrest and false imprisonment fraudulently and discriminately without probable.

3.  Plaintiff seeks monetary damages (special, compensatory, and punitive) against Defendants, as well as an award of costs and attorney fees (should counsel be retained in this instant matter) and further relief as the Honorable Court deems just and proper.

    The Honorable Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments. Jurisdiction of the court is invoked pursuant 28 U.S.C. Section § 1343. Plaintiff further invokes supplemental jurisdiction pursuant 28 U.S.C. Section 1367, above any and all state court law claims. **This court has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.**

4.  The matter in controversy exceeds $75,000.00 excluding interest and costs.

5.  Venue in this instant matter is within the United States District Court for the Eastern District of New York, in which Defendants, City of New York, New York City Police Department and Det. Douglas W. Carr are located within, hereto the pertinent portions of this incident rest to the claims' occurrence within the boundaries of the Eastern District of New York.

II

**PARTIES**

6. Plaintiff, Mark Garnes is a legal resident of the United States and at all times here relevant resided in Kings County, Brooklyn, New York, a City and State of New York.

7. Defendant, the City of New York is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City of New York, acting through Defendant New York City Police Department ("NYPD") is responsible for the policy, practice, supervision, implementation and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

8. Defendant, Det. Douglas W. Carr, Shield # 5126 was, at all times herewith this instant matter on May 15th, 2018, as a Detective of the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times hereto, Det. Douglas W. Carr was the arresting officer and was under the command of the 77th Precinct of the NYPD. Defendant Detective Douglas W. Carr is being sued in his individual and professional capacity.

3

9. At all times here noted, Defendants were acting under color of State law, to which, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

### III

### NOTICE OF CLAIM

10. Within 90 days of this incident on May 15th, 2018, Plaintiff filed a written **NOTICE OF CLAIM** with the New York City Office of the Comptroller. Over 30 days elapsed since the filing of that notice, with this matter absent of settlement or otherwise disposed of in any manner, procedurally and/or legally.

### IV

### 50-H Hearing

11. On April 25th, 2019, a **50-H Hearing** relevant to this matter was conducted by Daniel L. Schneider, Esq., there at 160 Broadway, 14th Fl., New York, New York 10038. **See Attached** However, to date, Plaintiff has not received the transcripts from this **50-H Hearing** as requested thereon this hearing date as well thereafter. Here also, upon commencement of this action no form of adjustments or payments thereof settlement has incurred thereby disbursement and/or otherwise. Thus, as provided under law, this action has been initiated. In addition, a request for the transcripts were submitted as well a second request thereby FOIL Request. **See Attached**

V

**FACTUAL ALLEGATIONS**

12. Plaintiff is Black/African-American and a citizen residing in the United States.

13. On May 15th, 2018, Plaintiff incurred a domestic issue with ex-girlfriend, Sheniqua Neal that

occurred on the FDR Drive, Northbound in Manhattan (New York County) between East 34th

and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel

Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The

subsequent report on this same date was filed by Det. Carr there at the 77th Pct. **Ex. 4-6a** In

which, Plaintiff's DIR statements inscribed on the DIR forms were discarded, as well all other

forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus

and possibly the photos taken by Officer LeRoux of Plaintiff's injuries to his face, neck and right

bicep. **Ex. 7-13 (Photos of Plaintiff's injuries at scene and of location by Plaintiff's phone)**

**(Photos by Ms. DeJesus (77th Pct., Ex. 14-17)** According to Public Safety DeJesus, Det. Carr

obtained these mentioned forms and documents and discarded them himself, personally.

14. However, only the photos Ms. DeJesus had taken with Plaintiff's phone exist. **See Attached**

**Affidavit, Paragraphs 1-13;**

15. Upon Ms. Sheniqua Neal ("Ms. Neal") entering the 77th Pct., Plaintiff notified Ms. Wilson that

Ms. Neal was here for Plaintiff to return her property as advised by officers assisting Patrolman

Rosario. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Plaintiff. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Plaintiff and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Plaintiff again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Plaintiff's identification. Upon entering the interview room once more, Det. Carr notified Plaintiff he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

16. Det. Carr placed the handcuffs on Plaintiff and did not read nor notify Plaintiff of his rights relevant to this arrest. Plaintiff was not read his rights during the fingerprinting, photo I.D. nor at any time relevant to this arrest, between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

17. Throughout these occurrences at the 77th Pct., Plaintiff received no medical assistance which was requested in the initial DIR filled out by Plaintiff. Ms. DeJesus also inquired whether or not Plaintiff wanted medical assistance, Plaintiff affirmed he did. **See Attached Affidavit, Paragraph 15 See also: NYPD PATROL GUIDE-Section: Prisoners Procedure No:210-04 PRISONERS REQUIRING MEDICAL/PSYCHIATRIC TREATMENT**

18. On May 16th, 2018, Plaintiff was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an **ORDER OF PROTECTION** to remain clear of Ms. Neal was issued.

Ex. 12-13 Upon release Plaintiff returned to the 77th Pct. to pick up copies of the DIR forms Plaintiff filled out. Upon speaking with Ms. DeJesus, Plaintiff requested copies of the DV Report filed by Patrolman Rosario and Plaintiff's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Plaintiff with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Plaintiff Det. Carr had discarded the DIR documents Plaintiff filled out, however, Det. Carr was coming down to speak with Plaintiff. At this time Det. Carr notified Plaintiff the DIR statements Plaintiff inscribed on the forms were discarded. Det. Carr passed Plaintiff three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Plaintiff's face, neck and right bicep. Nor had Plaintiff signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Plaintiff and Ms. Neal in New York County, not Kings County as purported by Det. Carr. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

19. Plaintiff remained confused relevant to this arrest for being the victim as Det. Carr recognized and verbally indicated to Plaintiff. Reasoning with the mandatory arrest laws in domestic violence incidents, Plaintiff became convinced it was more to it than just the arrest. Det. Carr's insight to Plaintiff's criminal history background became an objective, discriminately. Det. Carr verbally noted to Plaintiff, "You've had 8 incidents and arrests of domestic violence with Ms. Neal." Positing here, Plaintiff was illegally and falsely arrested and searched on the premises of discrimination on the premises of sealed and unsealed arrest records as well personal interests

of Det. Carr. In addition, Det. Carr opted to make Plaintiff's birthday unforgettable on this date

thereby humiliating Plaintiff with a false arrest and false imprisonment. **See Attached Affidavit,**

**Paragraph 24**

20. On this same date (May 16th, 2018), Plaintiff, upon returning home from the 77th Pct.

discovered Ms. Neal's house keys on the table. Plaintiff placed them in an envelope, inscribed

Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it.

Plaintiff spoke with Ms. DeJesus upon arrival again at the 77th Pct. on this date, advising her Ms.

Neal's keys were at Plaintiff's house and could Det. Carr give them to her. Plaintiff's objective to

avoid contact with Ms. Neal based on the **ORDER OF PROTECTION.** Ms. DeJesus phoned up to

Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See**

**Attached Affidavit, Paragraphs 27**

21. Hereto on this date, May 16th, Plaintiff went to the 17th Pct. to retrieve a copy of the DV Report

filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth.

**See Attached Affidavit, Paragraph 28 and Ex. 1-3**

22. Thereafter leaving the 17th Pct., Plaintiff went to get an examination of the injuries to his face,

neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

23. On June 29th, 2018 Plaintiff's scheduled court hearing was conducted with a return date of

August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

24. In addition, Plaintiff submitted a complaint to the Civilian Complaint Review Board to investigate these matters as outlined above.

25. In/or about March 2019, CCRB noted their investigation was concluded and would be taken up by one of New York City Police Association Boards. To date, Plaintiff has yet to receive any communication and/or contact from any boards, agencies and/or otherwise on this matter from NYPD or otherwise.

### VI

### FIRST CAUSE OF ACTION:

### FALSE ARREST

28. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and illegally confined Plaintiff without probably cause.

29. On this date, May 15th, 2018, Det. Carr, Shield # 5126, modified and falsified documents for domestic violence without probable cause, in that, no reasonable grounds existed that would warrant arrest of Plaintiff. Hereto, noting, no arrest warrant and/or otherwise existed to justify arrest. To which resulted in an inappropriate and false arrest and illegal confinement.

30. Plaintiff avers as a direct result of this false arrest and  illegal confinement, Plaintiff suffered injuries of humiliation, shame, indignity, therewith emotional and physical distress.

9

31. Plaintiff further notes the damages hereof exceed the jurisdictional amount of all judicial forums below the Honorable Court hereof this instant matter.

## VII

## SECOND CAUSE OF ACTION

## FALSE IMPRISONMENT

32. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff.

33. On this date, May 15th, 2018, Det. Carr, Shield #: 5126 modified and falsified documents for domestic violence without probable cause, in that, no reasonable grounds and/or justification existed that would warrant Plaintiff to be imprisoned and detained against his will. Det. Carr, within the margins of his employment intentionally and personally imprisoned Plaintiff against his will, reasoning this imprisonment and confinement was not privileged nor optional absent probable cause.

34. Plaintiff avers as a direct result of this false arrest therewith illegal confinement, Plaintiff suffered injuries of humiliation, shame, indignity, therewith emotional and physical distress.

35. Plaintiff avers here damages sustained in this matter exceeds the jurisdictional amount thereof the lower judicial forums hereof the Honorable Court.

## VIII

## THIRD CAUSE OF ACTION
## CIVIL RIGHTS VIOLATION FOR
## DENIAL OF MEDICAL ATTENTION
## WHILE IN CUSTODY

36. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield #: 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff without probable cause and denied Plaintiff medical attention while in custody.

37. *On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield #: 5126 were acting and exercising their authority under the color of law maliciously and plausibly with intentional indifference. Defendants failed to secure medical attention required for Plaintiff's injuries. Thus, in such a manner that deprived Plaintiff of his constitutional rights which plausible continual harm (infections from the wounds) and scars from the injuries sustained.*

38. *Reasoning here,* Plaintiff had been injured and negated medical attention by Defendants, to which has embedded mental anguish therewith medical and other expenses (travel/transportation to and from for medical attention) and otherwise damaged in the amount to be determined by a jury.

IX

**FOURTH CAUSE OF ACTION**

**VIOLATIONS OF ARTICLE I, SECTION 6
OF THE NEW YORK CONSTITUTION
AND THE FIFTH AND FOURTEETH
AMENDMENTS OF THE UNITED STATES
CONSTITUTION UPON PLAINTIFF**

39. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield #: 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and detained Plaintiff illegally In violation of the Fifth Amendment of the United States Constitution and Article I, Section 6 of the New York Constitution therewith the Fifth and Fourteenth Amendments of the United States Constitution states that, "No person shall be deprived of life, liberty or property without due process of law."

40. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield # 5126 were acting and exercising their authority under the color of law upon the arrest of Plaintiff fueled by the criminal history and sealed records of arrests for previous domestic violence complaints and/or reports hereof parties mentioned involved on this date of May 15th, 2018, as to the latter. Such parties being Plaintiff and Sheniqua Neal, whom Det. Carr averred to Plaintiff, "You've been arrested over eight (8) times for domestic violence with Ms. Neal."

41. In accord with New York City Police Department's **Detectives Guide, Section: Personnel, Procedure No.: 512-05, SEALED RECORDS PROCEDURE** with policy and practice of maintaining, using, and disclosing sealed arrest records, herewith violation of Criminal Procedure Law (CPL) Sections 160.50 and 160.55 (the sealing statutes) and due process rights under the New York State Constitution, posits Defendants here, with Det. Carr infringed upon Plaintiff's constitutional rights, state and federal.

42. Reasoning, Defendants nor Det. Carr's actions were permissible under the color of law nor exercised constitutionally, to which, Det. Carr and Defendants failed compliance of the mandatory requirements with CPL § 160.50(d) et. al therewith the Constitutions of New York State and the United States. Thus, in violation of Plaintiff's right to due process, holding that this unveiling of Plaintiff's criminal history and sealed records here mentioned motivated Defendants and Det. Carr to violate Plaintiff's Fourth, Fifth and Fourteenth Amendments thereby falsely arresting and falsely imprisoning Plaintiff. In that, Plaintiff has a protected interest in the sealing of these records which, in this instant matter deprived Plaintiff of due process.

**\*42 U.S.C. 1983, in addition to other state and federal laws applicable in this instant matter.**

43. On May 15th, 2018, Defendants, therewith Det. Carr acting under the color of law, without probable cause, just cause, provocation or any reasons to believe that Plaintiff was engaged in any criminal activity, deprived Plaintiff of constitutional rights to be free from false arrest, false imprisonment with such being which probable cause was nullified in each instant. Hereto, Plaintiff was denied medical attention, due process of law. Collectively, thereunder the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, therewith Article I, Section 6 of the New York Constitution, Plaintiff's rights were ignored and violated by Defendants.

**X**

## FOURTH CAUSE OF ACTION

### CIVIL RIGHTS VIOLATION
### OF PLAINTIFF

44. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and detained Plaintiff illegally.

45. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield # 5126 were acting and exercising their authority under the color of law upon falsely arresting and falsely imprisoning, denial of medical attention and advantageous and unwarranted use of Plaintiff's criminal history and sealed criminal records in violation of 42 U.S.C. 1983, in addition to other state and federal laws applicable in this instant matter.

**XI**

### FIFTH CAUSE OF ACTION

### INTENTIONAL AND NEGLIGENT INFLICTION
### OF EMOTIONAL DISTRESS UPON PLAINTFF

46. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff.

47. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield #: 5126 exercised intentional and reckless disregard to the

14

consequences of their actions and caused Plaintiff severe emotional distress throughout their actions with this incident/ordeal of false arrest and false detainment with denial of medical attention, failure to comply with the rules, regulations, procedures, policies, laws as well violations of Plaintiff's constitutional rights pertinently appended to this instant matter.

48. The actions exercised and emitted upon Plaintiff by Defendants was beyond any form of decency, consideration, exceedingly outrageous, unbelievably shocking which resulted in Plaintiff's emotional and physical distress. Giving the facts, Plaintiff's arrest being on his day and date of birth with falsehoods and allegations therewith the modified and falsified DV Report all devastated Plaintiff to unbelievable horizons.

49. Plaintiff avers here damages sustained in this matter exceeds the jurisdictional amount thereof the lower judicial courts hereof the Honorable Court.

50. Plaintiff further states, as an afterthought, Det. Carr's conduct illustrative above, seemingly has a pattern of being unethical with reprimand. In which, the following case mirrors simulative actions in this instant matter.

        a.    Case   2011-3643

        Disposition Date: June 5, 2012

        An internal NYPD disciplinary case opened on 5/20/2011 alleged that this officer engaged in the following conduct: 1) Wrongfully Classified A Complaint Report Incorrectly - Guilty. The officer Vacation Days.

See Also:                NYPD PATROL GUIDE (Page 1 of 1)

        Section: General Regulations Procedure No: 203-08

        **MAKING FALSE STATEMENTS**

**XII**

**SIXTH CAUSE OF ACTION:**
**MUNICIPAL AND SUPERVISORY LIABILITY**

51. Defendants, the City of New York therewith the New York City Police Department are liable for
the damages suffered by Plaintiff as a result of the conduct of their employees, agents and
servants, subsequent to notification of their employee's violations Plaintiff's constitutional
rights, Defendants here, the City of New York and NYPD failed to remedy the errors of Det.
Douglas W. Carr who has a prior incident parallel to Plaintiff's cause of actions outlined herein.

52. Seemingly, procedures and policies relevant to this matter are nullified and ignored with the
customs of this unethical behavior clearly acceptable. It is here where the Defendants, City of
New York and NYPD have exercised gross neglect in managing the professionalism, actions, and
conduct of subordinates and precisely in this manner, Defendant Det. Douglas W. Carr. Plaintiff
notes here, Defendants, City of New York and NYPD are cognizant of Det. Carr's prior offense
mirroring this instant matter and has exhibited deliberate indifference to the false arrest, false
imprisonment, denial of medical attention, violation of due process, discriminatory use of
Plaintiff's criminal history and sealed records, therein violation of Plaintiff's constitutional rights
apprised herein.

53. Plaintiff states here, the Defendants, City of New York and NYPD are liable for the damages
incurred upon Plaintiff by its subordinate employee, agent and servant herein this instant

16

matter. Defendant, Det. Douglas W. Carr's modification and falsification of government documents to justify an arrest and detainment without probable cause, therewith denial of medical attention, exceedingly violated Plaintiff's constitutional rights, state and federal. In that, the Defendants here named in their supervisory positions and authority failed to remedy the matter officially and/or otherwise. Thus, deliberately evincing indifference to the totality of the matter here before the Honorable Court.

## XIII
## DAMAGES

As a direct result of Defendants actions, Plaintiff suffered the following injuries and damages:

54. Violation of Constitutional rights afforded therewith the Fourth, and Fourteenth Amendments to be free from false and illegal search and seizure of one's person without and/or probable cause. and denial of medical attention;

55. Violation of Constitutional right afforded therewith the Fifth Amendment due process of law;

56. Physical pain, harm and suffering;

57. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience and anxiety;

58. Loss of Liberty;

**XIV**

**RELIEF REQUESTED**

59. Plaintiff seeks $5,000,000 in damages due to Det. Carr's falsifying, modifying city and state official documents to justify the false arrest and illegal detainment of Plaintiff thereby an illegal search and seizure of Plaintiff's person and property on May 15th, 2018, in violation of Plaintiff's constitutional rights. This amount sought/requested therein the Formal Claim Information submitted within 90 days thereof the statute of limitations prescribed;

60. Award Plaintiff compensatory damages against Defendants jointly and severally. To which, Plaintiff seeks, as denoted there at the 50-H Hearing on April 25th, 2019, $1,000,000.00 in damages. Reasoning Det. Carr's actions seemingly are repetitive and absent official reprimand from Defendants, City of New York and NYPD to deter such unethical conduct. Defendant Det. Carr's modifying and falsifying documents to arrest Plaintiff negated probable cause thereby falsifying the arrest complaint/report. Positing such warrants significant damages to deter Det. Carr's actions forthcoming upon others arrested and detained under his authority unethically and illegally;

61. Plaintiff avers $500,000 in damages premised on the combined injuries inclusive of nearly 24 hours of lost liberty, handcuffing-related wrist pain, substantial emotional harms as a result of being handcuffed and imprisoned on Plaintiff's birthday. Extreme distress while being arrested, and from the trauma, embarrassment and humiliation that accompanied exposure both during the arrest and thereafter;

18

62. Hereto, Plaintiff seeks $15.OO for the damage caused to Plaintiff's jogging pants, which Det. Carr cut the string tie due to such connected and not an independent string tie standard on jogging pants;

63. In addition, Plaintiff further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegally/falsely concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr and the New York City Police Department, under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Plaintiff resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the colors of law, legally as well illegally within the margins of objective authority.

64. In addition, Plaintiff seeks an award to cover costs of this instant matter;

65. Award of any Attorney fees in the event counsel is retained/hired during the course of this matter pursuant to 42 U.S.C. 1988.

## **JURY TRIAL DEMAND**

Plaintiff respectfully request a jury trial pursuant to Federal Rules of Civil Procedure 38, this demand is premised on all cause of actions illustrative and evinced herein capable of being determined by a jury trial.

I, Mark Garnes hereby attest the above is true and correct to the best of recollection and knowledge as to the events and dates as they occurred.

Respectfully yours,

Mark Garnes-Plaintiff – Pro Se
P.O. Box 160363
Brooklyn, New York 11216

Brooklyn, New York
Kings County
Dated: July 24th, 2020

Subscribed and sworn to before me this ____24____ day of July 2020

Notary Public

DIANA G. HILBIG
Notary Public - State of New York
NO. 01HI6310596
Qualified in New York County
My Commission Expires Aug 25, 2022

20

# NOTICE OF CLAIM

**THE CITY OF NEW YORK OFFICE OF THE COMPTROLLER**
1 CENTRE STREET, NEW YORK, N.Y. 10007-2341

Scott M. Stringer
**COMPTROLLER**

015 - 188

Date: 12/14/2018
Claim no: 2018PI032680
Claimant: MARK GARNES
Date of Occur: 08/17/2018

MARK GARNES
POB 160363
BROOKLYN, NY 11216

    The above claim is being reviewed. In order to properly evaluate this claim, please complete
the items which are marked and return the form.

    (X ) Claimant's social security # ...................................................................

    (X ) Claimant's date of birth ..... May 15th, 1963...................................

    (X ) Copy of final disposition ...... See Attached ..................................

    (X ) Precinct of occurrence ....... 77th Precinct....................................

    (X ) Name and shield # of arresting officer Det. Douglas W. Carr. Sheild# 512b

    (X ) Copy of arrest report, rap sheet and, if filed, CCRB report - See Attached

    (X ) Related medical records, particularly emergency room & ambulance records. See Attached

    (X ) Medicaid and/or Medicare lien?... N/A ......................................

    (X ) Medicaid/CIN #......... N/A .....................................................

    (X) Any other information and or documents pertinent to your claim - See Attached

If you have any questions, feel free to contact ANASTASIA PEREZ at (212) 669-2251.

Sincerely yours:

ANASTASIA PEREZ
EXAMINER - PERSONAL INJURY DIVISION
Bureau of Law & Adjustment - Room 1220

CITY: _Brooklyn_   STATE: _New York_   ZIP: _11216_

SOC.  SEC.  # or TAX  I.D.  #: _____

CLAIM INFORMATION

CITY AGENCY INVOLVED: _New York City Police Department (77th Precinct)_

NATURE OF CLAIM: (ATTACH ADDITIONAL SHEET(S) OF PAPER, IF NECESSARY)

_On 5/15/2018 I MARK GARNES was arrested, searched & my rights were not read to me by Det. Douglas Carr (77th Pct). This arrest based on DV Report by NY Highway Patrol officer Rosario which was modified and my DV statement destroyed by Det. Carr. Det. Carr arrested one on the premises of my criminal history discriminately_

_PLEASE SEE ATTACHED OUTLINE OF EVENTS_

TOTAL   AMOUNT   CLAIMED:   $ _5 Million_

IF MORE THAN ONE ITEM IS INCLUDED IN THE TOTAL AMOUNT CLAIMED, SUPPLY BREAKDOWN OF AMOUNTS AND SPECIFY ITEMS: (ATTACH ADDITIONAL SHEET(S), IF NEEDED)

| ITEM | AMOUNT |
|---|---|
| 1. _Destroyed Sweatpants $35.00_ | $_____ |
| 2. _____ | $_____ |
| 3. _____ | $_____ |
| 4. _____ | $_____ |
| 5. _____ | $_____ |

PLEASE ATTACH COPIES OF SUPPORTING DOCUMENTATION, PREVIOUS CORRESPONDENCE, INVOICES, ETC.

CLAIMANT'S SIGNATURE: _Mark Garnes_

SS: STATE OF N.Y.
    CITY OF N.Y.  SUBSCRIBED AND SWORN TO BEFORE ME THIS ____ DAY OF

    _____, 20____

    _____
    NOTARY

TO: OFFICE OF THE COMPTROLLER
    DIVISION OF LAW - RM.1225 South
    1 CENTRE STREET
    NEW YORK, N.Y. 10007
    TELEPHONE # (212) 669-4736

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
   **Arrest Report # K18629833K**
   **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
   **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Mark Garnes
P.O. Box 160363
Brooklyn, N.Y. 11216

November 13th, 2018

Office of the Comptroller
Division of Law – Rm. 1225 South
1 Centre Street
New York, New York 10007

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
   **Arrest Report # K18629833K**
   **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
   **DIR Complaint # 2951 (77th Pct.) Det. Carr**

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Douglas Carr of the 77th Precinct on the following grounds:

   a) Destruction of Victim's Domestic Violence Statement (DIR-Claimant here);
   b) Modified/Fraudulent Domestic Violence Report;
   c) Forged Signature of Victim-Claimant;
   d) Illegal/False Arrest and illegal/False Imprisonment;
   e) Illegally searched;
   f) Failure to Read/Advise/Notify Victim-Claimant of His Miranda Rights when Arrested;
   g) Denial/Failure to Provide Medical Assistance to Victim-Claimant;
   h) Destruction of personal property (Strap of jogging pants cut off due to not able to pull out);
   i) Discrimination (Criminal History Discrimination).

1

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
   Arrest Report # K18629833K
   DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
   DIR Complaint # 2951 (77th Pct.) Det. Carr

1. On May 15th, 2018, Claimant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The subsequent report on this same date was filed by Det. Carr there at the 77[th] Pct. **Ex. 4-6a** In which, Claimant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Claimant's injuries to his face, neck and right bicep. **7-13 (Photos of Claimant's injuries at scene and of location by Claimant's phone) (Photos by Ms. DeJesus (77[th] Pct., Ex. 14-17)**

2. However, only the photos Ms. DeJesus had taken with Claimant's phone exist. **See Attached Affidavit, Paragraphs 1-13;**

3. Upon Ms. Neal entering the 77th Pct., Claimant notified Ms. Wilson that Ms. Neal was here for me to return her property to her. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Claimant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Claimant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Claimant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Claimant's identification. Upon entering the interview room once more, Det. Carr notified Claimant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

4. Det. Carr placed the handcuffs on Claimant and did not read nor notify Claimant of his rights relevant to this arrest. Claimant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

5. Throughout these occurrences at the 77th Pct., Claimant received no medical assistance which was requested in the initial DIR filled out by Claimant. Ms. DeJesus also inquired whether or not Claimant wanted medical assistance, Claimant affirmed he did. **See Attached Affidavit, Paragraph 15**

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

6. On May 16th, 2018, Claimant was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon release Claimant returned to the 77th Pct. to pick up copies of the DIR forms Claimant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Claimant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Claimant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Claimant Det. Carr had discarded the DIR documents Claimant filled out, however, Det. Carr was coming down to speak with Claimant. At this time Det. Carr notified Claimant the DIR statements Claimant inscribed on the forms were discarded. Det. Carr passed Claimant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Claimant's face, neck and right bicep. Nor had Claimant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Claimant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

7. Claimant remained confused as to how he had arrested for being the victim as Det. Carr recognized and verbally indicated to Claimant. Reasoning with the mandatory arrest laws in domestic violence incidents, Claimant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Claimant's criminal history background became an objective, discriminately. Positing here Claimant was illegally and falsely arrested and searched on the premises of discrimination and personal interests of Det. Carr, in addition, to make Claimant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

8. On this same date (May 16th, 2018), Claimant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Claimant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Claimant spoke with Ms. DeJesus upon arriving again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Claimant's house and could Det. Carr give them to her. Claimant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

9.  Hereto on this date, May 16th, Claimant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 1-3**

10. Thereafter leaving the 17th Pct., Claimant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

11. On June 29th, 2018 Claimant's scheduled court hearing was conducted with a return date of August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

Claimant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Claimant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Claimant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

I, Mark Garnes hereby attest the above is true and correct to the best of recollection and knowledge as to the events and dates as they occurred.

Respectfully yours,

Mark Garnes-Claimant

4

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
   **Arrest Report # K18629833K**
   **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
   **DIR Complaint # 2951 (77th Pct.) Det. Carr**

## CERTIFICATE OF SERVICE

   **I hereby certify** that on this November 13th, 2018 a copy of the forgoing Notice of Claim with Outline and Exhibits/Personal Injury Claim Form with Outline and Exhibits were mailed, certified mail, return receipt requested, to: **Corporate Counsel, 100 Church Street, New York, New York 10007**

Mark Garnes -Complainant

Sworn to before me this ___/3___ day of November 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

5

# ATTACHMENTS

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

CRIMINAL COURT OF THE CITY OF NEW YORK

COUNTY OF KINGS: PART DVI

PEOPLE OF THE STATE OF NEW YORK,

    -against-

MARK GARNES,

        Affiant.

**AFFIDAVIT**

**Case # 2018KN023543**
**Arrest Report #18629833K**
**DV Report # 2018-017-298**
**ICAD #D18051516234**
**DIR Complaint # 2951**

**Part:  DVI**

STATE OF NEW YORK
COUNTY OF KINGS
ss.:

Mark Garnes, being duly sworn, hereby deposes and says:

1. On May 15th, 2018 at approximately 1:15 p.m. affiant picked up his ex-girlfriend, Sheniqua Neal from her school, Medgar Evers College at Bedford Ave. and Carroll Street. Upon entering the vehicle, Sheniqua Neal took the driver's seat. This was to improve upon her driving skills.

2. This date and day being Affiant's birthday was suppose to include eating at Jacob's Restaurant or Amy Ruth's in Harlem. In which Ms. Neal was suppose to be driving there. En route at Atlantic Ave. and Boreum Pl., Ms. Neal failed to take the far right lane from the left lane accordingly and hesitated, nearly causing the vehicle to our right to clip the rear of Affiant's vehicle. Affiant explained to Ms. Neal she has to move quickly when the lane is open and not hesitate.

3. While making the right turn onto Boerum Pl., Ms. Neal failed to yield to a pedestrian crossing, to which the pedestrian was inches from the left corner bumper of the vehicle. At this time Affiant demanded Ms. Neal pull over and stop the vehicle, she did. Affiant

1

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

exited the vehicle and took the driver's seat. At this time Affiant proceded to Harlem thereon Boreum Pl. and Adams Street to the Brooklyn Bridge.

4. En route to the FDR Drive Ms. Neal debated with Affiant as to the two occurrences that had taken place, averring she was not at fault nor was wrong in her decisions as a driver. Affiant asserted each incident could result in accidents and lawsuits, Ms. Neal refused to accept these facts and argued on the matters.

5. At the Houston Street exit of the FDR Drive, Affiant opted to return to Brooklyn and drop Ms. Neal off at her home. Upon pulling up and stopping to allow Ms. Neal to exit the vehicle, she refused, stating, "My things and keys are at your house, I need to get them." Affiant replied by noting, "I will go get them and bring them back to you." This matter went back and forth for several moments with Ms. Neal refusing to exit and wait for Affiant's return.

6. Affiant opted to pick up his granddaughter from school as a result of things not going well with Ms. Neal, thus, celebrating his birthday with his granddaughter at Amy Ruth's. Affiant made a right turn on 3rd Ave. and Atlantic Ave., then a right turn at Pacific Street off 3rd Ave. Ms. Neal inquired as to where Affiant was going, Affiant stated, "I am going to get Amaiya, I'm not wasting my birthday away like this with you." At this time Ms. Neal began to get angry and defiant as to why things were changing, it wasn't her fault. This discussion led into her becoming more hyper and resulted in Ms. Neal opening the passenger side car door twice as Affiant drove along Pacific Street, westbound. Each time Affiant stopped the car and asked Ms. Neal not to do it because it would cause damage to the door as well possibly injure her.  Ms. Neal refused to heed this advice and at 335 Pacific Street, Ms. Neal opened the car door again. Affiant stopped the car, asked her to exit, she refused.  Affiant stepped out of the car with the intention of having Ms. Neal exit, she refused. Affiant waited at this location in hopes someone would call the police, due to Affiant's phone in the middle console and Ms. Neal not allowing Affiant to have it, as she made attempts to cross over into the driver's seat.

7. After several minutes and no officers arrival, Affiant pulled off and went to the 84th Precinct in hopes of getting assistance from officers to have Ms. Neal exit the vehicle. No officers were in and out of the precinct. Affiant drove off, en route to the Bronx to pick up his granddaughter.

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

8. During the drive across the Brooklyn Bridge and northbound on the FDR Drive, Ms. Neal continuously stated she wanted her things and keys, back and forth Affiant went with her on this matter. Ms. Neal was opportune to have her things and keys upon exiting the vehicle and allowing Affiant to retrieve them and bring them back to her. She refused.

9. Upon passing the 34th Street exit on the NB side of FDR Drive, Ms. Neal struck out at Affiant with her open hands to Affiant's face. Affiant immediately stopped the car to prevent an accident. Affiant asked Ms. Neal to not do that, it would cause an accident that could possibly kill us both. Ms. Neal stated, "It don't matter, so what." After several seconds Affiant began to drive off, some 10 to 50 feet, Ms. Neal struck out again to Affiant's face. Affiant stopped the car, stretched out his right hand to stop Ms. Neal's attack, opened the driver's side door and jumped out of the vehicle. Upon exiting, Affiant noted to Ms. Neal again, "You gonna f---ing kill us with this dumb sh-t. Are you crazy?" Ms. Neal screamed, "i don't care!!" over and over. At this time Affiant stood on the median dividing FDR Drive southbound and northbound, awaiting police officers to pass by. Affiant's phone once again in the middle console.

10. After several minutes, officers on the southbound side stopped and asked did Affiant need help? Affiant explained his ex-girlfriend attacked him while driving and was afraid to drive again due to her actions. The officer stated he would exit and come around to assist in the matter. Some moments later, DEP Police officers pulled up, southbound and inquired of assistance, Affiant noted officers were en route. However, after some twenty minutes or so, NYPD School Safety Division van pulled up next to Affiant's car and inquired of the matter. Ms. Neal jumped out and stated Affiant would not let her leave the car. Officer Diez and his partner exited their vehicle and commenced assistance.

11. At this time Officer Diez separated Affiant and Ms. Neal, speaking with Affiant first who explained Ms. Neal visited over the weekend, because she wanted to practice driving. Affiant helped Ms. Neal get her driver's license August 25th, 2017 and she had not been driving frequently thereafter. This was based on Affiant and Ms. Neal not being intimate since that time. Affiant further explained he asked Ms. Neal to exit his vehicle at Ms. Neal's home (510 Atlantic Ave., Brooklyn, New York), so Affiant could retrieve her things from his home and bring them back to her, she refused. Affiant noted Ms. Neal's opening the passenger side car door twice while Affiant driving on Pacific Street in Brooklyn. Therewith driving to the 84th Precinct to get assistance from officers to have

3

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

Ms. Neal exit the vehicle and then here onto the FDR Drive headed to the Bronx to pick up Affiant's granddaughter. Officer Diez then spoke with Ms. Neal. Several moments upon speaking with Ms. Neal, other officers arrived to assist in this matter. Highway Patrol Officer Emanuel Rosario seemingly held jurisdiction and commanded the matter while Officer Diez and his partner as well another officer stood by.

12. Patrolman Rosario discussed the matter with Officer Diez initially, then spoke with Ms. Neal and Affiant lastly. Patrolman Rosario advised after taking Affiant and Ms. Neal's identification and phone numbers the DV Report could be picked up at the local precincts where each lived. Patrolman Rosario advised Affiant to retrieve Ms. Neal's things and keys and return them to her, adding he would drive Ms. Neal to the nearest subway station to return to Brooklyn. Affiant notes here that the officers (Diez and Patrolman Rosario) believed the vehicle belonged to Ms. Neal, after retrieving Affiant's registration and insurance card from the inner pocket of the driver's door, the matter of ownership was confirmed. This belief derived from Ms. Neal sitting in the driver's seat upon the officers and patrolman's arrival. As Affiant stated to the officers and patrolman, Ms. Neal jumped in the driver's seat when Affiant attempted to retrieve his phone, refusing to let him have it. Affiant was only able to possess the phone when one of several officers stopped and Affiant advised he could not contact officers due to Ms. Neal refusing to let Affiant have the phone from the console.

13. Patrolman Rosario returned Affiant's identification with a yellow slip of paper with the DV Report and ICAD numbers inscribed. Officer Diez and his partner advised Affiant to file a domestic violence report once obtaining the DV Report of Patrolman Rosario. Officer Diez stating, "it's clear who caused this to happen." The officers' advised that Affiant have Ms. Neal pick her things up at the precinct to avoid Affiant getting in a confrontation with her again, moreso to protect Affiant in case Ms. Neal gets crazy again. However, no photographs of Affiant's face and neck with injuries thereon being clear were taken by Officer Diez and his partner nor by Patrolman Rosario. No medical assistance was obliged at the scene either. It is Affiant's understanding upon this writing that Patrolman Rosario should have taken these photos to accompany the DV Report and sought medical assistance for Affiant.

14. Affiant returned to his home, retrieved Ms. Neal's things (backpack with laptop and papers, clothing she had for the weekend and week, etc.) Affiant believed Ms. Neal's keys were in her backpack, they were not. Affiant learned this subsequent to his arrest and returning home on May 16th, 2018 after release from the Kings County Criminal

4

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

Court at approximately 11:00 a.m. Affiant placed the keys in an envelope, took them to the 77th Precinct inscribing Det. Carr's name on it with Sheniqua Neal's name, the contents (keys) with Ms. Neal's phone number. Ms. DeJesus was at the Public Service Desk and called up to see whether or not Det. Carr was in, he was not, Affiant left the envelope with keys with Ms. DeJesus and exited the 77th Precinct.

------------------------------------------------

15. On May 15th, 2018 at approximately 3:30 p.m. Affiant went to the 77th Precinct to file a domestic violence report against Sheniqua Neal, Affiant's ex-girlfriend. This filing on the advice of Officer Diez and his partner as well Patrolman Rosario. Affiant inquired about the DV Report submitted by Patrolman Rosario to Ms. DeJesus there at the 77th Precinct, Affiant provided Ms. DeJesus with the yellow slip of paper with information inscribed by Patrolman Rosario. Ms. DeJesus scanned the computer and located the DV Report, however, Ms. DeJesus stated, "I cannot provide you with this report. You have to go to the 17[th] Precinct to get it." Affiant replied, "The highway patrol officer who wrote the report told me I could pick it up here and file my domestic violence report with it." Ms. DeJesus noted she would speak with a supervisor as there were no DV officers in the precinct at that time. Several moments later, Ms. DeJesus shifted the duties of Affiant filing the domestic violence report to Ms. Wilson who gave Affiant the DIR form to fill out. Affiant commenced with inscribing the events that occurred as noted above **(Paragraphs 1-14)**. Ms. DeJesus asked Affiant whether or not Affiant wanted medical assistance, seeing the injuries to Affiant's face. Affiant affirmed yes he wanted medical assistance. Ms. DeJesus noted she would contact the ambulance once the paperwork completed. During this time, Officer LeRoux photographed Affiant's face and next and right bicep.

16. Thereafter, Ms. Wilson filled out several forms inclusive to Affiant's DIR statements, as to Ms. Neal's profile: height, weight, hair color, eye color, hair length, etc. Thereafter, Ms. Wilson requested Affiant's vehicle registration, which was in Affiant's car, upon getting up to go get these documents, Ms. Neal walked into the 77th Precinct. Affiant notified Ms. Wilson that was Ms. Neal. Upon returning inside the precinct, Affiant noticed Det. Carr speaking with Ms. Neal. Affiant provided the vehicle documents to Ms. Wilson who continued to complete the documents adjacent to the DIR.

17. Det. Carr entered the area and told Ms. Wilson not to complete the paperwork on the DIR/DV. Det. Carr asked Affiant to step out of the room and we entered the entry way to

the precinct to speak. Det. Carr asked Affiant what occurred, Affiant stated to Det. Carr he had written down the statement on the DIR form and could read it. Det. Carr said, "No, just tell me what happened." Affiant outlined the incident for Det. Carr, who advised that Ms. Neal would be arrested on this matter as well as Affiant and asked did Affiant want that to happen?" Affiant inquired as to how he was going to be arrested for being a victim? Det. Carr stated, "Because she said you hit her also." Affiant explained to Det. Carr that Affiant stretched his right hand out to prevent Ms. Neal from attacking him any more while driving and to exit the car. That's hitting her to prevent us from an accident or worst?" Det. Carr advised Affiant to go back into the area with Ms. Wilson and Ms. DeJesus as he spoke with Ms. Neal further.

18. Several moments later, Det. Carr scooped up all the paperwork from Ms. Wilson, who asked Det. Carr what was to be done? Det. Carr responded, "I will handle it." At this time Det. Carr advised Affiant and Ms. Neal to come with him. Det. Carr escorted Affiant and Ms. Neal to the second floor of the precinct. Affiant was placed inside of an interview room to the left of the stairway and Ms. Neal to a location unknown to Affiant.

19. Det. Carr noted to Affiant, "Sit here for a minute so we can get this straightened out. I'll be right back." Det. Carr exited the room and returned some moments later. Sitting across from Affiant, Det. Carr explained again that Affiant could be arrested on this matter because Ms. Neal is insisting Affiant hit her. Again, Affiant outlined the day and up until the point of the incident and occurrences before and thereafter with Patrolman Rosario's advice that led Affiant to the 77th Precinct. Det. Carr stressed Affiant's arrest on the premise of the DIR being filed. Affiant inquired how can he be arrested when he is the victim, also, the incident occurred in Manhattan, why is it Patrolman Rosario or Officer Diez did not arrest Affiant for being the victim. Det. Carr was absent an answer on this, only to say Affiant came to the 77th Precinct to file the complaint. Brooklyn does not operate like Manhattan Det. Carr added. Det. Carr once again exited the interview room and noted he would speak to his supervisor. Upon returning minutes later Affiant provided his identification to Det. Carr who noted he would be right back. Moments later, Det. Carr advised Affiant he was being arrested. Det. Carr stated, "You also have eight other incidents Ms. Neal filed against you on domestic violence, so you are being arrested." After securing all Affiant's property with advice to notify someone to pick it up, Affiant was handcuffed. During the placement of the cuffs upon Affiant, as well during the fingerprinting, Affiant was not read his rights nor given notice to his rights

regarding this arrest. At no time during Affiant's presence therein the 77th Precinct was Affiant notified of his rights.

20. During this arrest process, Det. Carr noted Affiant would most likely be "DP'd" due to Ms. Neal being the primary aggressor. Again, upon this statement, Affiant inquired then, "Why am I being arrested should that be clearly recognized?" Det. Carr replied because it's a domestic violence incident and both parties have to be arrested." Affiant was confused to this and again wanted to know "Why didn't Highway Patrol arrest us, then?" Det. Carr had no logical answer only that highway patrol did not do his job right.

21. During the attempts to fingerprint Ms. Neal, officers struggled with her, being in a hysterical state due to the arrest, Ms. Neal lunged at the holding cell where Affiant was placed. Ms. Neal hollered and yelled at Affiant, Affiant remained quiet and still.

22. Affiant and Ms. Neal were escorted by Officers Burke and Seliman to the Kings County Criminal Court lock up for further processing, clearly evident were the injuries to Affiant's face caused by Ms. Neal's attack.  During this transportation, Affiant was placed in the rear of the van, Ms. Neal in the front row behind Officer Burke, who drove. Officer Seliman sat in the middle row separating Affiant and Ms. Neal, who had calmed down but continued to make harsh remarks directed at Affiant. Affiant remained quiet.

23. Upon being processed at the Kings County Criminal Courthouse, Affiant notified the EMT/FDNY staff on-hand at the courthouse processing of his injuries. No medical assistance was provided at no time throughout this matter.

24. Affiant firmly believes Det. Carr filtered Affiant's name in the criminal database and/or discovered thereon the DV Report of Patrolman Rosario and opted to arrest Affiant on the premises of Affiant's background, discriminately.

25. On May 16th, 2018, Affiant was interviewed by Steven C. Kuza, Staff Attorney, Criminal Defense Practice, 111 Livingston Street, Brooklyn, New York 11201, therein the holding cell at Kings County Criminal Court at about 8:30 a.m. Affiant outlined the incidents leading up to the domestic violence occurring on FDR Drive Northbound, Attorney Kuza inscribed these events therein his file. Attorney Kuza inquired whether or not Ms. Neal was arrested, Affiant affirmed she had been, to which Mr. Kuza asserted, "That's a good thing."

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

26. On this same date, at approximately 11:00 a.m., Affiant went before the Honorable Court and was released, an order of protection to stay away from Sheniqua Neal appended and a court date of June 29th, 2018 imposed.

27. Upon release, Affiant went directly to the 77th Pct. and requested a copy of the DIR form inscribed by Affiant on the 15th of May 2018, Ms. DeJesus advised Det. Carr had all the paperwork. Ms. DeJesus phoned Det. Carr who advised the paperwork had been discarded, upon hanging up the phone, Affiant asked Ms. DeJesus, "Why was the papers discarded?" Ms. DeJesus stated, "Det. Carr is coming down to speak with you." Seconds later Det. Carr arrived, Affiant requested copies of the DIR Forms filled out by Affiant and Ms. Wilson on May 15th. Det. Carr reiterated the papers were discarded. Affiant asked, "How is that, you arrest me based on my DIR, so how are they now discarded?" At this time, Det. Carr hands Affiant three (3) pink carbon copies of what Affiant learned are Det. Carr's "Domestic Incident Report," which modified Affiant's statements on the DIR as well times and location of the incident to Atlantic Ave. and Flatbush Ave.  Also, Patrolman Rosario's report as to the domestic violence incident. **(See Attached)**

28. Thereafter, Affiant arrived home and discovered Ms. Neal's keys on the table, Affiant returned to the 77th Precinct with them, providing the opportunity for Ms. Neal to receive them without Affiant's presence. Affiant provided the keys in an envelope with Det. Carr's name inscribed therewith Ms. Neal's name and phone number with contents noted. Det. Carr was not in the precinct at this time, Ms. Dejesus had called up and informed Affiant of such, to which, Affiant gave the envelope with contents to Ms. DeJesus. **See Paragraph 14**

29. On this date, May 16th, 2018, Affiant went to the 17th Precinct, as referred by Ms. DeJesus, to receive a copy of Patrolman Rosario's DIR. Upon which was provided by Officer Komiko Candelario-Toth at the 17th Precinct.

30. Thereafter on this same date, Affiant went to his regular physician to get examined for the injuries to his face, neck and right bicep. Unfortunately, an exam could not be taken at that time. Affiant scheduled an appointment to the matter nevertheless. **(See Attached)**

31. Affiant then went to the emergency room at New York Presbyterian, 170 Williams Street, New York City. Which advised Affiant's physician could examine the injuries to avoid the $110 payment. Affiant noted to the nurse he had made an appointment and advised to come to the emergency room. The nurse suggested Affiant go to an urgent care facility to get immediate assistance. At this time Affiant contacted his union and

8

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

was provided a list of urgent care facilities. The Advantage Care facility at 195 Montague Street, Brooklyn, New York was by appointment only due to Affiant being a new client. The attendant there suggested an urgent care a block away on Court Street, ProHealth, which accepted walk-ins.

32. Affiant went to ProHealth and received the walk-in examination with a $40.00 co-pay. Dr. Lawrence examined Affiant and documented the results.  **(See Attached)**

**AFFIANT** attest and avers the above to be true and to the best of his recollection and knowledge to the events occurring from May 15th to May 23rd, 2018. Hereto, Affiant reasons under the laws of New York City, New York State, and/or Federal Laws, Det. Carr did not read nor advise Affiant of his rights upon being handcuffed and arrested nor received medical attention to the injuries to his face, neck and right bicep. Affiant truly believes Det. Carr's premonition to arrest Affiant was on the premise of discrimination based on Affiant's criminal background and not within the laws governing this domestic violence incident as a victim. Seemingly Det. Carr's objective was to further blemish Affiant's character.

Mark Garnes – Affiant

Sworn to before me this _23_ day of May 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

9

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

was provided a list of urgent care facilities. The Advantage Care facility at 195 Montague Street, Brooklyn, New York was by appointment only due to Affiant being a new client. The attendant there suggested an urgent care a block away on Court Street, ProHealth, which accepted walk-ins.

32. Affiant went to ProHealth and received the walk-in examination with a $40.00 co-pay. Dr. Lawrence examined Affiant and documented the results. **(See Attached)**

**AFFIANT** attest and avers the above to be true and to the best of his recollection and knowledge to the events occurring from May 15th to May 23rd, 2018. Hereto, Affiant reasons under the laws of New York City, New York State, and/or Federal Laws, Det. Carr did not read nor advise Affiant of his rights upon being handcuffed and arrested nor received medical attention to the injuries to his face, neck and right bicep. Affiant truly believes Det. Carr's premonition to arrest Affiant was on the premise of discrimination based on Affiant's criminal background and not within the laws governing this domestic violence incident as a victim. Seemingly Det. Carr's objective was to further blemish Affiant's character.

Mark Garnes – Affiant

Sworn to before me this  _23_  day of May 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

# CCRB

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
    Arrest Report # K18629833K
    DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
    DIR Complaint # 2951 (77th Pct.) Det. Carr

Mark Garnes
1355 Pacific St., Apt. #1B
Brooklyn, N.Y. 11216

May 23rd, 2018

Civilian Complaint Review Board (CCRB)
100 Church Street, 10th Floor
New York, New York 10007

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
    Arrest Report # K18629833K
    DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
    DIR Complaint # 2951 (77th Pct.) Det. Carr

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Carr of the 77th Precinct on the following grounds:

    a) Destruction of Victim's Domestic Violence Statement (DIR-Complainant here)
    b) Modified/Fraudulent Domestic Violence Report;
    c) Forged Signature of Victim-Complainant;
    d) Illegal/False Arrest and illegal/False Imprisonment;
    e) Fail to Read/Advise/Notify Victim-Complainant of His Miranda Rights when Arrested;
    f) Denial/Failure to Provide Medical Assistance to Victim-Complainant;
    g) Discrimination;

1

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

1. On May 15th, 2018, Complainant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. The subsequent report on this same date was filed by Det. Carr there at the 77th Pct. In which, Complainant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Complainant's injuries to his face, neck and right bicep. However, the photos Ms. DeJesus had taken with Complainant's phone exist. **See Attached Affidavit, Paragraphs 1-13; See Exhibits 1-11 (Photos of Complainant's injuries at scene and of location; 5-7) (Photos by Ms. DeJesus, Ex. 8-9)**

2. Upon Ms. Neal entering the 77th Pct., Complainant notified Ms. Wilson who she was, Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Complainant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Complainant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Complainant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Complainant's identification. Upon entering the interview room once more, Det. Carr notified Complainant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

3. Det. Carr placed the handcuffs on Complainant and did not read nor notify Complainant of his rights relevant to this arrest. Complainant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

4. Throughout these occurrences at the 77th Pct., Complainant received no medical assistance which was requested in the initial DIR filled out by Complainant. Ms. DeJesus also inquired whether or not Complainant wanted medical assistance, Complainant affirmed he did. **See Attached Affidavit, Paragraph 15**

5. On May 16th, 2018, Complainant was released by the Honorable Court with a court date to appear, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon

2

release Complainant returned to the 77th Pct. to pick up copies of the DIR forms Complainant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Complainant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Complainant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Complainant Det. Carr had discarded the DIR documents Complainant filled out, however, Det. Carr was coming down to speak with Complainant. At this time Det. Carr notified Complainant the DIR statements Complainant inscribed on the forms were discarded. Det. Carr passed Complainant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident and only summarized the attack by Ms. Neal upon Complainant's face, neck and right bicep. Nor had Complainant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Complainant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 14-16**

6. Complainant was still confused as to how he was arrested for being the victim and not the primary aggressor as Det. Carr recognized and verbally indicated to Complainant. Reasoning with the mandatory arrest laws in domestic violence incidents, Complainant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Complainant's background became an objective, discriminately. Positing here Complainant was illegally and/or falsely arrested on the premises of discrimination and personal interests of Det. Carr, in addition, to make Complainant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

7. On this same date, Complainant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Complainant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Complainant spoke with Ms. DeJesus upon arriving again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Complainant's house and could Det. Carr give them to her. Complainant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
    Arrest Report # K18629833K
    DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
    DIR Complaint # 2951 (77th Pct.) Det. Carr

8. Hereto on this date, May 16th, Complainant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 17-19**

9. Thereafter leaving the 17th Pct., Complainant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-27**

Complainant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Complainant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Complainant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

4

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**

      **Arrest Report # K18629833K**

      **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**

      **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Thanking you in advance for your time, attention, and assistance to these matters. Complainant can be contacted at 347-421-1384 or at the noted address above, and/or come to your office to discuss these matters.

Respectfully yours,

**Mark Garnes**

cc: MG

Sworn to before me this _23_ day of May 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

5

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
   **Arrest Report # K18629833K**
   **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
   **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Mark Garnes
P.O. Box 160363
Brooklyn, N.Y. 11216

November 13th, 2018

Civilian Complaint Review Board (CCRB)
100 Church Street, 10th Floor
New York, New York 10007

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
   **Arrest Report # K18629833K**
   **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
   **DIR Complaint # 2951 (77th Pct.) Det. Carr**

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Douglas Carr of the 77th Precinct on the following grounds:

a) Destruction of Victim's Domestic Violence Statement (DIR-Complaint here);
b) Modified/Fraudulent Domestic Violence Report;
c) Forged Signature of Victim-Complaint;
d) Illegal/False Arrest and illegal/False Imprisonment;
e) Illegally searched;
f) Failure to Read/Advise/Notify Victim-Complaint of His Miranda Rights when Arrested;
g) Denial/Failure to Provide Medical Assistance to Victim-Complaint;
h) Destruction of personal property (Strap of jogging pants cut off due to not able to pull out);
i) Discrimination (Criminal History Discrimination).

1

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

1. On May 15th, 2018, Complainant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The subsequent report on this same date was filed by Det. Carr there at the 77[th] Pct. **Ex. 4-6a** In which, Complainant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Complainant's injuries to his face, neck and right bicep. **7-13 (Photos of Complainant's injuries at scene and of location by Complainant's phone) (Photos by Ms. DeJesus (77[th] Pct., Ex. 14-17)**

2. However, only the photos Ms. DeJesus had taken with Complainant's phone exist. **See Attached Affidavit, Paragraphs 1-13;**

3. Upon Ms. Neal entering the 77th Pct., Complainant notified Ms. Wilson that Ms. Neal was here for me to return her property to her. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Complainant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Complainant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Complainant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Complainant's identification. Upon entering the interview room once more, Det. Carr notified Complainant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

4. Det. Carr placed the handcuffs on Complainant and did not read nor notify Complainant of his rights relevant to this arrest. Complainant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
**Arrest Report # K18629833K**
**DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
**DIR Complaint # 2951 (77th Pct.) Det. Carr**

5. Throughout these occurrences at the 77th Pct., Complainant received no medical assistance which was requested in the initial DIR filled out by Complainant. Ms. DeJesus also inquired whether or not Complainant wanted medical assistance, Complainant affirmed he did. **See Attached Affidavit, Paragraph 15**

6. On May 16th, 2018, Complainant was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon release Complainant returned to the 77th Pct. to pick up copies of the DIR forms Complainant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Complainant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Complainant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Complainant Det. Carr had discarded the DIR documents Complainant filled out, however, Det. Carr was coming down to speak with Complainant. At this time Det. Carr notified Complainant the DIR statements Complainant inscribed on the forms were discarded. Det. Carr passed Complainant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Complainant's face, neck and right bicep. Nor had Complainant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Complainant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

7. Complainant remained confused as to how he had arrested for being the victim as Det. Carr recognized and verbally indicated to Complainant. Reasoning with the mandatory arrest laws in domestic violence incidents, Complainant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Complainant's criminal history background became an objective, discriminately. Positing here Complainant was illegally and falsely arrested and searched on the premises of discrimination and personal interests of Det. Carr, in addition, to make Complainant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

8. On this same date (May 16th, 2018), Complainant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Complainant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip

3

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
   Arrest Report # K18629833K
   DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
   DIR Complaint # 2951 (77th Pct.) Det. Carr

Gloss" on it. Complainant spoke with Ms. DeJesus upon arriving again at the 77[th] Pct. on this date, advising her Ms. Neal's keys were at Complainant's house and could Det. Carr give them to her. Complainant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

9.  Hereto on this date, May 16th, Complainant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 1-3a**

10. Thereafter leaving the 17th Pct., Complainant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

11. On June 29th, 2018 Complainant's scheduled court hearing was conducted with a return date of August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

Complainant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Complainant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Complainant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

4

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
     **Arrest Report # K18629833K**
     **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
     **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Complainant attest the above and herein are true and correct to the best recollection of his knowledge as the events occurred on the dates noted.

Thanking you in advance for your time, attention, and assistance to these matters. Complainant can be contacted at 347-421-1384 or at the noted address above, and/or come to your office to discuss these matters.

Respectfully yours,

Mark Garnes

cc: MG

Sworn to before me this _____ day of November 13th, 2018.

Notary Public *Galina Feldman*

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018



**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET ROOM 1200**
**NEW YORK, N.Y. 10007-2341**

WWW.COMPTROLLER.NYC.GOV

015 - 151

Scott M. Stringer
**COMPTROLLER**

Date:         11/20/2018
Claim No:     2018PI032680
RE:           Acknowledgment of Claim
Your Claim/Policy#:

MARK GARNES
POB 160363
BROOKLYN, NY 11216

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

If you have any questions regarding your claim, you may contact us at 212-669-2478 for claims involving personal injury.

Sincerely,

Bureau of Law & Adjustment



# CIVILIAN COMPLAINT REVIEW BOARD
100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ♦ TELEPHONE (212) 912-7235
www.nyc.gov/ccrb



BILL DE BLASIO
MAYOR

FREDERICK DAVIE
CHAIR

November 21, 2018

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that members of the New York City Police Department engaged in misconduct on May 15, 2018, at the 77th Precinct stationhouse in Brooklyn.

In order to fully investigate this complaint, I need to speak with you as soon as possible. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,

Magdalena Azmitia
Investigator

CCRB CTS - Confidential



**CIVILIAN COMPLAINT REVIEW BOARD**
100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ♦ TELEPHONE (212) 912-7235
www.nyc.gov/ccrb



BILL DE BLASIO
MAYOR

FREDERICK DAVIE
CHAIR

November 29, 2018

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that (a) member(s) of the New York City Police Department engaged in misconduct on May 15, 2018, at the 77th Precinct stationhouse in Brooklyn.

I have previously tried to get in touch with you by phone and mail and have not heard from you. In order to investigate this complaint, I need to speak with you as soon as possible. If I do not hear from you, the CCRB may have to close this case without conducting a full and thorough investigation. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,

Magdalena Azmitia
Investigator





# CIVILIAN COMPLAINT REVIEW BOARD
100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ♦ TELEPHONE (212) 912-7235
www.nyc.gov/ccrb

BILL DE BLASIO
MAYOR

FREDERICK DAVIE
CHAIR

January 3, 2019

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that (a) member(s) of the New York City Police Department engaged in misconduct on May 15, 2018, at 77th Precinct stationhouse in Brooklyn.

I have previously tried to get in touch with you by phone and mail and have not heard from you. In order to investigate this complaint, I need to speak with you as soon as possible. If I do not hear from you, the CCRB may have to close this case without conducting a full and thorough investigation. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,

Magdalena Azmitia
Investigator

CCRB CTS - Confidential

# 50 – H HEARING

# DANIEL L. SCHNEIDER, ESQ.
## ATTORNEY AT LAW

49 WALWORTH AVENUE        TEL   (914) 725-5374
SCARSDALE, NEW YORK 10583     FAX  (914) 713-1136
                            EMAIL: danielschneideresq@gmail.com
                                   Date:   December 12, 2018

### NOTICE OF 50-H HEARING

015 – 280

Mark Garnes
P.O. Box 160363
Brooklyn, NY 11216
**_SENT BY CERTIFIED MAIL_**

                       Re: Claimant Name:    Mark Garnes
                              Claim Number:     2018PI032680

Dear Sir / Madam:

      Please take notice that, pursuant to Section 50-h of the General Municipal Law (GML), claimant is mandated by law to appear at the following location, at the date and time specified below, to be orally examined under oath relative to the occurrence and extent of injuries for which the above claim is made:

                Date of Hearing:    January 18, 2019
                Time of Hearing:    4:00 P.M.

           Location of Hearing: DAN SCHNEIDER – LEX REPORTING SERVICES
                               160 BROADWAY, 14TH FLOOR
                               NEW YORK, NY 10038
                               914-725-5374

**PLEASE CALL THIS OFFICE UPON RECEIPT OF THIS LETTER.**
      The Comptroller's Office of the City of New York requests that you bring with you an executed copy of an authorization to release records pursuant to Criminal Procedure Law Section 160.50. This authorization is needed to access sealed records covered by Criminal Procedure Law Section 160.50. If you have a question about the 160.50 authorization please consult with an attorney.

      The claimant should be accompanied by his/ her attorney. Claimant is further mandated, pursuant to Section 93(d) of the New York City Charter and Section 50-h of the GML, to present him/herself for a physical examination at a date and location to be provided under separate cover.

      Please note that all infant claimants must appear. The hearing will begin promptly at the time indicated and there will be no office space to meet with and prepare your client.

      Upon receipt of this notice, please contact us if a language interpreter for your client is necessary. One day prior to the hearing, we will call your office to confirm the date and time of the hearing. If you confirm the hearing date at that time and you subsequently fail to appear for the hearing, you will be charged by the City for any legal fee, interpreter fee and stenographic fee incurred.

All applications for adjournments should be directed via email to FIRM CONTACT

Claimants will be permitted one adjournment without cause. Application for such adjournments should be made at least one week prior to the hearing date. Applications for additional adjournments must include the reason for the request, and will be granted for good cause **only**.

If a claimant fails to appear for a scheduled hearing, a default will be declared and claimant's failure to appear will be raised as an affirmative defense in any lawsuit subsequently filed.

In order to prevent fraud, you are required to present proper identification prior to commencement of the hearing. Additionally, you are requested to bring to the hearing original photographs of the accident scene and copies of all documents relevant to this claim including but not limited to:

(1) prior written notice map;
(2) all medical and hospital records;
(3) authorizations for the Comptroller's Office to obtain, as applicable, medical, criminal, employment and/or school records, and loss of income documentation;
(4) police reports.

Pursuant to State and Federal law, the Comptroller's Office, through its attorneys taking hearings, is authorized to obtain, social security and Medicare or Medicaid numbers for tax and reporting purposes, and to allow for the collection of liens held by the City and State.

Please be advised that nothing contained herein shall be construed as extending the statute of limitations beyond the statutory time.

Please note that the office does not provide day care services. Therefore infants and small children will not be permitted in the office.

All questions with regard to this notice should be addressed to the undersigned at FIRM CONTACT. **ONE DAY PRIOR TO THE HEARING, YOU MUST CALL OR E-MAIL OUR OFFICE TO CONFIRM THE DATE AND TIME OF THE HEARING.**

**Please be aware that filing a false claim or aiding and abetting the filing of a false claim is a crime. Violators will be prosecuted to the fullest extent of the law.**

Sincerely,
Daniel L. Schneider

cc: Comptroller's office
1 Centre Street
NY, NY 10007

# NOTICE OF ADJOURNMENT

015 - 229

Law Firm:

Mark Garnes
P.O. Box 160363
Brooklyn, NY 11216

***SENT BY CERTIFIED MAIL***

Date: January 17, 2019

Re: ADJOURNMENT OF

50-H HEARING

Re: Claimant Name:   Mark Garnes
    Claim Number:   2018PI032680

Dear Sir / Madam:

    This is to confirm that the hearing for the above referenced claim has been adjourned and has been rescheduled for the following location and time:

        HEARING DATE:  April 24, 2019

        HEARING TIME:  3:30 P.M.

        LAW OFFICES OF: DAN SCHNEIDER – LEX REPORTING SERVICES
                160 BROADWAY, 14TH FLOOR
                NEW YORK, NY 10038

**PLEASE CALL THIS OFFICE UPON RECEIPT OF THIS LETTER: 914-725-5374**

    Please note that, as stated in the Notice of Hearing, claimant is permitted only one adjournment without cause. Applications for all additional adjournments must include the reason for the request and will be granted for good cause only. Applications for adjournments must be made in writing to FIRM CONTACT

    *All questions with regard to this notice should be addressed to the undersigned at* FIRM CONTACT. **ONE DAY PRIOR TO THE HEARING, YOU MUST CALL OR E-MAIL OUR OFFICE TO CONFIRM THE DATE AND TIME OF THE HEARING.**

    **Please be aware that filing a false claim or aiding and abetting the filing of a false claim is a crime. Violators will be prosecuted to the fullest extent of the law.**

                     Sincerely,
                      Daniel L. Schneider, Esq.
                     49 Walworth Avenue
                     Scarsdale, NY 10583
                     914-725-5374
                     danielschneideresq@gmail.com

Cc: Comptroller's Office
1 Centre Street
NY, NY 10007

OCA-335

OCA Official Form No.: 960

## AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA
### [This form has been approved by the New York State Department of Health]

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Mark Garnes | 5/15/1963 | |

| Patient Address |
|---|
| 1355 Pacific St. #1B, Bklyn NY 11216 |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:

8. Name and address of person(s) or category of person to whom this information will be sent:
OFFICE OF THE COMPTROLLER, ONE CENTRE ST, 12th FL, NY, NY 10007

9(a). Specific information to be released:
- [ ] Medical Record from (insert date) 5/16/2018 to (insert date) _____
- [ ] Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test result, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
- [ ] Other: _____

Include: *(Indicate by Initialing)*

_____ Alcohol/Drug Treatment
_____ Mental Health Information
_____ HIV-Related Information

**Authorization to Discuss Health Information**

(b) [ ] By initialing here _____ I authorize _____
Initials

to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: | 11. Date or event on which this authorization will expire: |
|---|---|
| [ ] At request of individual [X] Other: LITIGATION | END OF LITIGATION |

| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |
|---|---|
| | |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X _____  Date: 4/25/2019

Signature of patient or representative authorized by law.

\* Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.

NYHIPAA 8/09

STEPHANIE ANN MCELROY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MC6262370
Qualified in New York County
My Commission Expires 05-21-2020

# EXHIBITS 1 - 29

## DOMESTIC INCIDENT REPORT

| | Crime/Condition | Command 017-17TH PRECINCT Date of This Report 05/16/2018 |
|---|---|---|

| Date of UF61 | Complaint No. | Date Case Assigned 05/15/2018 | Case No. 2018 - 354 | Unit Reporting | Follow-Up No. 1 |
|---|---|---|---|---|---|

| Topic/Subject (DOMESTIC INCIDENT REPORT) DIR INFORMATION | Activity Date 05/15/2018 | Activity Time 00:00 |
|---|---|---|

| Agency N.Y. POLICE DEPT | ORI NY03030002 | NYPD DOMESTIC INCIDENT REPORT | Incident # 2018-017-000298 | Complaint # |
|---|---|---|---|---|

| Date of Report 05/15/2018 | Time of Report 1530 | Date of Occur 05/15/2018 | Time of Occur 1458 | Response Type RADIO RUN | ICAD # D18051516234 | ICAD N/A Reason: | Other Reason: |
|---|---|---|---|---|---|---|---|

| Unfounded NO | Address of Occurrence FDR DRIVE MANHATTAN NY | Pct 17 | PSA | Sector C | Body Worn Camera No |
|---|---|---|---|---|---|

### Victim: GARNES, MARK A

| Victim's Last Name, First M.I. GARNES, MARK A | Alias | Address 1355 PACIFIC STREET 1B BROOKLYN NY | Pct 77 | PSA |
|---|---|---|---|---|

| Sex: MALE Self-Identified: Race: BLACK Ethnicity: UNKNOWN Language: ENGLISH | Date of Birth: 05/15/1963 Age: 55 | Home Phone: 347 421-1384 Other Phone: | Member of Service: NO |
|---|---|---|---|

| SAFE# or way to contact AT PHONE NUMBER PROVIDED ABOVE | Other Identifier |
|---|---|

### Suspect: NEAL, SHENIQUA CHARISSE

| Suspect's Last Name, First M.I.. NEAL, SHENIQUA CHARISSE | Alias | Address 510 ATLANTIC AVENUE 822 BROOKLYN NY | Pct 84 | PSA |
|---|---|---|---|---|

| Sex: FEMALE Self-Identified: Race: BLACK Ethnicity: UNKNOWN Language: ENGLISH | Date of Birth: 01/16/1990 Age: 28 | Home Phone: 718 413 -0253 Other Phone: | Member of Service: NO |
|---|---|---|---|

| Do suspect and victim live together? NO | Suspect (P2) Relationship to Victim (P1): INTIMATE PARTNER/DATING | Suspect/P2 Present: YES | Was suspect injured? NO |
|---|---|---|---|

| Do the suspect and victim have a child in common? NO | Possible drug or alcohol use? NO | Suspect supervised? Status Unknown |
|---|---|---|

### Victim Interview

| Emotional condition of VICTIM? |
|---|

| What were the first words that VICTIM said to the Responding Officers at the scene regarding the incident? I TOOK HER TO HER PLACE AND SHE DID NOT WANT TO GET OFF THE CAR. NOW I JUST STOPPED BEACUSE I KNOW HOOW IT WOULD GO FOR ME. |
|---|

| Weapon Used? | Gun: | Access to Guns? NO | Injured? NO | In Pain? NO |
|---|---|---|---|---|

Ex. 1

| Did suspect make victim fearful? NO | | |
|---|---|---|
| Suspect Threats? | Strangulation? NO | Visible Marks? NO |

## Suspect

**What did the SUSPECT say (Before and After Arrest) :**
FEMALE STATED THAT SHE JUST WANTED HER APARTMENT KEYS WHICH ARE AT VICTIM'S APARTMENT.

**710.30 completed?** NO

## Child/Witness

| Person's Last Name,First M.I. | Alias | Address | Relationship | Date of Birth | Phone |
|---|---|---|---|---|---|

## Incident Narrative

**Briefly Describe the circumstances of this incident:**
WHILE TRAVELING N/B BOTH PARTIES INVOLVED GOT INTO AN AGREEMENT ABOUT THE APARTMENT KEYS OF THE APARTMENT OF SUSPECT. ACCORDING TO VICTIM, HE TOOK SUSPECT TO HIS PLACE SO SHE CAN GET HER KEYS OUT HIS APARTMENT BUT SUSPECT REFUSED TO EXIT HIS VEHICLE. SUSPECT STATED THAT SHE JUST WANTED HER APARTMENT KEYS. TO AVOID FURTHER ARGUMENT, VICTIM STOPPED ON THE HIGHWAY AND WAITED FOR POLICE TO RESPOND. THEY BOTH STATED THAT THEY USED TO DATE. SYSTEM IS NOT TAKE THE ICAD# 18051516234

| DIR Repository checked NO | Order of Protection Registry checked? NO | Order of Protection in effect? NO | Order of Protection Type? |
|---|---|---|---|

## Evidence

| Evidence Present NO | Photos Taken: | Other Evidence: | Destruction of Property? NO |
|---|---|---|---|

## Prior History

**Describe Victim's prior domestic incidents with this suspect (Last, Worst, First):**
NONE

## Has Suspect ever:

| If the Victim answers "yes" to any questions in this box refer to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider. | | | | | Local Domestic Violence Service Provider Phone No. |
|---|---|---|---|---|---|
| Threatened to kill you or your children? NO | Strangled or "choked" you? NO | Beaten you while you were pregnant? NO | Is suspect capable of killing you or children? NO | Is suspect violently and constantly jealous of you? NO | Has the physical violence increased in frequency or severity over the past 6 months? NO |

## Interpreter

| Interpreter Used | Interpreter Requested | Interpreter's Last Name, First | Internet Service Provider |
|---|---|---|---|

**Statement of Allegations/Supporting Desposition**
VERBAL ARGUMENT OVER KEYS APARTMENT

**Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endgerment?**

Ex. 2

| Was DIR given to the victim at scene?<br>NO | If No, Why?:<br>TYPED ON COMPUTER | Was Victim Rights Notice given to victim<br>YES | If No, Why?: | Entered By TaxID<br>946190 | Entered By Date<br>05/15/2018 |
|---|---|---|---|---|---|
| Reporting Officer: | Jurisdiction<br>N.Y. POLICE DEPT | Name<br>ROSARIO , ENMANUEL | Rank<br>POM | Tax ID<br>946190 | Date<br>05/15/2018 |
| Detective Assigned: | Name | | Rank | Tax ID | Date |
| Supervisor Sign-off: | Name<br>GRASSO , JACLYN | | Rank<br>SGT | Tax ID<br>939294 | Date<br>05/16/2018 |

| Reporting Officer: | Rank<br>POF | Name<br>KOMIKO CANDELARIOTOTH | | Tax Reg. No.<br>936291 | Command<br>017-17TH PRECINCT |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing<br>- | Date Reviewed<br>05/16/2018 | Date of Next Review | Name<br>JACLYN GRASSO | Supv. Tax No.<br>939294 |

Ex. 3

K18629833K

DV Report   Mark
            Garnes

2018-017-298  05|15|63

Icad # D18051516234

Complaint Report #
2018-077-002952

Arrest Report #
K18629833

DIR

Ex. 3a

**New York State**
## DOMESTIC INCIDENT REPORT

**Agency:** _____  A  **Incident #** _____

### Incident

| Reported Date (MM/DD/YYYY) | Time (24 hours) | Occurred Date (MM/DD/YYYY) | Time (24 hours) | ☐ Officer Initiated  ☐ Radio Run  ☐ Walk-in | Complaint # |
| --- | --- | --- | --- | --- | --- |
| | | | | ☐ ICAD (NYC) | |

**Address** (Street No., Street Name, Bldg. No., Apt No.): _Atlantic & Flatbush_

**City, State, Zip:** _____

### Suspect (P2)

**Name** (Last, First, M.I.) (Include Aliases): _Charlise, Shanique Noel_

**DOB** (MM/DD/YYYY): _____  **Age:** _____  ☐ Female  ☐ Male  ☐ Self-Identified

**Address** (Street No., Street Name, Bldg. No., Apt No.): _Atlantic Av_

**Suspect Phone Number:** _____  **Language:** _____

**City, State, Zip:** _Brooklyn, NY_

☐ White  ☐ Black  ☐ Asian   ☐ Hispanic  ☐ Non Hispanic  ☐ Unknown
☐ American Indian  ☐ Other   ☐ Other Identifier: _____

| Do suspect and victim live together? ☐ Yes ☐ No | Suspect/P2 present? ☐ Yes ☐ No | Was suspect injured? ☐ Yes ☐ No  If yes, describe: | Possible drug or alcohol use? ☐ Yes ☐ No | Suspect supervised? ☐ Probation ☐ Parole  ☐ Not Supervised  ☐ Status Unknown |
| --- | --- | --- | --- | --- |

**Suspect (P2) Relationship to Victim (P1)** ☐ Married ☐ Intimate Partner/Dating ☐ Formerly Married ☐ Former Intimate Partner ☐ Parent of Victim (P1) ☐ Child of Victim ☐ Relative: _____ ☐ Other: _____

**Do the suspect and victim have a child in common?** ☐ Yes ☐ No

### Victim Interview

**Emotional condition of VICTIM?** ☐ Upset ☐ Nervous ☐ Crying ☐ Angry ☐ Other: _____

**What were the first words that VICTIM said to the Responding Officers at the scene regarding the incident?**

**Did suspect make victim fearful?** ☐ Yes ☐ No If yes, describe:

**Weapon Used?** ☐ Yes ☐ No Gun: ☐ Yes ☐ No Other, describe: _____

**Suspect Threats?** ☐ Yes ☐ No  If Yes, Threats to: ☐ Victim ☐ Child(ren) ☐ Pet ☐ Commit Suicide ☐ Other Describe: _____

**Access to Guns?** ☐ Yes ☐ No If yes, describe:

**Injured?** ☐ Yes ☐ No  If yes, describe: _____

**In Pain?** ☐ Yes ☐ No  If yes, describe: _____

**Strangulation?** ☐ Yes ☐ No ☐ Loss of Consciousness ☐ Urination/Defecation ☐ Red eyes/Petechia ☐ Sore Throat ☐ Breathing Changed ☐ Difficulty Swallowing
**Visible Marks?** ☐ Yes ☐ No If yes, describe:

### Suspect

**What did the SUSPECT say** (Before and After Arrest) :

**710.30 completed?** ☐ Yes ☐ No

### Incident Narrative

**Briefly describe the circumstances of this incident:** _At 1230 PI WALKED INTO THE 77 PRECINCT ..._

| DIR Repository checked? ☐ Yes ☐ No | Order of Protection Registry checked? ☐ Yes ☐ No | Order of Protection in effect? ☐ Yes ☐ No  ☐ Refrain  ☐ Stay Away |
| --- | --- | --- |

### Evid

| Evidence Present? ☐ Yes ☐ No | Photos taken: ☐ Victim Injury ☐ Suspect Injury  ☐ Other: | Other Evidence: ☐ Damaged Property ☐ Videos  ☐ Electronic Evidence ☐ Other: | Destruction of Property? ☐ Yes ☐ No  If yes, Describe: |
| --- | --- | --- | --- |

### Offense

| Offense Committed? ☐ Yes ☐ No | Was suspect arrested? ☐ Yes ☐ No  If no, explain: | Offense 1 | Law (e.g. PL) | Offense 2 | Law (e.g. PL) |
| --- | --- | --- | --- | --- | --- |

_Ex. 4_

VICTIM / COMPLAINANT COPY

| Agency: | **B** | | Incident # | Complaint # |
|---|---|---|---|---|

**Prior History**

Describe Victim's prior domestic incidents with this suspect (Last, Worst, First):

_____

_____

_____

_____

If the Victim answers "yes" to any questions in this box refer to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider: (        ) _____.

| Has Suspect ever: | Is suspect capable of killing you or children? | ☐ Yes ☐ No |
|---|---|---|
| Threatened to kill you or your children? ☐ Yes ☐ No | Is suspect violently and constantly jealous of you? | ☐ Yes ☐ No |
| Strangled or "choked" you?   ☐ Yes ☐ No | Has the physical violence increased in frequency or severity over the past 6 months? | |
| Beaten you while you were pregnant? ☐ Yes ☐ No | | ☐ Yes ☐ No |

Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endangerment? ☐ Yes ☐ No

If Yes, the Officer must contact the **NYS Child Abuse Hotline Registry # 1-800-635-1522.**

| Was DIR given to the Victim at the scene? ☐ Yes ☐ No  if **NO**, Why: | Was Victim Rights Notice given to the Victim? ☐ Yes ☐ No if **NO**, Why: |
|---|---|

_Signatures:_

| Reporting Officer (Print and Sign include Rank and ID#) | Supervisor (Print and Sign include Rank and ID#) |
|---|---|

## STATEMENT OF ALLEGATIONS/SUPPORTING DEPOSITION

\* Officers are encouraged to assist the Victim in completing this section of the form.

**Suspect Name** (Last, First, M.I) _Charise  Sheniqua_

I _Hope Gaines_____ (Victim/Deponent Name) state that on __05_ / _15_ / _2018_ , (Date)

at _2 Atlantic & Flatbush_____ (Location of incident) in the County/City/Town/Village

of the State of New York, the following did occur: _He a verbal dispute_

_with his girlfriend - Sheniqua Charise. Then Sheniqua attacked_

_him by scratching him on his face & neck._

_____

_____

_____

_____

_____

(Use additional page as needed)

**False Statements made herein are punishable as a Class A Misdemeanor, pursuant to section 210.45 of the Penal Law.**

| Victim/Deponent Signature | Date | | **Note:** | Page |
|---|---|---|---|---|
| Witness or Officer Signature | Date | | _Whether or not this form is signed, this DIR Form will be filed with Law Enforcement._ | ___ Of ___ |
| Interpreter Signature and Interpreter Service Provider Name | | | | |
| Interpreter Requested ☐ Yes ☐ No Interpreter Used ☐ Yes ☐ No | Date | Ex. 5 | | |

VICTIM / COMPLAINANT COPY

# IF YOU ARE THE VICTIM OF DOMESTIC VIOLENCE, THE POLICE AND COURTS CAN HELP.

## What the Police Can Do:
*Assist you with finding a safe place, a place away from the violence.
*Inform you about how the court can help protect you from the violence.
*Help you and your children get medical care for any injuries you received.
*Assist you in getting necessary belongings from your home.
*Provide you with copies of police reports about the violence.
*File a complaint in criminal court, and tell you where your local criminal and family courts are located.

## What the Courts Can Do:
*If the person who harmed you or threatened you is a relative by blood or marriage, or is someone you've had a child with, or is someone with whom you are or have had an intimate relationship, then you have the right to take your case to family court, criminal court or both.
*The forms you need are available from the family court and the criminal court.
*The courts can decide to provide a temporary order of protection for you, your children and any witnesses who may request one.
*The family court may appoint a lawyer to help you if the court finds that you cannot afford one.
*The family court may order temporary child support and temporary custody of your children.

**New York Law States:** If you are the victim of domestic violence, you may request that the officer assist in providing for your safety and that of your children, including providing information on how to obtain a temporary order of protection. You may also request that the officer assist you in obtaining your essential personal effects and locating and taking you, or assist in making arrangements to take you, and your children to a safe place within such officer's jurisdiction, including but not limited to a domestic violence program, a family member's or a friend's residence, or a similar place of safety. When the officer's jurisdiction is more than a single county, you may ask the officer to take you or make arrangements to take you and your children to a place of safety in the county where the incident occurred. If you or your children are in need of medical treatment, you have the right to request that the officer assist you in obtaining such medical treatment. You may request a copy of any incident reports at no cost from the law enforcement agency. You have the right to seek legal counsel of your own choosing and if you proceed in family court and if it is determined that you cannot afford an attorney, one must be appointed to represent you without cost to you. You may ask the district attorney or a law enforcement officer to file a criminal complaint. You also have the right to file a petition in the family court when a family offense has been committed against you. You have the right to have your petition and request for an order of protection filed on the same day you appear in court, and such request must be heard that same day or the next day court is in session. Either court may issue an order of protection from conduct constituting a family offense which could include, among other provisions, an order for the respondent or defendant to stay away from you and your children. The family court may also order the payment of temporary child support and award temporary custody of your children. If the family court is not in session, you may seek immediate assistance from the criminal court in obtaining an order of protection. The forms you need to obtain an order of protection are available from the family court and the local criminal court. The resources available in this community for information relating to domestic violence, treatment of injuries, and places of safety and shelters can be accessed by calling the following 800 numbers. Filing a criminal complaint or a family court petition containing allegations that are knowingly false is a crime.
*(NYS Criminal Procedure Law, Section 530.11 (6))*

| | |
|---|---|
| **NEW YORK STATE**<br>**24 HOUR DOMESTIC AND SEXUAL**<br>**VIOLENCE HOTLINE**<br>**1-800-942-6906**<br>**English and Español, Multi-language Accessibility**<br>**National Relay Service for Deaf or Hard of Hearing:711**<br><br>**NEW YORK CITY (all languages)**<br>**1-800-621-Hope (4673) or 311** | **COURT INFORMATION**<br><br>New York City—Criminal Court Information<br>**1-646-386-4500**<br><br>To obtain court information for other areas of NYS, ask the responding officer for court numbers,<br>consult your phone directory, or call the Domestic and Sexual Violence Hotline (1-800-942-6906) |

## VICTIM INFORMATION AND NOTIFICATION EVERYDAY (VINE)

Victims may receive information relating to the status and release dates of persons incarcerated in state prison or local jails in New York State. For more information on this program and how you can register, call

**1-888-VINE-4NY (1-888-846-3469) or www.vinelink.com**

## STATEWIDE AUTOMATED VICTIM INFORMATION AND NOTIFICATION (SAVIN-NY)
Victim notification program which allows domestic violence victims to register to be notified when an
Order of Protection has been served
**www.nyalert.gov**

Ex. 6

Misc. 9174 (Rev. 06-08)

## CENTRAL BOOKING

### PRISONER'S PROPERTY FORM

PRISONER'S NAME _Carnes, Mark_   ARREST # _K16-298336_   DATE _5-15-18_

FUNDS COUNTED AND RETURNED (include total value of coins). $ _100.00_   PCT. _077_

THE BELOW LISTED ITEMS WERE REMOVED FROM PRISONER FOR RETURN TO PRISONER AT COURT OR ON RELEASE ON D.A.T.

### PROPERTY - DESCRIBE

☑ SHOE LACES  ☐ HAIR PICK/ COMB  ☐ PEN  ☐ LIGHTER  ☐ HANDBAG  ☐ BELTS  ☐ KEYS  ☐ NAIL CLIPPER

☐ OTHER (DESCRIBE) _____

(Signature - Prisoner)

(Signature - Arresting Officer)

(Member searching if other than A.O.)

**NOTE:** If no funds counted and returned, indicate "NONE". If no property removed and safeguarded, indicate "NONE".

**Distribution - Original to C.B. - Duplicate to prisoner - Triplicate to Court Package**

18983 (Shield)   077 (Command)

(Reviewing Officer)

Ex. 6a



Ex. 9



Ex. 8



Ex. 9.



Ex. 10



Ex. 11.



Ex. 12.



Ex. 13



Ex. 14



Ex.15



Ex. 16



Ex. 17.

'RI No:  NY023033J
'rder No:  2018-014488
'YSID No:  04556247R
'JTN No:

Ex 10

At a term of the New York City Criminal Court, Kings County Branch, County of Kings, at the Courthouse at 120 Schermerhorn Street, Brooklyn, NY 11201, State of New York

Criminal Form  1  12/2013

'RESENT:  Honorable Raymond Rodriguez

ORDER OF PROTECTION
Family Offenses - C.P.L. 530.12

EOPLE OF THE STATE OF NEW YORK

- against -

☐ Youthful Offender (check if applicable)

IARK GARNES ,
'efendant

Part: APAR2   Case No.:  2018KN023543

Charges: PL 120.00 01 AM, 1 count(s) of A Misd, 1 count(s) of B Misd

'OB: 05/15/1963

Defendant Present in Court

OTICE:  YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY ESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CONTEMPT OF COURT. IF THIS IS A TEMPORARY ORDER OF PROTECTION ND YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND ONTINUE IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

HIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR OMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR ERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS RDER.

☒  TEMPORARY ORDER OF PROTECTION - Whereas good cause has been shown for the issuance of a temporary order of protection

☐  ORDER OF PROTECTION - Whereas defendant has been convicted of [specify crime or violation]:

And the Court having made a determination in accordance with section 530.12 of the Criminal Procedure Law,

' IS HEREBY ORDERED that the above-named defendant MARK GARNES (DOB: 05/15/1963) observe the following conditions of 'ehavior:

1]   Stay away from [A]    SHENIQUA NEAL;

[B]   the home of SHENIQUA NEAL;

[C]   the school of SHENIQUA NEAL;

[D]   the business of SHENIQUA NEAL;

[E]   the place of employment of SHENIQUA NEAL;

4]   Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with SHENIQUA NEAL;

2]   Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against SHENIQUA NEAL;

2]   Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not limited to, the following: ANY AND ALL and do not obtain any further guns or other firearms. Such surrender shall take place immediately, but in no event later than IMMEDIATELY at LOCAL PRECINCT;

']   Observe such other conditions as are necessary to further the purposes of protection: NO THIRD PARTY CONTACT;

' IS FURTHER ORDERED that the above-named Defendant's license to carry, possess, repair, sell or otherwise dispose of a firearm or earms, if any, pursuant to Penal Law §400.00, is hereby [13A] suspended, and [13C] the Defendant shall remain ineligible to receive a earm license during the period of this order.

' IS FURTHER ORDERED that this order of protection shall remain in force until and including 11/30/2018, but if you fail to appear in urt on this date, the order may be extended and continue in effect until a new date set by the Court.
ATED: 05/16/2018

bGr74EeGBsOEHyr---08/18/2018 10:32 AM

Honorable Raymond Rodriguez

☐ Defendant advised in Court of issuance and contents of Order.

☐ Order to be served by other means [specify]: _____

☐ Warrant issued for Defendant

☐ Order personally served on Defendant in Court

bGr74EeGBsOEHyr---08/18/2018 10:32 AM

(Defendant's signature)

☐ ADDITIONAL SERVICE INFORMATION [specify]: _____

e Criminal Procedure Law provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties ll authorize and in some situations may require, such officer to arrest a defendant who is alleged to have violated its terms and to bring him or her before the Court to face alties authorized by law.

leral law requires that this order be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or session of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has been or will be afforded reasonable notice and ortunity to be heard in accordance with state law sufficient to protect that person's rights (18 USC §§2265, 2266).

 s a federal crime to:
oss state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
uy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law orcement officers but only while they are on duty); and
uy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of sical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. 922(g)(8), §§922(g)(9); 2261, 2261A, 2262).

Ex 1p

Ex/9

# CRIMINAL COURT OF THE CITY OF NEW YORK

| Docket Number | Arraignment Date | Arraignment Judge |
|---|---|---|

You are to appear in Court on _____6/29_____ by 9:30 A.M. at Part ___DV1 (8th fl.)___ located at
120 Schermerhorn Street, Brooklyn, N.Y. 11201.

Your bail has been fixed at    $ _____    Insurance Company Bail Bond.
                                  or
                          $ _____    Cash Bail.

If you are released and you fail to appear at the time, date, and place indicated above,
    A Warrant for your Arrest will be issued.
    Your Bail, if any, will be forfeited.
    You may be charged with the crime of Bail Jumping.

If you are committed:
    You have the right to communicate with relatives or friends by letter or telephone free of charge.
    You have the right to the aid of counsel at every stage of the proceedings.

If you desire counsel and are financially unable to obtain counsel, counsel shall be assigned to you.

## PLEASE BRING THIS NOTICE WITH YOU WHENEVER YOU APPEAR IN COURT.

 **Weill Cornell**     ⅃ **NewYork-Presbyterian**
                                              ⅂ Weill Cornell Medical Center

**Trenton Collier, MD**                    Phone: 646-962-5665
                                           Fax: 646-962-5687

156 William Street
7th Floor
New York, NY 10038


Mr. Mark Garnes
1355 PACIFIC STREET
APT #1B
BROOKLYN, NY 11216


5/16/2018

Dear Mark Garnes,

This is a reminder for your upcoming appointment with Trenton Collier, MD.

Date:  5/23/18
Time:  2:00 PM
Department: WCMC INTERNAL MEDICINE 156 WILLIAM ST 7 FL
WEILL CORNELL INTERNAL MEDICINE ASSOCIATES
156 William St. 7th Floor
New York NY 10038-5327
Location: 156 William St. 7th Floor
New York NY 10038-5327
Visit Type:New Patient Visit

Instructions:

If for any reason you are unable to keep this appointment, please contact the office at
646-962-5665 to reschedule.

Sincerely,


Trenton Collier, MD


 **Weill Cornell**     ⅃ **NewYork-Presbyterian**
                       Medicine              ⅂ Lower Manhattan Hospital

**Trenton Collier, M.D.**

Assistant Professor of Clinical Medicine     156 William Street
Adult Internal Medicine                      7th Floor
Department of Medicine                       New York, NY 10038

                                             T 646.962.5665
                                             F 646.962.5687

Ex. 20

| Practice LLP, Job #81633: Run by KWASH on 05/16/2018.<br>Job Title: PAYMENT RECEIPT | Close |
|---|---|

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * *
    ACCOUNT NUMBER: 3173010 / 1        RECEIPT DATE: 05/16/2018
* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PATIENT: MARK GARNES
ADDRESS: 1355 PACIFIC STREET
         1B
         BROOKLYN NY 11216


* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PRACTICE..........:      PROHEALTH CARE ASSOC, LLP
DATE OF SERVICE...:      05/16/2018
PLACE OF SERVICE..:      PROHEALTH URGENTCARE MEDICINE,BKHGT
PAYMENT RECEIVED..:      $40.00
PAYMENT TYPE......:      CO-PAYMENT (CASH)
PROVIDER..........:      BROOKLYN 26 COURT STREET URGENT CAR / PROVGRP: PROHEALTH URGENT CARE
CHARGE SLIP NUMBER:      21061196
BILLING AREA......:      0000
USER..............:      KWASH
```

Ex. 21

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

**MARK GARNES**
Male  DOB: 05/15/1963

Home: (347)421-1384

**05/16/2018 - Office Visit: Urgent Care Visit_new_rm 7**
**Provider: Tanesha Lawrence, MD**
**Location of Care: Brooklyn Heights Urgent Care**

## Urgent Care Visit

**Accompanied By:** Patient
**Source:** Patient

## Vital Signs
**Height:**          69 inches
**Weight:**          175 pounds
**Weight:**          79.55 kg
**BMI:**             25.84
**BMI Classification:** Normal.

**Pulse Rate:**      92 /min
**Resp:**            16 /min
**O2 Sat:**          98 %
**Temp:**            98.4 deg F
**Temp Site:**       oral
**BP sitting:**      116 / 85 (L arm)
**BP Follow-Up:** Normal Blood Pressure reading – No follow-up required.

Vitals Entered By: Chanel Sanchez (May 16, 2018 3:21 PM)
Vitals Reviewed By: Tanesha Lawrence, MD (May 16, 2018 3:28 PM)

**CC:** Skin Complaint

**History of Present Illness:**
55 y.o. here for evaluation of scratches on face after domestic dispute with ex-girlfriend. Patient reports he was driving in his car with a female friend--his ex-girlfriend who was standing on the corner jumped into the car and began assaulting him. He sustained scratches to the L side of his face and R upper arm.  He cleaned the wounds with peroxide. He is here for medical evaluation and for assessment for infection. He denies fever, chills, n/v/d, CP, SOB, wheezing, HA, dizziness, focal weakness.

## Past Medical History
Unremarkable/No Significant Hx

## Past Surgical History
No surgeries

## Social History
Denies tobacco/ETOH and drug use

Ex. 22

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

May 16, 2018
Page 2
Office Visit

Home: (347)421-1384

**MARK GARNES**
Male  DOB: 05/15/1963

**Medications:**
Medications were reviewed with the patient during this visit.

No known medications.

**Allergies:**
Allergies were reviewed with the patient during this visit.

No known allergies.

**Problems:**
Problems were reviewed with the patient during this visit.

## Review of Systems

**General:**
Denies recent illness, fever

**Eyes**
Denies redness, discharge

**ENT**
Denies sore throat, congestion, nasal discharge

**CV**
Denies chest pain, palpitations, lightheadedness

**Resp**
Denies cough, sputum production

**MSK**
Denies joint pain, muscle aches

**GI**
Denies nausea, vomiting, diarrhea

**GU**
Denies urgency, frequency

**Skin**
**Complains of abrasion**

**Neuro**
Denies lightheadedness, dizziness

## Physical Exam

**General:**

Ex. 23

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

May 16, 2018
Page 3
Office Visit

**MARK GARNES**
Male  DOB: 05/15/1963

Home: (347)421-1384

    Patient in no acute distress.

**Head:**
    Normocephalic

**Eyes:**
    EOM intact, conjunctiva clear, no discharge.

**Ears:**
    TMs and canals without erythema.

**Mouth/Throat:**
    No erythema or exudate.

**Resp/Lungs:**
    Clear to auscultation, no wheezing or rhonchi.

**CV:**
    Regular rate and rhythm without murmurs.

**Skin:**
    R upper arm with 1-2 minor abrasions above antecubital area

L face= linear red abrasions just inferior to L eye going across L maxilla and around to L posterior scalp.
No open skin. No pus drainage, bleeding, warmth, swelling, tenderness

**Impression and Plan**

**Problem 1:**
**Problem:** ABRASION OF OTHER PART OF HEAD, INITIAL ENCOUNTER (ICD-910.0)
**Comment:** No signs of acute infection at this time
Monitor for signs and symptom of infection including increasing redness, warmth, tenderness, swelling
-Continue wound care
-Monitor for self resolution

**Problem 2:**
**Problem:** ASSAULT (ICD-E968.9)

**Patient Instructions**
Wound Care

Wound care helps prevent pain and infection.
You may need a tetanus shot if:
- You cannot remember when you had your last tetanus shot.
- You have never had a tetanus shot.
- The injury broke your skin.
If you need a tetanus shot and you choose not to have one, you may get tetanus. Sickness from tetanus
can be serious.

HOME CARE
- Only take medicine as told by your doctor.
- Clean the wound daily with mild soap and water.
- Change any bandages (dressings) as told by your doctor.

*Ex. 24*

**Brooklyn Heights Urgent Care**
26 Court Street  Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

**MARK GARNES**                                    Home: (347)421-1384
Male  DOB: 05/15/1963

- Put medicated cream and a bandage on the wound as told by your doctor.
- Change the bandage if it gets wet, dirty, or starts to smell.
- Take showers. Do not take baths, swim, or do anything that puts your wound under water.
- Rest and raise (elevate) the wound until the pain and puffiness (swelling) are better.
- Keep all doctor visits as told.

GET HELP RIGHT AWAY IF:
- Yellowish-white fluid (pus) comes from the wound.
- Medicine does not lessen your pain.
- There is a red streak going away from the wound.
- You have a fever.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

Open Wound, Forearm

An open wound is a break in the skin because of an injury. An open wound can be a scrape, cut, or puncture to the skin. Good wound care will help to:
- Reduce pain.
- Prevent infection.
- Reduce scaring.

HOME CARE
- Rest and raise (elevate) the injured arm on a pillow. This will help keep the puffiness (swelling) down.
- Wash all dirt off the wound.
- Clean the wounds daily with gentle soap and water.
- Apply medicated cream after the wound has been cleaned or as told by your doctor.
- Apply a clean bandage (dressing) daily if necessary.

GET HELP RIGHT AWAY IF:
- There is increased redness or puffiness in or around the wound.
- Your pain increases.
- You or your child has a temperature by mouth above 102 degrees F (38.9 degrees C), not controlled by medicine.
- Your baby is older than 3 months with a rectal temperature of 102 degrees F (38.9 degrees C) or higher.
- Your baby is 3 months old or younger with a rectal temperature of 100.4 degrees F (38 degrees C) or higher.
- A yellowish white fluid (pus) comes from the wound.
- Your pain is not controlled with pain relievers.
- You cannot move or feel your fingers.
- There is red streaking of the skin that goes above or below the wound.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

AFTER DISCHARGE

Ex. 25

May 16, 2018
Page 5
Office Visit

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

**MARK GARNES**                                          Home: (347)421-1384
Male  DOB: 05/15/1963

After you are discharged, you must monitor your condition and watch for any worsening of symptoms. If you do not improve, or your symptoms worsen, do one of the following.

- contact your primary care physician
- return here for re evaluation
- call here to speak with a physician.

**Additional Instructions:** Today you were seen for abrasions to the face and arm after a reported assault. There are no  signs of acute infection at this time.  Please monitor for signs and symptoms of infection including increasing redness, warmth, tenderness, swelling, bleeding, etc.   If you experience any of these symptoms or any worsening symptoms please seek additional medical attention.

Patient advised to avoid assailant as much as possible

Discharge instructions printed at: May 16, 2018 3:41 PM

**Electronically Signed by Tanesha Lawrence, MD on 05/16/2018 at 3:42 PM**

Ex. 26

**Brooklyn Heights Urgent Care**
26 Court Street  Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

*May 16, 2018*
Page 1

# Patient Information - Wound care

**For:** MARK GARNES



**PROHEALTH URGENT CARE**
26 Court Street
Brooklyn, NY 11242
T: 347-335-0062
www.prohealthurgentcare.com

**Today's Provider:** Tanesha Lawrence, MD

## Wound Care

Wound care helps prevent pain and infection.
**You may need a tetanus shot if:**
- You cannot remember when you had your last tetanus shot.
- You have never had a tetanus shot.
- The injury broke your skin.

If you need a tetanus shot and you choose not to have one, you may get tetanus. Sickness from tetanus can be serious.
HOME CARE
- Only take medicine as told by your doctor.
- Clean the wound daily with mild soap and water.
- Change any bandages (*dressings*) as told by your doctor.
- Put medicated cream and a bandage on the wound as told by your doctor.
- Change the bandage if it gets wet, dirty, or starts to smell.
- Take showers. **Do not** take baths, swim, or do anything that puts your wound under water.
- Rest and raise (*elevate*) the wound until the pain and puffiness (*swelling*) are better.
- Keep all doctor visits as told.
GET HELP RIGHT AWAY IF:
- Yellowish-white fluid (*pus*) comes from the wound.
- Medicine does not lessen your pain.
- There is a red streak going away from the wound.
- You have a fever.
MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.
Document Released: 09/26/2009 Document Revised: 03/11/2013 Document Reviewed: 04/22/2012
ExitCare® Patient Information ©2013 ExitCare, LLC.
## Open Wound, Forearm
An open wound is a break in the skin because of an injury. An open wound can be a scrape, cut, or puncture to the skin. Good wound care will help to:
- Reduce pain.
- Prevent infection.
- Reduce scaring.
HOME CARE
- Rest and raise (*elevate*) the injured arm on a pillow. This will help keep the puffiness (*swelling*) down.
- Wash all dirt off the wound.

Ex. 27

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

*May 16, 2018*
Page 2

## Patient Information - Wound care

**For:** MARK GARNES

- Clean the wounds daily with gentle soap and water.
- Apply medicated cream after the wound has been cleaned or as told by your doctor.
- Apply a clean bandage (*dressing*) daily if necessary.

GET HELP RIGHT AWAY IF:
- There is increased redness or puffiness in or around the wound.
- Your pain increases.
- You or your child has a temperature by mouth above 102° F (38.9° C), not controlled by medicine.
- Your baby is older than 3 months with a rectal temperature of 102° F (38.9° C) or higher.
- **Your baby is 3 months old or younger with a rectal temperature of 100.4° F (38° C) or higher.**
- A yellowish white fluid (*pus*) comes from the wound.
- Your pain is not controlled with pain relievers.
- You cannot move or feel your fingers.
- There is red streaking of the skin that goes above or below the wound.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.


**MEDICATIONS AND FOLLOW UP**


**AFTER DISCHARGE**

After you are discharged, you must monitor your condition and watch for any worsening of symptoms. If you do not improve, or your symptoms worsen, do one of the following.

-contact your primary care physician
-return here for re evaluation
-call here at 347-335-0062 to speak with a physician.

**Additional Instructions:**
Today you were seen for abrasions to the face and arm after a reported assault. There are no signs of acute infection at this time.  Please monitor for signs and symptoms of infection including increasing redness, warmth, tenderness, swelling, bleeding, etc.   If you experience any of these symptoms or any worsening symptoms please seek additional medical attention.

Patient advised to avoid assailant as much as possible

Ex. 28

SEALED
pursuant to Section 160.50 of the CPL

# KINGS CRIMINAL COURT

120 Schermerhorn St, Brooklyn, NY 11201
Phone: (646) 386-4500 Fax: (718) 643-7733

**NO FEE**
**Non-Public**
**Version**

Page 1 of 1

Certificate #: U-0000101616-N

| | |
|---|---|
| The People of the State of New York | |
| vs. | **Certificate of Disposition** |
| **Mark Garnes** | |

Defendant DOB: 05/15/1963

Docket Number: CR-023543-18KN
Legacy Docket Number: 2018KN023543

Arrest Date: 05/15/2018    Arraignment Date: 05/16/2018

THIS IS TO CERTIFY that the undersigned has examined the files of the Kings Criminal Court concerning the above entitled matter and finds the following:

| Count | Arraignment Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 120.00 01 AM Aslt 3-W/Int Cause Phys Injury **SEALED 160.50** | AM | Dismissed (Speedy) Trial (CPL 170.30 (1)(e)), Sealed (160.50) | 08/17/2018 |
| 2 | PL 110-120.00 01 BM Attempted Aslt 3- W/Int Cause Phys Injury **SEALED 160.50** | BM | Dismissed (Speedy) Trial (CPL 170.30 (1)(e)), Sealed (160.50) | 08/17/2018 |
| 3 | PL 120.15 BM Menacing-3rd **SEALED 160.50** | BM | Dismissed (Speedy) Trial (CPL 170.30 (1)(e)), Sealed (160.50) | 08/17/2018 |
| 4 | PL 240.26 01 V Harassment-2nd-Physical Cntact **SEALED 160.50** | V | Dismissed (Speedy) Trial (CPL 170.30 (1)(e)), Sealed (160.50) | 08/17/2018 |

CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL.

Dated: September 17, 2018

Chief Clerk/Clerk of the Court

It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.58 or 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law, in connection with the licensing, employment or providing of credit or insurance to such individual, provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. [Executive Law § 296 (16)]

CPL 160.50: All official records (excluding published court decisions or opinions or records and briefs on appeal) related to the arrest or prosecution on file with the Division of Criminal Justice Services, any court, police agency or prosecutor's office shall not be available to any person or public or private agency.

Arraignment charges may be the same as the original arrest charges.

DISPOSITION OF DISCIPLINARY

COMMAND
PRESENT DATE OF
RANK NAME TAX HA HAHGES
DT3 DOUGLAS CARE 907 77 0 QUAD 05/20/2011

1. WRONGFULLY CLASSIFIED A COMPLAINT REPORT INCORRECTLY.GUILTY
PENALTY: DATE 9F 06/05/2012

ForfEIKure of fifteen (15) vacatlon days.

2009-2314 Fo KEVIN MORRIS 944. TD 4 IAD 10/25/2009

1. WHILE nu-ry A DEPARTMENT INVESTIGATION oF A POLICE INCIDENT.GUILTV

PENALTY: DATE 9F 06/05/2012

Forfeiture of twenty (20) vacatlon days.

2011-4509 PO KEVIN MORRIS 9448- TD 4 IAE 11/08/2011

1. FAILED To NOTIFY COMMANDING OFFICER OF CHANGES To RESIDENTIAL
ADDRESS.GUILTV

PENALTY: DATE 9F 06/05/2012
'ee caseb 2009-2314 for penalty

2011-4247 1212 EEATRICE EALAGUEN 9140- MAN.CT. IAD 06/02/2011
SECT.

SPECIFICATIONSIDISPOSITIONS

1. WRONGFULLY REPORTED AND FILED A FALSE COMPLAINT REPORT ALLEGING A BURGLARY
AND
AN ASSAULT IN SAID RESIDENCE.GUILTY

2. WRONGFULLY BROKE A GLASS DOOR BELONGING To ANOTHER INDIVIDUAL KNOWN To THE

DEPARTMENT .GUILTY
PENALTY: DATE OF 06/05/2012

Dismissal from the New York City Police Department; however, judgment is
suspended and
respondent will be placed on Dismissal Probation for a period one (1) year.
Forfeiture

1

Ex.3b

of time/leave balances, Service retirement on completion of twenty (20) years, thirty (30)
vacation days.

— 5 — ED. 218

Ex. 30a

# EXHIBITS 1 - 29

| DOMESTIC INCIDENT REPORT | | | Crime/Condition | Command<br>017-17TH PRECINCT<br>Date of This Report<br>05/16/2018 |
|---|---|---|---|---|
| Date of UF61 | Complaint No. | Date Case Assigned<br>05/15/2018 | Case No.<br>2018 - 354 | Unit Reporting | Follow-Up No.<br>1 |

| Topic/Subject<br>(DOMESTIC INCIDENT REPORT) DIR INFORMATION | | Activity Date<br>05/15/2018 | Activity Time<br>00:00 |
|---|---|---|---|

| Agency<br>N.Y. POLICE<br>DEPT | ORI<br>NY03030002 | NYPD DOMESTIC<br>INCIDENT REPORT | Incident #<br>2018-017-000298 | Complaint # |
|---|---|---|---|---|
| Date of Report<br>05/15/2018 | Time of Report<br>1530 | Date of Occur<br>05/15/2018 | Time of Occur<br>1458 | Response Type<br>RADIO RUN | ICAD #<br>D18051516234 | ICAD N/A Reason: | Other Reason: |
| Unfounded<br>NO | Address of Occurrence<br>FDR DRIVE MANHATTAN NY | | Pct<br>17 | PSA | Sector<br>C | Body Worn Camera<br>No |

Victim: GARNES, MARK A

| Victim's Last Name, First M.I.<br>GARNES, MARK A | Alias | Address<br>1355 PACIFIC STREET 1B BROOKLYN NY | Pct<br>77 | PSA |
|---|---|---|---|---|
| Sex: MALE<br>Self-Identified:<br>Race: BLACK<br>Ethnicity: UNKNOWN<br>Language: ENGLISH | Date of Birth: 05/15/1963<br>Age: 55 | | Home Phone: 347 421-1384<br>Other Phone: | Member of Service: NO |
| SAFE# or way to contact<br>AT PHONE NUMBER PROVIDED ABOVE | | Other Identifier | | |

Suspect: NEAL, SHENIQUA CHARISSE

| Suspect's Last Name, First M.I..<br>NEAL, SHENIQUA CHARISSE | Alias | Address<br>510 ATLANTIC AVENUE 822 BROOKLYN NY | Pct<br>84 | PSA |
|---|---|---|---|---|
| Sex: FEMALE<br>Self-Identified:<br>Race: BLACK<br>Ethnicity: UNKNOWN<br>Language: ENGLISH | Date of Birth: 01/16/1990<br>Age: 28 | | Home Phone: 718 413 -0253<br>Other Phone: | Member of Service: NO |
| Do suspect and victim live together?<br>NO | Suspect (P2) Relationship to Victim (P1):<br>INTIMATE PARTNER/DATING | Suspect/P2 Present:<br>YES | Was suspect injured?<br>NO |
| Do the suspect and victim have a child in common?<br>NO | Possible drug or alcohol use?<br>NO | | Suspect supervised?<br>Status Unknown |

| Victim Interview |
|---|
| Emotional condition of VICTIM? |
| What were the first words that VICTIM said to the Responding Officers at the scene regarding the incident?<br>I TOOK HER TO HER PLACE AND SHE DID NOT WANT TO GET OFF THE CAR. NOW I JUST STOPPED BEACUSE I KNOW HOOW IT WOULD GO FOR ME. |

| | Weapon Used? | Gun: | Access to Guns? NO | Injured? NO | In Pain? NO |
|---|---|---|---|---|---|

Ex. 1

| Did suspect make victim fearful? NO | | | | | |
| Suspect Threats? | | | Strangulation? NO | | Visible Marks? NO |

**Suspect**

What did the SUSPECT say (Before and After Arrest) :
FEMALE STATED THAT SHE JUST WANTED HER APARTMENT KEYS WHICH ARE AT VICTIM'S APARTMENT.

710.30 completed? NO

**Child/Witness**

| Person's Last Name,First M.I. | Alias | Address | Relationship | Date of Birth | Phone |
|---|---|---|---|---|---|

**Incident Narrative**

Briefly Describe the circumstances of this incident:
WHILE TRAVELING N/B BOTH PARTIES INVOLVED GOT INTO AN AGREEMENT ABOUT THE APARTMENT KEYS OF THE APARTMENT OF SUSPECT. ACCORDING TO VICTIM, HE TOOK SUSPECT TO HIS PLACE SO SHE CAN GET HER KEYS OUT HIS APARTMENT BUT SUSPECT REFUSED TO EXIT HIS VEHICLE. SUSPECT STATED THAT SHE JUST WANTED HER APARTMENT KEYS. TO AVOID FURTHER ARGUMENT, VICTIM STOPPED ON THE HIGHWAY AND WAITED FOR POLICE TO RESPOND. THEY BOTH STATED THAT THEY USED TO DATE. SYSTEM IS NOT TAKE THE ICAD# 18051516234

| DIR Repository checked NO | Order of Protection Registry checked? NO | Order of Protection in effect? NO | Order of Protection Type? |
|---|---|---|---|

**Evidence**

| Evidence Present NO | Photos Taken: | Other Evidence: | Destruction of Property? NO |
|---|---|---|---|

**Prior History**

Describe Victim's prior domestic incidents with this suspect (Last, Worst, First):
NONE

**Has Suspect ever:**

| If the Victim answers "yes" to any questions in this box refer to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider. | | | | | Local Domestic Violence Service Provider Phone No. |
|---|---|---|---|---|---|
| Threatened to kill you or your children? NO | Strangled or "choked" you? NO | Beaten you while you were pregnant? NO | Is suspect capable of killing you or children? NO | Is suspect violently and constantly jealous of you? NO | Has the physical violence increased in frequency or severity over the past 6 months? NO |

**Interpreter**

| Interpreter Used | Interpreter Requested | Interpreter's Last Name, First | Internet Service Provider |
|---|---|---|---|

Statement of Allegations/Supporting Desposition
VERBAL ARGUMENT OVER KEYS APARTMENT

Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endagerment?

Ex. 2

Case 1:20-cv-03387-WFK-LB   Document 1   Filed 07/23/20   Page 97 of 310 PageID #: 97

| Was DIR given to the victim at scene?<br>NO | If No, Why?:<br>TYPED ON COMPUTER | Was Victim Rights Notice given to victim<br>YES | If No, Why?: | Entered By<br>TaxID<br>946190 | Entered By<br>Date<br>05/15/2018 |
|---|---|---|---|---|---|
| Reporting Officer: | Jurisdiction<br>N.Y. POLICE DEPT | Name<br>ROSARIO , ENMANUEL | Rank<br>POM | Tax ID<br>946190 | Date<br>05/15/2018 |
| Detective Assigned: | Name | | Rank | Tax ID | Date |
| Supervisor Sign-off: | Name<br>GRASSO , JACLYN | | Rank<br>SGT | Tax ID<br>939294 | Date<br>05/16/2018 |

| Reporting Officer: | Rank<br>POF | Name<br>KOMIKO CANDELARIOTOTH | | Tax Reg. No.<br>936291 | Command<br>017-17TH PRECINCT |
|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing<br>- | Date Reviewed<br>05/16/2018 | Date of Next Review | Name<br>JACLYN GRASSO | Supv. Tax No.<br>939294 |

Ex. 3

K186298331C
DV Report Mark
Garnes
2018-017-298 os|is|63
ICad# D1805/5/6234

Complaint Report #
2018-077-002952

Arrest Report #
K18629833

DIR

Ex 3a

**New York State**
**A** **DOMESTIC INCIDENT REPORT**

| Agency: NYPD | | | | | Incident # |
|---|---|---|---|---|---|

**Incident**

| Reported Date (MM/DD/YYYY) 05 15 2018 | Time (24 hours) 1910 | Occurred Date (MM/DD/YYYY) 05 15 2018 | Time (24 hours) 1930 | ☐ Officer Initiated ☐ Radio Run ☐ Walk-in ☐ ICAD (NYC) | Complaint # 2951 |
|---|---|---|---|---|---|

Address (Street No., Street Name, Bldg. No., Apt No.) I/S ATLANTIC & FLATBUSH

City, State, Zip BROOKLYN, NY

**Suspect (P2)**

Name (Last, First, M.I.) (Include Aliases) CHARISSE, SHENIQUA, NEAL

DOB (MM/DD/YYYY) 01 16 1990   Age: 28   ☐ Female ☐ Male  ☐ Self-Identified

Address (Street No., Street Name, Bldg. No., Apt No.) 510 ATLANTIC AV

Suspect Phone Number:

Language:

City, State, Zip BROOKLYN NY

☐ White ☐ Black ☐ Asian   ☐ Hispanic ☐ Non Hispanic ☐ Unknown
☐ American Indian ☐ Other   ☐ Other Identifier:

| Do suspect and victim live together ? ☐ Yes ☐ No | Suspect/P2 present? ☐ Yes ☐ No | Was suspect injured? ☐ Yes ☐ No If yes describe: | Possible drug or alcohol use? ☐ Yes ☐ No | Suspect supervised? ☐ Probation ☐ Parole ☐ Not Supervised ☐ Status Unknown |
|---|---|---|---|---|

Suspect (P2) Relationship to Victim (P1) ☐ Married ☐ Intimate Partner/Dating ☐ Formerly Married ☐ Former Intimate Partner ☐ Parent of Victim (P1) ☐ Child of Victim ☐ Relative: ☐ Other:

Do the suspect and victim have a child in common? ☐ Yes ☐ No

**Victim Interview**

Emotional condition of VICTIM? ☐ Upset ☐ Nervous ☐ Crying ☐ Angry ☐ Other:

What were the first words that VICTIM said to the Responding Officers at the scene regarding the incident?

Did suspect make victim fearful? ☐ Yes ☐ No If yes, describe:

Weapon Used? ☐ Yes ☐ No Gun: ☐ Yes ☐ No Other, describe:

Suspect Threats? ☐ Yes ☐ No  If Yes, Threats to: ☐ Victim ☐ Child(ren) ☐ Pet ☐ Commit Suicide ☐ Other Describe:

Access to Guns? ☐ Yes ☐ No If yes, describe:

**Suspect**

Injured? ☐ Yes ☐ No If yes, describe: NAIL MARKS TO RIGHT SIDE OF FACE

In Pain? ☐ Yes ☐ No If yes, describe:

Strangulation? ☐ Yes ☐ No ☐ Loss of Consciousness ☐ Urination/Defecation ☐ Red eyes/Petechia ☐ Sore Throat ☐ Breathing Changed ☐ Difficulty Swallowing
Visible Marks? ☐ Yes ☐ No If yes, describe: FACE

What did the SUSPECT say (Before and After Arrest) :

710.30 completed? ☐ Yes ☐ No

**Incident Narrative**

Briefly describe the circumstances of this incident: AT T/P/O P1 WALKED INTO THE 77 PRECINCT & STATED THAT P2 ATTACKED HIM & SCRATCH HIM ON HIS FACE & NECK.

DIR Repository checked? ☐ Yes ☐ No   Order of Protection Registry checked? ☐ Yes ☐ No   Order of Protection in effect? ☐ Yes ☐ No ☐ Refrain ☐ Stay Away

**Evid**

| Evidence Present? ☐ Yes ☐ No | Photos taken: ☐ Victim Injury ☐ Suspect Injury ☐ Other: | Other Evidence: ☐ Damaged Property ☐ Videos ☐ Electronic Evidence ☐ Other: | Destruction of Property? ☐ Yes ☐ No If yes, Describe: |
|---|---|---|---|

**Offense**

| Offense Committed? ☐ Yes ☐ No | Was suspect arrested? ☐ Yes ☐ No If no, explain: | Offense 1 ASSAULT 3 | Law (e.g. PL) PL | Offense 2 | Law (e.g. PL) |
|---|---|---|---|---|---|

Ex.4

VICTIM / COMPLAINANT COPY

| Agency: NYPD | B | | Incident # | Complaint # |
|---|---|---|---|---|

**Prior History**

Describe Victim's prior domestic incidents with this suspect (Last, Worst, First):

If the Victim answers "yes" to any questions in this box refer to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider: ( ) _____.

| Has Suspect ever: | | Is suspect capable of killing you or children? | ☐ Yes ☐ No |
|---|---|---|---|
| Threatened to kill you or your children? ☐ Yes ☐ No | | Is suspect violently and constantly jealous of you? | ☐ Yes ☐ No |
| Strangled or "choked" you? ☐ Yes ☐ No | | Has the physical violence increased in frequency or severity over the past 6 months? | |
| Beaten you while you were pregnant? ☐ Yes ☐ No | | | ☐ Yes ☐ No |

Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endangerment? ☐ Yes ☐ No

If Yes, the Officer must contact the **NYS Child Abuse Hotline Registry # 1-800-635-1522.**

| Was DIR given to the Victim at the scene? ☐ Yes ☐ No if **NO**, Why: | Was Victim Rights Notice given to the Victim? ☐ Yes ☐ No if **NO**, Why: |
|---|---|

**Signatures:**

| Reporting Officer (Print and Sign include Rank and ID#) | Supervisor (Print and Sign include Rank and ID#) |
|---|---|

## STATEMENT OF ALLEGATIONS/SUPPORTING DEPOSITION

* Officers are encouraged to assist the Victim in completing this section of the form.

**Suspect Name** (Last, First, M.I.)   CHARISSE, SHENIQUA

I MARK GARNES (Victim/Deponent Name) state that on 05 / 15 / 2018 , (Date)
at I/s ATLANTIC & FLATBUSH (Location of incident) in the County/City/Town/Village
of the State of New York, the following did occur: He a verbal dispute
with Ex girlfriend - SHENIQUA CHARISSE. Then SheNIQUA attacked
Him by scratching him on his FACE & NECK.

(Use additional page as needed)

**False Statements made herein are punishable as a Class A Misdemeanor, pursuant to section 210.45 of the Penal Law.**

| Victim/Deponent Signature | Date 3/15/2018 | Note: | Page ___ |
|---|---|---|---|
| Witness or Officer Signature | Date | Whether or not this form is signed, this DIR Form will be filed with Law Enforcement. | Of |
| Interpreter Signature and Interpreter Service Provider Name | Date   Ex. 5 | | ___ |
| Interpreter Requested ☐ Yes ☐ No  Interpreter Used ☐ Yes ☐ No | | | |

VICTIM / COMPLAINANT COPY     NYS DOMESTIC AND SEXUAL VIOLENCE HOTLINE 1-800-942-6906     3221 07/2016 DC IS Copyright © 2016 by NYS DC IS

**IF YOU ARE THE VICTIM OF DOMESTIC VIOLENCE, THE POLICE AND COURTS CAN HELP.**

**What the Police Can Do:**
  *Assist you with finding a safe place, a place away from the violence.
  *Inform you about how the court can help protect you from the violence.
  *Help you and your children get medical care for any injuries you received.
  *Assist you in getting necessary belongings from your home.
  *Provide you with copies of police reports about the violence.
  *File a complaint in criminal court, and tell you where your local criminal and family courts are located.

**What the Courts Can Do:**
  *If the person who harmed you or threatened you is a relative by blood or marriage, or is someone you've had a
    child with, or is someone with whom you are or have had an intimate relationship, then you have the right to
    take your case to family court, criminal court or <u>both</u>.
  *The forms you need are available from the family court and the criminal court.
  *The courts can decide to provide a temporary order of protection for you, your children and any witnesses who
    may request one.
  *The family court may appoint a lawyer to help you if the court finds that you cannot afford one.
  *The family court may order temporary child support and temporary custody of your children.

**New York Law States:**  If you are the victim of domestic violence, you may request that the officer assist in providing for your safety and that of your children, including providing information on how to obtain a temporary order of protection.  You may also request that the officer assist you in obtaining your essential personal effects and locating and taking you, or assist in making arrangements to take you, and your children to a safe place within such officer's jurisdiction, including but not limited to a domestic violence program, a family member's or a friend's residence, or a similar place of safety.  When the officer's jurisdiction is more than a single county, you may ask the officer to take you or make arrangements to take you and your children to a place of safety in the county where the incident occurred. If you or your children are in need of medical treatment, you have the right to request that the officer assist you in obtaining such medical treatment.  You may request a copy of any incident reports at no cost from the law enforcement agency.  You have the right to seek legal counsel of your own choosing and if you proceed in family court and if it is determined that you cannot afford an attorney, one must be appointed to represent you without cost to you.  You may ask the district attorney or a law enforcement officer to file a criminal complaint.  You also have the right to file a petition in the family court when a family offense has been committed against you.  You have the right to have your petition and request for an order of protection filed on the same day you appear in court, and such request must be heard that same day or the next day court is in session.  Either court may issue an order of protection from conduct constituting a family offense which could include, among other provisions, an order for the respondent or defendant to stay away from you and your children.  The family court may also order the payment of temporary child support and award temporary custody of your children.  If the family court is not in session, you may seek immediate assistance from the criminal court in obtaining an order of protection.  The forms you need to obtain an order of protection are available from the family court and the local criminal court.  The resources available in this community for information relating to domestic violence, treatment of injuries, and places of safety and shelters can be accessed by calling the following 800 numbers.  Filing a criminal complaint or a family court petition containing allegations that are knowingly false is a crime.
*(NYS Criminal Procedure Law, Section 530.11 (6))*

| | |
|---|---|
| **NEW YORK STATE**<br>**24 HOUR DOMESTIC AND SEXUAL**<br>**VIOLENCE HOTLINE**<br>**1-800-942-6906**<br>**English and Español, Multi-language Accessibility**<br>**National Relay Service for Deaf or Hard of Hearing:711**<br><br>**NEW YORK CITY (all languages)**<br>**1-800-621-Hope (4673) or 311** | **COURT INFORMATION**<br><br>New York City—Criminal Court Information<br>**1-646-386-4500**<br><br>To obtain court information for other areas of NYS, ask the<br>responding officer for court numbers,<br>consult your phone directory, or call the Domestic and<br>Sexual Violence Hotline (1-800-942-6906) |

**VICTIM INFORMATION AND NOTIFICATION EVERYDAY (VINE)**

Victims may receive information relating to the status and release dates of persons incarcerated in state prison or
local jails in New York State.  For more information on this program and how you can register, call

**1-888-VINE-4NY (1-888-846-3469)  or  www.vinelink.com**

**STATEWIDE AUTOMATED VICTIM INFORMATION AND NOTIFICATION (SAVIN-NY)**
Victim notification program which allows domestic violence victims to register to be notified when an
Order of Protection has been served
**www.nyalert.gov**

Ex. 6

Misc. 917-N (Rev. 04-08)

## CENTRAL BOOKING
## PRISONER'S PROPERTY FORM

PRISONER'S NAME _Carnes, Mark_   ARREST # _K196298336K_ PCT. _077_   DATE _5-15-18_

FUNDS COUNTED AND RETURNED (Include total value of coins). $ _100.00_

**THE BELOW LISTED ITEMS WERE REMOVED FROM PRISONER FOR RETURN TO PRISONER AT COURT OR ON RELEASE ON D.A.T.**

## PROPERTY - DESCRIBE

☑ SHOE LACES ☐ HAIR PICK/ COMB ☐ PEN ☐ LIGHTER ☐ HANDBAG ☐ BELTS ☐ KEYS ☐ NAIL CLIPPER

☐ OTHER (DESCRIBE) _____

_____

(Signature - Prisoner) _____

(Signature - Arresting Officer) _____

(Member searching if other than A.O.) _____   (Reviewing Officer) _____
                                        (Shield) _99833   (Command) _077_

** **NOTE:** If no funds counted and returned, indicate "NONE". If no property removed and safeguarded, indicate "NONE".
**Distribution - Original to C.B. - Duplicate to prisoner - Triplicate to Court Package**

Ex. 6a



Ex. 9



Ex. 8



Ex. 9.



Ex. 10



Ex. 11.



Ex. 12



Ex. 13



Ex. 14



Ex. 15



Ex. 16



Ex. 17.

RI No: NY023033J
rder No: 2018-014488
YSID No: 04556247R
JTN No:

At a term of the New York City Criminal Court, Kings County Branch, County of Kings, at the Courthouse at 120 Schermerhorn Street, Brooklyn, NY 11201, State of New York

Criminal Form 1 12/2013

RESENT: Honorable Raymond Rodriguez

ORDER OF PROTECTION
Family Offenses - C.P.L. 530.12

EOPLE OF THE STATE OF NEW YORK
- against -

IARK GARNES ,
efendant

☐ Youthful Offender (check if applicable)
Part: APAR2      Case No.: 2018KN023543

Charges: PL 120.00 01 AM, 1 count(s) of A Misd, 1 count(s) of B Misd

OB: 05/15/1963

Defendant Present in Court

OTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY ESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CONTEMPT OF COURT. IF THIS IS A TEMPORARY ORDER OF PROTECTION ND YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND ONTINUE IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

HIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR OMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR ERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS RDER.

☒ **TEMPORARY ORDER OF PROTECTION** - Whereas good cause has been shown for the issuance of a temporary order of protection

☐ **ORDER OF PROTECTION** - Whereas defendant has been convicted of [specify crime or violation]:

And the Court having made a determination in accordance with section 530.12 of the Criminal Procedure Law,

' IS HEREBY ORDERED that the above-named defendant MARK GARNES (DOB: 05/15/1963) observe the following conditions of :havior:

1] Stay away from [A]    SHENIQUA NEAL;
[B]    the home of SHENIQUA NEAL;
[C]    the school of SHENIQUA NEAL;
[D]    the business of SHENIQUA NEAL;
[E]    the place of employment of SHENIQUA NEAL;

4] Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with SHENIQUA NEAL;
2] Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against SHENIQUA NEAL;
2] Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not limited to, the following: ANY AND ALL and do not obtain any further guns or other firearms. Such surrender shall take place immediately, but in no event later than IMMEDIATELY at LOCAL PRECINCT;
)] Observe such other conditions as are necessary to further the purposes of protection: NO THIRD PARTY CONTACT;

' IS FURTHER ORDERED that the above-named Defendant's license to carry, possess, repair, sell or otherwise dispose of a firearm or earms, if any, pursuant to Penal Law §400.00, is hereby [13A] suspended, and [13C] the Defendant shall remain ineligible to receive a earm license during the period of this order.

' IS FURTHER ORDERED that this order of protection shall remain in force until and including 11/30/2018, but if you fail to appear in urt on this date, the order may be extended and continue in effect until a new date set by the Court.
ATED: 05/16/2018

☐ Defendant advised in Court of issuance and contents of Order.
☐ Order to be served by other means [specify]: _____
☐ Warrant issued for Defendant
☐ Order personally served on Defendant in Court

Honorable Raymond Rodriguez

(Defendant's signature)

☐ ADDITIONAL SERVICE INFORMATION [specify]: _____

e Criminal Procedure Law provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties ll authorize and in some situations may require, such officer to arrest a defendant who is alleged to have violated its terms and to bring him or her before the Court to face alties authorized by law.
leral law requires that this order be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or session of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has been or will be afforded reasonable notice and oportunity to be heard in accordance with state law sufficient to protect that person's rights (18 USC §§2265, 2266).
a federal crime to:
:ross state lines to violate this order to stalk, harass or commit domestic violence against an intimate partner or family member;
uy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law orcement officers but only while they are on duty); and
uy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of sical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. 922(g)(8), §§922(g)(9); 2261, 2261A, 2262).

E x. 1p

$Ex19$

## CRIMINAL COURT OF THE CITY OF NEW YORK

| Docket Number | Arraignment Date | Arraignment Judge |
|---|---|---|

You are to appear in Court on ____6/29____ by 9:30 A.M. at Part ___DVI___ located at 120 Schermerhorn Street, Brooklyn, N.Y. 11201.

Your bail has been fixed at

$ _____        Insurance Company Bail Bond.
                        or
$ _____        Cash Bail.

If you are released and you fail to appear at the time, date, and place indicated above,
  A Warrant for your Arrest will be issued.
  Your Bail, if any, will be forfeited.
  You may be charged with the crime of Bail Jumping.

If you are committed:
  You have the right to communicate with relatives or friends by letter or telephone free of charge.
  You have the right to the aid of counsel at every stage of the proceedings.

If you desire counsel and are financially unable to obtain counsel, counsel shall be assigned to you.

## PLEASE BRING THIS NOTICE WITH YOU WHENEVER YOU APPEAR IN COURT.

 **Weill Cornell** Medicine

NewYork-Presbyterian
Weill Cornell Medical Center

**Trenton Collier, MD**

Phone: 646-962-5665
Fax: 646-962-5687

156 William Street
7th Floor
New York, NY 10038

Mr. Mark Garnes
1355 PACIFIC STREET
APT #1B
BROOKLYN, NY 11216

5/16/2018

Dear Mark Garnes,

This is a reminder for your upcoming appointment with Trenton Collier, MD.

Date:  5/23/18
Time:  2:00 PM
Department: WCMC INTERNAL MEDICINE 156 WILLIAM ST 7 FL
WEILL CORNELL INTERNAL MEDICINE ASSOCIATES
156 William St. 7th Floor
New York NY 10038-5327
Location: 156 William St. 7th Floor
New York NY 10038-5327
Visit Type:New Patient Visit

Instructions:

If for any reason you are unable to keep this appointment, please contact the office at
646-962-5665 to reschedule.

Sincerely,

Trenton Collier, MD

 **Weill Cornell** Medicine

NewYork-Presbyterian
Lower Manhattan Hospital

**Trenton Collier, M.D.**

Assistant Professor of Clinical Medicine
Adult Internal Medicine
Department of Medicine

156 William Street
7th Floor
New York, NY 10038

T 646.962.5665
F 646.962.5687

Ex.20

| Practice LLP, Job #81633: Run by KWASH on 05/16/2018. Job Title: PAYMENT RECEIPT | Close |
|---|---|

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * *
    ACCOUNT NUMBER: 3173010 / 1      RECEIPT DATE: 05/16/2018
* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PATIENT: MARK GARNES
ADDRESS: 1355 PACIFIC STREET
         1B
         BROOKLYN NY 11216


* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PRACTICE..........:     PROHEALTH CARE ASSOC, LLP
DATE OF SERVICE...:     05/16/2018
PLACE OF SERVICE..:     PROHEALTH URGENTCARE MEDICINE,BKHGT
PAYMENT RECEIVED..:     $40.00
PAYMENT TYPE......:     CO-PAYMENT (CASH)
PROVIDER..........:     BROOKLYN 26 COURT STREET URGENT CAR / PROVGRP: PROHEALTH URGENT CARE
CHARGE SLIP NUMBER:     21061196
BILLING AREA......:     0000
USER..............:     KWASH
```

Ex. 21

*May 16, 2018*

**Brooklyn Heights Urgent Care**
26 Court Street  Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

Page 1
Office Visit

Home: (347)421-1384

**MARK GARNES**
Male  DOB: 05/15/1963

**05/16/2018 - Office Visit: Urgent Care Visit_new_rm 7**
**Provider: Tanesha Lawrence, MD**
**Location of Care: Brooklyn Heights Urgent Care**

## Urgent Care Visit

**Accompanied By:** Patient
**Source:** Patient

## Vital Signs
**Height:**            69 inches
**Weight:**            175 pounds
**Weight:**            79.55 kg
**BMI:**               25.84
**BMI Classification:** Normal.

**Pulse Rate:**        92 /min
**Resp:**              16 /min
**O2 Sat:**            98 %
**Temp:**              98.4 deg F
**Temp Site:**         oral
**BP sitting:**        116 / 85 (L arm)
**BP Follow-Up:** Normal Blood Pressure reading - No follow-up required.

Vitals Entered By: Chanel Sanchez (May 16, 2018 3:21 PM)
Vitals Reviewed By: Tanesha Lawrence, MD (May 16, 2018 3:28 PM)

**CC:** Skin Complaint

**History of Present Illness:**
55 y.o. here for evaluation of scratches on face after domestic dispute with ex-girlfriend. Patient reports he
was driving in his car with a female friend--his ex-girlfriend who was standing on the corner jumped into
the car and began assaulting him. He sustained scratches to the L side of his face and R upper arm.  He
cleaned the wounds with peroxide. He is here for medical evaluation and for assessment for infection. He
denies fever, chills, n/v/d, CP, SOB, wheezing, HA, dizziness, focal weakness.

## Past Medical History
Unremarkable/No Significant Hx

## Past Surgical History
No surgeries

## Social History
Denies tobacco/ETOH and drug use

Ex. 22

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

**MARK GARNES**
Male  DOB: 05/15/1963

Home: (347)421-1384

**Medications:**
Medications were reviewed with the patient during this visit.

No known medications.

**Allergies:**
Allergies were reviewed with the patient during this visit.

No known allergies.

**Problems:**
Problems were reviewed with the patient during this visit.

## Review of Systems

**General:**
Denies recent illness, fever

**Eyes**
Denies redness, discharge

**ENT**
Denies sore throat, congestion, nasal discharge

**CV**
Denies chest pain, palpitations, lightheadedness

**Resp**
Denies cough, sputum production

**MSK**
Denies joint pain, muscle aches

**GI**
Denies nausea, vomiting, diarrhea

**GU**
Denies urgency, frequency

**Skin**
**Complains of abrasion**

**Neuro**
Denies lightheadedness, dizziness

## Physical Exam

**General:**

Ex. 23

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

May 16, 2018
Page 3
Office Visit

**MARK GARNES**
Male  DOB: 05/15/1963

Home: (347)421-1384

Patient in no acute distress.

**Head:**
Normocephalic

**Eyes:**
EOM intact, conjunctiva clear, no discharge.

**Ears:**
TMs and canals without erythema.

**Mouth/Throat:**
No erythema or exudate.

**Resp/Lungs:**
Clear to auscultation, no wheezing or rhonchi.

**CV:**
Regular rate and rhythm without murmurs.

**Skin:**
R upper arm with 1-2 minor abrasions above antecubital area

L face= linear red abrasions just inferior to L eye going across L maxilla and around to L posterior scalp.
No open skin. No pus drainage, bleeding, warmth, swelling, tenderness

## Impression and Plan

## Problem 1:
**Problem:** ABRASION OF OTHER PART OF HEAD, INITIAL ENCOUNTER (ICD-910.0)
**Comment:** No signs of acute infection at this time
Monitor for signs and symptom of infection including increasing redness, warmth, tenderness, swelling
-Continue wound care
-Monitor for self resolution

## Problem 2:
**Problem:** ASSAULT (ICD-E968.9)

## Patient Instructions
Wound Care

Wound care helps prevent pain and infection.
You may need a tetanus shot if:
- You cannot remember when you had your last tetanus shot.
- You have never had a tetanus shot.
- The injury broke your skin.
If you need a tetanus shot and you choose not to have one, you may get tetanus. Sickness from tetanus
can be serious.

HOME CARE
- Only take medicine as told by your doctor.
- Clean the wound daily with mild soap and water.
- Change any bandages (dressings) as told by your doctor.

Ex. 24

May 16, 2018

**Brooklyn Heights Urgent Care**
26 Court Street  Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

Page 4
Office Visit

**MARK GARNES**
Male  DOB: 05/15/1963

Home: (347)421-1384

- Put medicated cream and a bandage on the wound as told by your doctor.
- Change the bandage if it gets wet, dirty, or starts to smell.
- Take showers. Do not take baths, swim, or do anything that puts your wound under water.
- Rest and raise (elevate) the wound until the pain and puffiness (swelling) are better.
- Keep all doctor visits as told.

GET HELP RIGHT AWAY IF:
- Yellowish-white fluid (pus) comes from the wound.
- Medicine does not lessen your pain.
- There is a red streak going away from the wound.
- You have a fever.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

Open Wound, Forearm

An open wound is a break in the skin because of an injury. An open wound can be a scrape, cut, or puncture to the skin. Good wound care will help to:
- Reduce pain.
- Prevent infection.
- Reduce scaring.

HOME CARE
- Rest and raise (elevate) the injured arm on a pillow. This will help keep the puffiness (swelling) down.
- Wash all dirt off the wound.
- Clean the wounds daily with gentle soap and water.
- Apply medicated cream after the wound has been cleaned or as told by your doctor.
- Apply a clean bandage (dressing) daily if necessary.

GET HELP RIGHT AWAY IF:
- There is increased redness or puffiness in or around the wound.
- Your pain increases.
- You or your child has a temperature by mouth above 102 degrees F (38.9 degrees C), not controlled by medicine.
- Your baby is older than 3 months with a rectal temperature of 102 degrees F (38.9 degrees C) or higher.
- Your baby is 3 months old or younger with a rectal temperature of 100.4 degrees F (38 degrees C) or higher.
- A yellowish white fluid (pus) comes from the wound.
- Your pain is not controlled with pain relievers.
- You cannot move or feel your fingers.
- There is red streaking of the skin that goes above or below the wound.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

AFTER DISCHARGE

Ex. 25

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

May 16, 2018
Page 5
Office Visit

**MARK GARNES**

Home: (347)421-1384

Male  DOB: 05/15/1963

After you are discharged, you must monitor your condition and watch for any worsening of symptoms. If you do not improve, or your symptoms worsen, do one of the following.

- contact your primary care physician
- return here for re evaluation
- call here to speak with a physician.

**Additional Instructions:** Today you were seen for abrasions to the face and arm after a reported assault. There are no  signs of acute infection at this time.  Please monitor for signs and symptoms of infection including increasing redness, warmth, tenderness, swelling, bleeding, etc.   If you experience any of these symptoms or any worsening symptoms please seek additional medical attention.

Patient advised to avoid assailant as much as possible

Discharge instructions printed at: May 16, 2018 3:41 PM

**Electronically Signed by Tanesha Lawrence, MD on 05/16/2018 at 3:42 PM**

Ex. 26

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

*May 16, 2018*
Page 1

# Patient Information - Wound care

**For:** MARK GARNES



**PROHEALTH URGENT CARE**
26 Court Street
Brooklyn, NY 11242
T: 347-335-0062
www.prohealthurgentcare.com

**Today's Provider:** Tanesha Lawrence, MD

### Wound Care

Wound care helps prevent pain and infection.
**You may need a tetanus shot if:**
- You cannot remember when you had your last tetanus shot.
- You have never had a tetanus shot.
- The injury broke your skin.

If you need a tetanus shot and you choose not to have one, you may get tetanus. Sickness from tetanus can be serious.

HOME CARE
- Only take medicine as told by your doctor.
- Clean the wound daily with mild soap and water.
- Change any bandages (*dressings*) as told by your doctor.
- Put medicated cream and a bandage on the wound as told by your doctor.
- Change the bandage if it gets wet, dirty, or starts to smell.
- Take showers. **Do not** take baths, swim, or do anything that puts your wound under water.
- Rest and raise (*elevate*) the wound until the pain and puffiness (*swelling*) are better.
- Keep all doctor visits as told.

GET HELP RIGHT AWAY IF:
- Yellowish-white fluid (*pus*) comes from the wound.
- Medicine does not lessen your pain.
- There is a red streak going away from the wound.
- You have a fever.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

Document Released: 09/26/2009 Document Revised: 03/11/2013 Document Reviewed: 04/22/2012
ExitCare® Patient Information ©2013 ExitCare, LLC.

### Open Wound, Forearm

An open wound is a break in the skin because of an injury. An open wound can be a scrape, cut, or puncture to the skin. Good wound care will help to:
- Reduce pain.
- Prevent infection.
- Reduce scaring.

HOME CARE
- Rest and raise (*elevate*) the injured arm on a pillow. This will help keep the puffiness (*swelling*) down.
- Wash all dirt off the wound.

Ex .27

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

*May 16, 2018*
Page 2

## Patient Information - Wound care

**For: MARK GARNES**

- Clean the wounds daily with gentle soap and water.
- Apply medicated cream after the wound has been cleaned or as told by your doctor.
- Apply a clean bandage (*dressing*) daily if necessary.

GET HELP RIGHT AWAY IF:

- There is increased redness or puffiness in or around the wound.
- Your pain increases.
- You or your child has a temperature by mouth above 102° F (38.9° C), not controlled by medicine.
- Your baby is older than 3 months with a rectal temperature of 102° F (38.9° C) or higher.
- **Your baby is 3 months old or younger with a rectal temperature of 100.4° F (38° C) or higher.**
- A yellowish white fluid (*pus*) comes from the wound.
- Your pain is not controlled with pain relievers.
- You cannot move or feel your fingers.
- There is red streaking of the skin that goes above or below the wound.

MAKE SURE YOU:

- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.


**MEDICATIONS AND FOLLOW UP**


**AFTER DISCHARGE**

After you are discharged, you must monitor your condition and watch for any worsening of symptoms. If you do not improve, or your symptoms worsen, do one of the following.

-contact your primary care physician
-return here for re evaluation
-call here at 347-335-0062 to speak with a physician.

**Additional Instructions:**
Today you were seen for abrasions to the face and arm after a reported assault. There are no  signs of acute infection at this time.  Please monitor for signs and symptoms of infection including increasing redness, warmth, tenderness, swelling, bleeding, etc.   If you experience any of these symptoms or any worsening symptoms please seek additional medical attention.

Patient advised to avoid assailant as much as possible

Ex. 28



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500 Fax: (718) 643-7733

**NO FEE**
Non-Public
Version

The People of the State of New York

vs.

**Mark Garnes**

Defendant DOB: **05/15/1963**

**Certificate of Disposition**
Docket Number:     **CR-023543-18KN**
Legacy Docket Number:   **2018KN023543**

Arrest Date: **05/15/2018**      Arraignment Date: **05/16/2018**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count | Arraignment Charge | Charge Weight | Disposition | Disposition Date |
|---|---|---|---|---|
| 1 | PL 120.00 01 AM Aslt 3-W/Int Cause Phys Injury **SEALED 160.50** | AM | Dismissed (Speedy Trial (CPL 170.30 (1)(e)), Sealed 160.50) | 08/17/2018 |
| 2 | PL 110-120.00 01 BM Attempted Aslt 3-W/Int Cause Phys Injury **SEALED 160.50** | BM | Dismissed (Speedy Trial (CPL 170.30 (1)(e)), Sealed 160.50) | 08/17/2018 |
| 3 | PL 120.15 BM Menacing-3rd **SEALED 160.50** | BM | Dismissed (Speedy Trial (CPL 170.30 (1)(e)), Sealed 160.50) | 08/17/2018 |
| 4 | PL 240.26 01 V Harassment-2nd:Physical Cntact **SEALED 160.50** | V | Dismissed (Speedy Trial (CPL 170.30 (1)(e)), Sealed 160.50) | 08/17/2018 |

Dated:   **September 17, 2018**

**Chief Clerk/Clerk of the Court**

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law, in connection with the licensing, employment or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. [Executive Law § 296 (16)] Arraignment charges may not be the same as the original arrest charges.

CPL 160.50:      All official records (excluding published court decisions or opinions or records and briefs on appeal) related to the arrest or prosecution on file with the Division of Criminal Justice Services, any court, police agency or prosecutor's office shall not be available to any person or public or private agency.



**SEALED**

**pursuant to Section 160.50 of the CPL**

Ex 29

DISPOSITION OF DISCIPLINARY

COMMAND
PRESENT DATE OF
RANK NAME TAX HA HAHGES
DT3 DOUGLAS CARE 907 77 0 QUAD 05/20/2011

1. WRONGFULLY CLASSIFIED A COMPLAINT REPORT INCORRECTLY.GUILTY
PENALTY: DATE 9F 06/05/2012

ForfEIKure of fifteen (15) vacatlon days.

2009-2314 Fo KEVIN MORRIS 944. TD 4 IAD 10/25/2009

1. WHILE nu-ry A DEPARTMENT INVESTIGATION oF A POLICE INCIDENT.GUILTV

PENALTY: DATE 9F 06/05/2012

Forfeiture of twenty (20) vacatlon days.

2011-4509 PO KEVIN MORRIS 9448- TD 4 IAE 11/08/2011

1. FAILED To NOTIFY COMMANDING OFFICER OF CHANGES To RESIDENTIAL
ADDRESS.GUILTV

PENALTY: DATE 9F 06/05/2012
'ee caseb 2009-2314 for penalty

2011-4247 1212 EEATRICE EALAGUEN 9140- MAN.CT. IAD 06/02/2011
SECT.

SPECIFICATIONSIDISPOSITIONS

1. WRONGFULLY REPORTED AND FILED A FALSE COMPLAINT REPORT ALLEGING A BURGLARY
AND
AN ASSAULT IN SAID RESIDENCE.GUILTY

2. WRONGFULLY BROKE A GLASS DOOR BELONGING To ANOTHER INDIVIDUAL KNOWN To THE

DEPARTMENT .GUILTY
PENALTY: DATE OF 06/05/2012

Dismissal from the New York City Police Department; however, judgment is
suspended and
respondent will be placed on Dismissal Probation for a period one (1) year.
Forfeiture

1


Ex. 30

of time/leave balances, Service retirement on completion of twenty (20)
years, thirty (30)
vacation days.

- 5 - ED. 218

Ex. 30a

# 50 – H HEARING

# DANIEL L. SCHNEIDER, ESQ.
## ATTORNEY AT LAW

49 WALWORTH AVENUE
SCARSDALE, NEW YORK 10583

TEL  (914) 725-5374
FAX (914) 713-1136
EMAIL: danielschneideresq@gmail.com
Date:  December 12, 2018

**NOTICE OF 50-H HEARING**

015 – 280

Mark Garnes
P.O. Box 160363
Brooklyn, NY 11216
**_SENT BY CERTIFIED MAIL_**

Re: Claimant Name:   Mark Garnes
Claim Number:    2018PI032680

Dear Sir / Madam:

Please take notice that, pursuant to Section 50-h of the General Municipal Law (GML), claimant is mandated by law to appear at the following location, at the date and time specified below, to be orally examined under oath relative to the occurrence and extent of injuries for which the above claim is made:

Date of Hearing:   January 18, 2019
Time of Hearing:   4:00 P.M.

Location of Hearing: DAN SCHNEIDER – LEX REPORTING SERVICES
160 BROADWAY, 14TH FLOOR
NEW YORK, NY 10038
914-725-5374

**PLEASE CALL THIS OFFICE UPON RECEIPT OF THIS LETTER.**
The Comptroller's Office of the City of New York requests that you bring with you an executed copy of an authorization to release records pursuant to Criminal Procedure Law Section 160.50. This authorization is needed to access sealed records covered by Criminal Procedure Law Section 160.50. If you have a question about the 160.50 authorization please consult with an attorney.

The claimant should be accompanied by his/ her attorney. Claimant is further mandated, pursuant to Section 93(d) of the New York City Charter and Section 50-h of the GML, to present him/herself for a physical examination at a date and location to be provided under separate cover.

Please note that all infant claimants must appear. The hearing will begin promptly at the time indicated and there will be no office space to meet with and prepare your client.

Upon receipt of this notice, please contact us if a language interpreter for your client is necessary. One day prior to the hearing, we will call your office to confirm the date and time of the hearing. If you confirm the hearing date at that time and you subsequently fail to appear for the hearing, you will be charged by the City for any legal fee, interpreter fee and stenographic fee incurred.

All applications for adjournments should be directed via email to FIRM CONTACT

Claimants will be permitted one adjournment without cause. Application for such adjournments should be made at least one week prior to the hearing date. Applications for additional adjournments must include the reason for the request, and will be granted for good cause only.

If a claimant fails to appear for a scheduled hearing, a default will be declared and claimant's failure to appear will be raised as an affirmative defense in any lawsuit subsequently filed.

In order to prevent fraud, you are required to present proper identification prior to commencement of the hearing. Additionally, you are requested to bring to the hearing original photographs of the accident scene and copies of all documents relevant to this claim including but not limited to:

> (1) prior written notice map;
> (2) all medical and hospital records;
> (3) authorizations for the Comptroller's Office to obtain, as applicable, medical, criminal, employment and/or school records, and loss of income documentation;
> (4) police reports.

Pursuant to State and Federal law, the Comptroller's Office, through its attorneys taking hearings, is authorized to obtain, social security and Medicare or Medicaid numbers for tax and reporting purposes, and to allow for the collection of liens held by the City and State.

Please be advised that nothing contained herein shall be construed as extending the statute of limitations beyond the statutory time.

Please note that the office does not provide day care services. Therefore infants and small children will not be permitted in the office.

All questions with regard to this notice should be addressed to the undersigned at FIRM CONTACT. **ONE DAY PRIOR TO THE HEARING, YOU MUST CALL OR E-MAIL OUR OFFICE TO CONFIRM THE DATE AND TIME OF THE HEARING.**

**Please be aware that filing a false claim or aiding and abetting the filing of a false claim is a crime. Violators will be prosecuted to the fullest extent of the law.**

Sincerely,
Daniel L. Schneider

cc: Comptroller's office
1 Centre Street
NY, NY 10007

# NOTICE OF ADJOURNMENT

015 - 229

Date: January 17, 2019

Law Firm:

Re: ADJOURNMENT OF

Mark Garnes
P.O. Box 160363
Brooklyn, NY 11216

50-H HEARING

Re: Claimant Name:    Mark Garnes
Claim Number:    2018PI032680

***SENT BY CERTIFIED MAIL***

Dear Sir / Madam:

This is to confirm that the hearing for the above referenced claim has been adjourned and has been rescheduled for the following location and time:

HEARING DATE:  April 24, 2019

HEARING TIME:  3:30 P.M.

LAW OFFICES OF: DAN SCHNEIDER – LEX REPORTING SERVICES
160 BROADWAY, 14TH FLOOR
NEW YORK, NY 10038

## PLEASE CALL THIS OFFICE UPON RECEIPT OF THIS LETTER: 914-725-5374

Please note that, as stated in the Notice of Hearing, claimant is permitted only one adjournment without cause. Applications for all additional adjournments must include the reason for the request and will be granted for good cause only. Applications for adjournments must be made in writing to FIRM CONTACT

*All questions with regard to this notice should be addressed to the undersigned at* FIRM CONTACT. **ONE DAY PRIOR TO THE HEARING, YOU MUST CALL OR E-MAIL OUR OFFICE TO CONFIRM THE DATE AND TIME OF THE HEARING.**

**Please be aware that filing a false claim or aiding and abetting the filing of a false claim is a crime. Violators will be prosecuted to the fullest extent of the law.**

Sincerely,
Daniel L. Schneider, Esq.
49 Walworth Avenue
Scarsdale, NY 10583
914-725-5374
danielschneideresq@gmail.com

Cc: Comptroller's Office
1 Centre Street
NY, NY 10007

OCA-335

OCA Official Form No.: 960

**AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA**

**[This form has been approved by the New York State Department of Health]**

| Patient Name  Mark Barnes | Date of Birth 5/15/1963 | Social Security Number |
|---|---|---|
| Patient Address 1355 Pacific St. #1B, Bklyn, NY 11216 | | |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV\* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:

8. Name and address of person(s) or category of person to whom this information will be sent:
OFFICE OF THE COMPTROLLER, ONE CENTRE ST, 12th FL, NY, NY 10007

9(a). Specific information to be released:
☐ Medical Record from (insert date) 5/16/2018 to (insert date) _____
☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test result, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
☐ Other: _____

Include: *(Indicate by Initialing)*

_____ Alcohol/Drug Treatment
_____ Mental Health Information
_____ HIV-Related Information

**Authorization to Discuss Health Information**

(b) ☐ By initialing here _____ I authorize _____
       Initials                           Name of individual health care provider

to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: ☐ At request of individual ☒ Other: LITIGATION | 11. Date or event on which this authorization will expire: END OF LITIGATION |
|---|---|
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X Mark Barnes                    Date: 4/25/2019
Signature of patient or representative authorized by law.

\* Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.

NYHIPAA 8/09

STEPHANIE ANN MCELROY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MC6262370
Qualified in New York County
My Commission Expires 05-21-2020

Mark Garnes
P.O. Box 160363
Brooklyn, New York
           11216

June 21st, 2019

Daniel L. Schneider, Esq.
49 Walworth Avenue
Scarsdale New York 10583

**RE: Mark Garnes – Claimant**
**Claim No.: 2018P1032680**

Dear Mr. Schneider:

I forward this letter of request for the transcripts to the 50-H Hearing conducted on April 25th, 2019 at
3:30 P.M., at 160 Broadway, 14th Floor, New York, N.Y. 10038. To date, I have yet to receive a copy of
the hearing transcripts, as indicated would be available and forward two weeks after the hearing.

Please advise on the status of the transcripts being provided at your nearest convenience. Thanking you
in advance to this matter before your office.

Respectfully,

Mark Garnes

cc:

Scott Stringer
New York City Comptroller

Mark Garnes
P.O. Box 160363
Brooklyn, New York
11216

March 23rd, 2020

**New York City Comptroller's Office**
Attn: FOIL
One Centre Street, Suite 602
Municipal Building
New York, NY 10007

**RE:** **FOIL Request for Transcripts-50-H Hearing Per Subdivision (3)-Hearing Date-4/25/2019**
**Mark Garnes – Claimant**
**Claim No.: 2018P1032680**

To Whom It May Concern, Respectfully:

I, the above noted submit this **FOIL Request** for the transcripts thereof the April 25th, 2019 **50-H Hearing** conducted at 160 Broadway, 14th Floor, New York, N.Y. 10014. This matter was heard by Daniel L. Schneider, Esq., with an address being: 49 Walworth Avenue, Scarsdale, New York, N.Y. 10583.

In accord with subdivision (3) of section 50-h of the General Municipal Law states in part that "The transcript of the record of an examination shall not be subject to or available for public inspection, except upon order the court upon good cause shown, **but shall be furnished to the claimant** or his attorney upon request."

1

Thanking you in advance to the matter here before your office. This FOIL Request can be forwarded to the above noted address.

Sincerely,

Mark Garnes

cc:     MG

> Scott Stringer
> New York City Comptroller
> 1 Centre Street, #530
> New York, New York
>            10007


> Daniel L. Schneider, Esq.
> 49 Walworth Avenue
> Scarsdale, New York
>            10583


Sworn to before me this ____25____ day of March 2020.

Notary Public

LILLIAN BOWMAN
Notary Public - State of New York
NO. 01BO4977472
Qualified in Kings County
My Commission Expires Feb 4, 2023

2

# CCRB

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Mark Garnes
1355 Pacific St., Apt. #1B
Brooklyn, N.Y. 11216

May 23rd, 2018

Civilian Complaint Review Board (CCRB)
100 Church Street, 10th Floor
New York, New York 10007

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Carr of the 77th Precinct on the following grounds:

    a) Destruction of Victim's Domestic Violence Statement (DIR-Complainant here)
    b) Modified/Fraudulent Domestic Violence Report;
    c) Forged Signature of Victim-Complainant;
    d) Illegal/False Arrest and illegal/False Imprisonment;
    e) Fail to Read/Advise/Notify Victim-Complainant of His Miranda Rights when Arrested;
    f) Denial/Failure to Provide Medical Assistance to Victim-Complainant;
    g) Discrimination;

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543

    Arrest Report # K18629833K

    DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario

    DIR Complaint # 2951 (77th Pct.) Det. Carr

1. On May 15th, 2018, Complainant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. The subsequent report on this same date was filed by Det. Carr there at the 77th Pct. In which, Complainant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Complainant's injuries to his face, neck and right bicep. However, the photos Ms. DeJesus had taken with Complainant's phone exist. **See Attached Affidavit, Paragraphs 1-13; See Exhibits 1-11 (Photos of Complainant's injuries at scene and of location; 5-7) (Photos by Ms. DeJesus, Ex. 8-9)**

2. Upon Ms. Neal entering the 77th Pct., Complainant notified Ms. Wilson who she was, Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Complainant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Complainant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Complainant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Complainant's identification. Upon entering the interview room once more, Det. Carr notified Complainant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

3. Det. Carr placed the handcuffs on Complainant and did not read nor notify Complainant of his rights relevant to this arrest. Complainant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

4. Throughout these occurrences at the 77th Pct., Complainant received no medical assistance which was requested in the initial DIR filled out by Complainant. Ms. DeJesus also inquired whether or not Complainant wanted medical assistance, Complainant affirmed he did. **See Attached Affidavit, Paragraph 15**

5. On May 16th, 2018, Complainant was released by the Honorable Court with a court date to appear, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
   Arrest Report # K18629833K
   DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
   DIR Complaint # 2951 (77th Pct.) Det. Carr

release Complainant returned to the 77th Pct. to pick up copies of the DIR forms Complainant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Complainant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Complainant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Complainant Det. Carr had discarded the DIR documents Complainant filled out, however, Det. Carr was coming down to speak with Complainant. At this time Det. Carr notified Complainant the DIR statements Complainant inscribed on the forms were discarded. Det. Carr passed Complainant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident and only summarized the attack by Ms. Neal upon Complainant's face, neck and right bicep. Nor had Complainant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Complainant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 14-16**

6. Complainant was still confused as to how he was arrested for being the victim and not the primary aggressor as Det. Carr recognized and verbally indicated to Complainant. Reasoning with the mandatory arrest laws in domestic violence incidents, Complainant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Complainant's background became an objective, discriminately. Positing here Complainant was illegaly and/or falsely arrested on the premises of discrimination and personal interests of Det. Carr, in addition, to make Complainant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

7. On this same date, Complainant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Complainant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Complainant spoke with Ms. DeJesus upon arriving again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Complainant's house and could Det. Carr give them to her. Complainant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
   Arrest Report # K18629833K
   DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
   DIR Complaint # 2951 (77th Pct.) Det. Carr

8. Hereto on this date, May 16th, Complainant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 17-19**

9. Thereafter leaving the 17th Pct., Complainant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-27**

Complainant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Complainant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Complainant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
   **Arrest Report # K18629833K**
   **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
   **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Thanking you in advance for your time, attention, and assistance to these matters. Complainant can be contacted at 347-421-1384 or at the noted address above, and/or come to your office to discuss these matters.

Respectfully yours,

Mark Garnes

cc: MG

Sworn to before me this ___23___ day of May 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

5

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
 **Arrest Report # K18629833K**
 **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
 **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Mark Garnes
P.O. Box 160363
Brooklyn, N.Y. 11216

November 13th, 2018

Civilian Complaint Review Board (CCRB)
100 Church Street, 10th Floor
New York, New York 10007

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
 **Arrest Report # K18629833K**
 **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
 **DIR Complaint # 2951 (77th Pct.) Det. Carr**

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Douglas Carr of the 77th Precinct on the following grounds:

a) Destruction of Victim's Domestic Violence Statement (DIR-Complainant here);
b) Modified/Fraudulent Domestic Violence Report;
c) Forged Signature of Victim-Complainant;
d) Illegal/False Arrest and illegal/False Imprisonment;
e) Illegally searched;
f) Failure to Read/Advise/Notify Victim-Complainant of His Miranda Rights when Arrested;
g) Denial/Failure to Provide Medical Assistance to Victim-Complainant;
h) Destruction of personal property (Strap of jogging pants cut off due to not able to pull out);
i) Discrimination (Criminal History Discrimination).

1

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
**Arrest Report # K18629833K**
**DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
**DIR Complaint # 2951 (77th Pct.) Det. Carr**

1. On May 15th, 2018, Complainant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The subsequent report on this same date was filed by Det. Carr there at the 77[th] Pct. **Ex. 4-6a** In which, Complainant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Complainant's injuries to his face, neck and right bicep. **7-13 (Photos of Complainant's injuries at scene and of location by Complainant's phone) (Photos by Ms. DeJesus (77[th] Pct., Ex. 14-17)**

2. However, only the photos Ms. DeJesus had taken with Complainant's phone exist. **See Attached Affidavit, Paragraphs 1-13;**

3. Upon Ms. Neal entering the 77th Pct., Complainant notified Ms. Wilson that Ms. Neal was here for me to return her property to her. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Complainant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Complainant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Complainant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Complainant's identification. Upon entering the interview room once more, Det. Carr notified Complainant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

4. Det. Carr placed the handcuffs on Complainant and did not read nor notify Complainant of his rights relevant to this arrest. Complainant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
**Arrest Report # K18629833K**
**DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
**DIR Complaint # 2951 (77th Pct.) Det. Carr**

5.  Throughout these occurrences at the 77th Pct., Complainant received no medical assistance which was requested in the initial DIR filled out by Complainant. Ms. DeJesus also inquired whether or not Complainant wanted medical assistance, Complainant affirmed he did. **See Attached Affidavit, Paragraph 15**

6.  On May 16th, 2018, Complainant was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon release Complainant returned to the 77th Pct. to pick up copies of the DIR forms Complainant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Complainant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Complainant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Complainant Det. Carr had discarded the DIR documents Complainant filled out, however, Det. Carr was coming down to speak with Complainant. At this time Det. Carr notified Complainant the DIR statements Complainant inscribed on the forms were discarded. Det. Carr passed Complainant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Complainant's face, neck and right bicep. Nor had Complainant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Complainant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

7.  Complainant remained confused as to how he had arrested for being the victim as Det. Carr recognized and verbally indicated to Complainant. Reasoning with the mandatory arrest laws in domestic violence incidents, Complainant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Complainant's criminal history background became an objective, discriminately. Positing here Complainant was illegally and falsely arrested and searched on the premises of discrimination and personal interests of Det. Carr, in addition, to make Complainant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

8.  On this same date (May 16th, 2018), Complainant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Complainant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip

3

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

Gloss" on it. Complainant spoke with Ms. DeJesus upon arriving again at the 77[th] Pct. on this date, advising her Ms. Neal's keys were at Complainant's house and could Det. Carr give them to her. Complainant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

9. Hereto on this date, May 16th, Complainant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 1-3a**

10. Thereafter leaving the 17th Pct., Complainant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

11. On June 29th, 2018 Complainant's scheduled court hearing was conducted with a return date of August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

Complainant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Complainant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Complainant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

4

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
   Arrest Report # K18629833K
   DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
   DIR Complaint # 2951 (77th Pct.) Det. Carr

Complainant attest the above and herein are true and correct to the best recollection of his knowledge as the events occurred on the dates noted.

Thanking you in advance for your time, attention, and assistance to these matters. Complainant can be contacted at 347-421-1384 or at the noted address above, and/or come to your office to discuss these matters.

Respectfully yours,

Mark Garnes

cc: MG

Sworn to before me this _____ day of November 13th, 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018



**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET ROOM 1200**
**NEW YORK, N.Y. 10007-2341**

WWW.COMPTROLLER.NYC.GOV

015 - 151

Scott M. Stringer
**COMPTROLLER**

Date:      11/20/2018
Claim No:  2018PI032680
RE:        Acknowledgment of Claim
Your Claim/Policy#:

MARK GARNES
POB 160363
BROOKLYN, NY 11216

Dear Claimant:

    We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

    We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

    If you have any questions regarding your claim, you may contact us at 212-669-2478 for claims involving personal injury.

Sincerely,

Bureau of Law & Adjustment



# CIVILIAN COMPLAINT REVIEW BOARD
100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ♦ TELEPHONE (212) 912-7235
www.nyc.gov/ccrb



**BILL DE BLASIO**
**MAYOR**

**FREDERICK DAVIE**
**CHAIR**

November 21, 2018

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that members of the New York City Police Department engaged in misconduct on May 15, 2018, at the 77th Precinct stationhouse in Brooklyn.

In order to fully investigate this complaint, I need to speak with you as soon as possible. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,

Magdalena Azmitia
Investigator

CCRB CTS - Confidential



CIVILIAN COMPLAINT REVIEW BOARD
100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ◆ TELEPHONE (212) 912-7235
www.nyc.gov/ccrb

BILL DE BLASIO
MAYOR

FREDERICK DAVIE
CHAIR

November 29, 2018

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that (a) member(s) of the New York City Police Department engaged in misconduct on May 15, 2018, at the 77th Precinct stationhouse in Brooklyn.

I have previously tried to get in touch with you by phone and mail and have not heard from you. In order to investigate this complaint, I need to speak with you as soon as possible. If I do not hear from you, the CCRB may have to close this case without conducting a full and thorough investigation. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,



Magdalena Jamitia
Investigator



## CIVILIAN COMPLAINT REVIEW BOARD
100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ♦ TELEPHONE (212) 912-7235
www.nyc.gov/ccrb



BILL DE BLASIO
MAYOR

FREDERICK DAVIE
CHAIR

January 3, 2019

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that (a) member(s) of the New York City Police Department engaged in misconduct on May 15, 2018, at 77th Precinct stationhouse in Brooklyn.

I have previously tried to get in touch with you by phone and mail and have not heard from you. In order to investigate this complaint, I need to speak with you as soon as possible. If I do not hear from you, the CCRB may have to close this case without conducting a full and thorough investigation. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,

Magdalena Azmitia
Investigator

CCRB CTS - Confidential

# ATTACHMENTS



**THE CITY OF NEW YORK OFFICE OF THE COMPTROLLER**
1 CENTRE STREET, NEW YORK, N.Y. 10007-2341

Scott M. Stringer
**COMPTROLLER**

015 - 188

Date: 12/14/2018
Claim no: 2018PI032680
Claimant: MARK GARNES
Date of Occur: 08/17/2018

MARK GARNES
POB 160363
BROOKLYN, NY 11216

The above claim is being reviewed. In order to properly evaluate this claim, please complete the items which are marked and return the form.

( X ) Claimant's social security # ...................................................................

( X ) Claimant's date of birth ..... May 15th, 1963 .....................................

( X ) Copy of final disposition ..... See Attached .....................................

( X ) Precinct of occurrence ................. 77th Precinct .............................

( X ) Name and shield # of arresting officer Det. Douglas W. Carr Shield# 512b

( X ) Copy of arrest report, rap sheet and, if filed, CCRB report ~ See Attached

( X ) Related medical records, particularly emergency room & ambulance records. See Attached

( X ) Medicaid and/or Medicare lien?..... N/A ................................................

( X ) Medicaid/CIN #......... N/A .......................................................

( X ) Any other information and or documents pertinent to your claim ~ See Attached

If you have any questions, feel free to contact ANASTASIA PEREZ at (212) 669-2251.

Sincerely yours:

ANASTASIA PEREZ
EXAMINER - PERSONAL INJURY DIVISION
Bureau of Law & Adjustment - Room 1220

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

**CRIMINAL COURT OF THE CITY OF NEW YORK**

**COUNTY OF KINGS: PART DVI**

PEOPLE OF THE STATE OF NEW YORK,

      -against-                                      **AFFIDAVIT**

MARK GARNES,                              **Case # 2018KN023543**
                                                **Arrest Report #18629833K**
                                                **DV Report # 2018-017-298**
                **Affiant.**                      **ICAD #D18051516234**
                                                  **DIR Complaint # 2951**

                                                **Part:  DVI**

**STATE OF NEW YORK**
**COUNTY OF KINGS**
**ss.:**

Mark Garnes, being duly sworn, hereby deposes and says:

1.  On May 15th, 2018 at approximately 1:15 p.m. affiant picked up his ex-girlfriend, Sheniqua Neal from her school, Medgar Evers College at Bedford Ave. and Carroll Street. Upon entering the vehicle, Sheniqua Neal took the driver's seat. This was to improve upon her driving skills.

2.  This date and day being Affiant's birthday was suppose to include eating at Jacob's Restaurant or Amy Ruth's in Harlem. In which Ms. Neal was suppose to be driving there. En route at Atlantic Ave. and Boreum Pl., Ms. Neal failed to take the far right lane from the left lane accordingly and hesitated, nearly causing the vehicle to our right to clip the rear of Affiant's vehicle. Affiant explained to Ms. Neal she has to move quickly when the lane is open and not hesitate.

3.  While making the right turn onto Boerum Pl., Ms. Neal failed to yield to a pedestrian crossing, to which the pedestrian was inches from the left corner bumper of the vehicle. At this time Affiant demanded Ms. Neal pull over and stop the vehicle, she did. Affiant

1

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

exited the vehicle and took the driver's seat. At this time Affiant proceded to Harlem thereon Boreum Pl. and Adams Street to the Brooklyn Bridge.

4. En route to the FDR Drive Ms. Neal debated with Affiant as to the two occurrences that had taken place, averring she was not at fault nor was wrong in her decisions as a driver. Affiant asserted each incident could result in accidents and lawsuits, Ms. Neal refused to accept these facts and argued on the matters.

5. At the Houston Street exit of the FDR Drive, Affiant opted to return to Brooklyn and drop Ms. Neal off at her home. Upon pulling up and stopping to allow Ms. Neal to exit the vehicle, she refused, stating, "My things and keys are at your house, I need to get them." Affiant replied by noting, "I will go get them and bring them back to you." This matter went back and forth for several moments with Ms. Neal refusing to exit and wait for Affiant's return.

6. Affiant opted to pick up his granddaughter from school as a result of things not going well with Ms. Neal, thus, celebrating his birthday with his granddaughter at Amy Ruth's. Affiant made a right turn on 3rd Ave. and Atlantic Ave., then a right turn at Pacific Street off 3rd Ave. Ms. Neal inquired as to where Affiant was going, Affiant stated, "I am going to get Amaiya, I'm not wasting my birthday away like this with you." At this time Ms. Neal began to get angry and defiant as to why things were changing, it wasn't her fault. This discussion led into her becoming more hyper and resulted in Ms. Neal opening the passenger side car door twice as Affiant drove along Pacific Street, westbound. Each time Affiant stopped the car and asked Ms. Neal not to do it because it would cause damage to the door as well possibly injure her.  Ms. Neal refused to heed this advice and at 335 Pacific Street, Ms. Neal opened the car door again. Affiant stopped the car, asked her to exit, she refused.  Affiant stepped out of the car with the intention of having Ms. Neal exit, she refused. Affiant waited at this location in hopes someone would call the police, due to Affiant's phone in the middle console and Ms. Neal not allowing Affiant to have it, as she made attempts to cross over into the driver's seat.

7. After several minutes and no officers arrival, Affiant pulled off and went to the 84th Precinct in hopes of getting assistance from officers to have Ms. Neal exit the vehicle. No officers were in and out of the precinct. Affiant drove off, en route to the Bronx to pick up his granddaughter.

8. During the drive across the Brooklyn Bridge and northbound on the FDR Drive, Ms. Neal continuously stated she wanted her things and keys, back and forth Affiant went with her on this matter. Ms. Neal was opportune to have her things and keys upon exiting the vehicle and allowing Affiant to retrieve them and bring them back to her. She refused.

9. Upon passing the 34th Street exit on the NB side of FDR Drive, Ms. Neal struck out at Affiant with her open hands to Affiant's face. Affiant immediately stopped the car to prevent an accident. Affiant asked Ms. Neal to not do that, it would cause an accident that could possibly kill us both. Ms. Neal stated, "It don't matter, so what." After several seconds Affiant began to drive off, some 10 to 50 feet, Ms. Neal struck out again to Affiant's face. Affiant stopped the car, stretched out his right hand to stop Ms. Neal's attack, opened the driver's side door and jumped out of the vehicle. Upon exiting, Affiant noted to Ms. Neal again, "You gonna f---ing kill us with this dumb sh-t. Are you crazy?" Ms. Neal screamed, "i don't care!!" over and over. At this time Affiant stood on the median dividing FDR Drive southbound and northbound, awaiting police officers to pass by. Affiant's phone once again in the middle console.

10. After several minutes, officers on the southbound side stopped and asked did Affiant need help? Affiant explained his ex-girlfriend attacked him while driving and was afraid to drive again due to her actions. The officer stated he would exit and come around to assist in the matter. Some moments later, DEP Police officers pulled up, southbound and inquired of assistance, Affiant noted officers were en route. However, after some twenty minutes or so, NYPD School Safety Division van pulled up next to Affiant's car and inquired of the matter. Ms. Neal jumped out and stated Affiant would not let her leave the car. Officer Diez and his partner exited their vehicle and commenced assistance.

11. At this time Officer Diez separated Affiant and Ms. Neal, speaking with Affiant first who explained Ms. Neal visited over the weekend, because she wanted to practice driving. Affiant helped Ms. Neal get her driver's license August 25th, 2017 and she had not been driving frequently thereafter. This was based on Affiant and Ms. Neal not being intimate since that time. Affiant further explained he asked Ms. Neal to exit his vehicle at Ms. Neal's home (510 Atlantic Ave., Brooklyn, New York), so Affiant could retrieve her things from his home and bring them back to her, she refused. Affiant noted Ms. Neal's opening the passenger side car door twice while Affiant driving on Pacific Street in Brooklyn. Therewith driving to the 84th Precinct to get assistance from officers to have

3

Ms. Neal exit the vehicle and then here onto the FDR Drive headed to the Bronx to pick up Affiant's granddaughter. Officer Diez then spoke with Ms. Neal. Several moments upon speaking with Ms. Neal, other officers arrived to assist in this matter. Highway Patrol Officer Emanuel Rosario seemingly held jurisdiction and commanded the matter while Officer Diez and his partner as well another officer stood by.

12. Patrolman Rosario discussed the matter with Officer Diez initially, then spoke with Ms. Neal and Affiant lastly. Patrolman Rosario advised after taking Affiant and Ms. Neal's identification and phone numbers the DV Report could be picked up at the local precincts where each lived. Patrolman Rosario advised Affiant to retrieve Ms. Neal's things and keys and return them to her, adding he would drive Ms. Neal to the nearest subway station to return to Brooklyn. Affiant notes here that the officers (Diez and Patrolman Rosario) believed the vehicle belonged to Ms. Neal, after retrieving Affiant's registration and insurance card from the inner pocket of the driver's door, the matter of ownership was confirmed. This belief derived from Ms. Neal sitting in the driver's seat upon the officers and patrolman's arrival. As Affiant stated to the officers and patrolman, Ms. Neal jumped in the driver's seat when Affiant attempted to retrieve his phone, refusing to let him have it. Affiant was only able to possess the phone when one of several officers stopped and Affiant advised he could not contact officers due to Ms. Neal refusing to let Affiant have the phone from the console.

13. Patrolman Rosario returned Affiant's identification with a yellow slip of paper with the DV Report and ICAD numbers inscribed. Officer Diez and his partner advised Affiant to file a domestic violence report once obtaining the DV Report of Patrolman Rosario. Officer Diez stating, "it's clear who caused this to happen." The officers' advised that Affiant have Ms. Neal pick her things up at the precinct to avoid Affiant getting in a confrontation with her again, moreso to protect Affiant in case Ms. Neal gets crazy again. However, no photographs of Affiant's face and neck with injuries thereon being clear were taken by Officer Diez and his partner nor by Patrolman Rosario. No medical assistance was obliged at the scene either. It is Affiant's understanding upon this writing that Patrolman Rosario should have taken these photos to accompany the DV Report and sought medical assistance for Affiant.

14. Affiant returned to his home, retrieved Ms. Neal's things (backpack with laptop and papers, clothing she had for the weekend and week, etc.) Affiant believed Ms. Neal's keys were in her backpack, they were not. Affiant learned this subsequent to his arrest and returning home on May 16th, 2018 after release from the Kings County Criminal

4

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

Court at approximately 11:00 a.m. Affiant placed the keys in an envelope, took them to the 77th Precinct inscribing Det. Carr's name on it with Sheniqua Neal's name, the contents (keys) with Ms. Neal's phone number. Ms. DeJesus was at the Public Service Desk and called up to see whether or not Det. Carr was in, he was not, Affiant left the envelope with keys with Ms. DeJesus and exited the 77th Precinct.

-------------------------------------------------

15. On May 15th, 2018 at approximately 3:30 p.m. Affiant went to the 77th Precinct to file a domestic violence report against Sheniqua Neal, Affiant's ex-girlfriend. This filing on the advice of Officer Diez and his partner as well Patrolman Rosario. Affiant inquired about the DV Report submitted by Patrolman Rosario to Ms. DeJesus there at the 77th Precinct, Affiant provided Ms. DeJesus with the yellow slip of paper with information inscribed by Patrolman Rosario. Ms. DeJesus scanned the computer and located the DV Report, however, Ms. DeJesus stated, "I cannot provide you with this report. You have to go to the 17th Precinct to get it." Affiant replied, "The highway patrol officer who wrote the report told me I could pick it up here and file my domestic violence report with it." Ms. DeJesus noted she would speak with a supervisor as there were no DV officers in the precinct at that time. Several moments later, Ms. DeJesus shifted the duties of Affiant filing the domestic violence report to Ms. Wilson who gave Affiant the DIR form to fill out. Affiant commenced with inscribing the events that occurred as noted above **(Paragraphs 1-14).** Ms. DeJesus asked Affiant whether or not Affiant wanted medical assistance, seeing the injuries to Affiant's face. Affiant affirmed yes he wanted medical assistance. Ms. DeJesus noted she would contact the ambulance once the paperwork completed. During this time, Officer LeRoux photographed Affiant's face and next and right bicep.

16. Thereafter, Ms. Wilson filled out several forms inclusive to Affiant's DIR statements, as to Ms. Neal's profile: height, weight, hair color, eye color, hair length, etc. Thereafter, Ms. Wilson requested Affiant's vehicle registration, which was in Affiant's car, upon getting up to go get these documents, Ms. Neal walked into the 77th Precinct. Affiant notified Ms. Wilson that was Ms. Neal. Upon returning inside the precinct, Affiant noticed Det. Carr speaking with Ms. Neal. Affiant provided the vehicle documents to Ms. Wilson who continued to complete the documents adjacent to the DIR.

17. Det. Carr entered the area and told Ms. Wilson not to complete the paperwork on the DIR/DV. Det. Carr asked Affiant to step out of the room and we entered the entry way to

the precinct to speak. Det. Carr asked Affiant what occurred, Affiant stated to Det. Carr he had written down the statement on the DIR form and could read it. Det. Carr said, "No, just tell me what happened." Affiant outlined the incident for Det. Carr, who advised that Ms. Neal would be arrested on this matter as well as Affiant and asked did Affiant want that to happen?" Affiant inquired as to how he was going to be arrested for being a victim? Det. Carr stated, "Because she said you hit her also." Affiant explained to Det. Carr that Affiant stretched his right hand out to prevent Ms. Neal from attacking him any more while driving and to exit the car. That's hitting her to prevent us from an accident or worst?" Det. Carr advised Affiant to go back into the area with Ms. Wilson and Ms. DeJesus as he spoke with Ms. Neal further.

18. Several moments later, Det. Carr scooped up all the paperwork from Ms. Wilson, who asked Det. Carr what was to be done? Det. Carr responded, "I will handle it." At this time Det. Carr advised Affiant and Ms. Neal to come with him. Det. Carr escorted Affiant and Ms. Neal to the second floor of the precinct. Affiant was placed inside of an interview room to the left of the stairway and Ms. Neal to a location unknown to Affiant.

19. Det. Carr noted to Affiant, "Sit here for a minute so we can get this straightened out. I'll be right back." Det. Carr exited the room and returned some moments later. Sitting across from Affiant, Det. Carr explained again that Affiant could be arrested on this matter because Ms. Neal is insisting Affiant hit her. Again, Affiant outlined the day and up until the point of the incident and occurrences before and thereafter with Patrolman Rosario's advice that led Affiant to the 77th Precinct. Det. Carr stressed Affiant's arrest on the premise of the DIR being filed. Affiant inquired how can he be arrested when he is the victim, also, the incident occurred in Manhattan, why is it Patrolman Rosario or Officer Diez did not arrest Affiant for being the victim. Det. Carr was absent an answer on this, only to say Affiant came to the 77th Precinct to file the complaint. Brooklyn does not operate like Manhattan Det. Carr added. Det. Carr once again exited the interview room and noted he would speak to his supervisor. Upon returning minutes later Affiant provided his identification to Det. Carr who noted he would be right back. Moments later, Det. Carr advised Affiant he was being arrested. Det. Carr stated, "You also have eight other incidents Ms. Neal filed against you on domestic violence, so you are being arrested." After securing all Affiant's property with advice to notify someone to pick it up, Affiant was handcuffed. During the placement of the cuffs upon Affiant, as well during the fingerprinting, Affiant was not read his rights nor given notice to his rights

6

regarding this arrest. At no time during Affiant's presence therein the 77th Precinct was Affiant notified of his rights.

20. During this arrest process, Det. Carr noted Affiant would most likely be "DP'd" due to Ms. Neal being the primary aggressor. Again, upon this statement, Affiant inquired then, "Why am I being arrested should that be clearly recognized?" Det. Carr replied because it's a domestic violence incident and both parties have to be arrested." Affiant was confused to this and again wanted to know "Why didn't Highway Patrol arrest us, then?" Det. Carr had no logical answer only that highway patrol did not do his job right.

21. During the attempts to fingerprint Ms. Neal, officers struggled with her, being in a hysterical state due to the arrest, Ms. Neal lunged at the holding cell where Affiant was placed. Ms. Neal hollered and yelled at Affiant, Affiant remained quiet and still.

22. Affiant and Ms. Neal were escorted by Officers Burke and Seliman to the Kings County Criminal Court lock up for further processing, clearly evident were the injuries to Affiant's face caused by Ms. Neal's attack. During this transportation, Affiant was placed in the rear of the van, Ms. Neal in the front row behind Officer Burke, who drove. Officer Seliman sat in the middle row separating Affiant and Ms. Neal, who had calmed down but continued to make harsh remarks directed at Affiant. Affiant remained quiet.

23. Upon being processed at the Kings County Criminal Courthouse, Affiant notified the EMT/FDNY staff on-hand at the courthouse processing of his injuries. No medical assistance was provided at no time throughout this matter.

24. Affiant firmly believes Det. Carr filtered Affiant's name in the criminal database and/or discovered thereon the DV Report of Patrolman Rosario and opted to arrest Affiant on the premises of Affiant's background, discriminately.

25. On May 16th, 2018, Affiant was interviewed by Steven C. Kuza, Staff Attorney, Criminal Defense Practice, 111 Livingston Street, Brooklyn, New York 11201, therein the holding cell at Kings County Criminal Court at about 8:30 a.m. Affiant outlined the incidents leading up to the domestic violence occurring on FDR Drive Northbound, Attorney Kuza inscribed these events therein his file. Attorney Kuza inquired whether or not Ms. Neal was arrested, Affiant affirmed she had been, to which Mr. Kuza asserted, "That's a good thing."

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298 ICAD #D18051516234 - DIR Complaint # 2951**

26. On this same date, at approximately 11:00 a.m., Affiant went before the Honorable Court and was released, an order of protection to stay away from Sheniqua Neal appended and a court date of June 29th, 2018 imposed.

27. Upon release, Affiant went directly to the 77th Pct. and requested a copy of the DIR form inscribed by Affiant on the 15th of May 2018, Ms. DeJesus advised Det. Carr had all the paperwork. Ms. DeJesus phoned Det. Carr who advised the paperwork had been discarded, upon hanging up the phone, Affiant asked Ms. DeJesus, "Why was the papers discarded?" Ms. DeJesus stated, "Det. Carr is coming down to speak with you." Seconds later Det. Carr arrived, Affiant requested copies of the DIR Forms filled out by Affiant and Ms. Wilson on May 15th. Det. Carr reiterated the papers were discarded. Affiant asked, "How is that, you arrest me based on my DIR, so how are they now discarded?" At this time, Det. Carr hands Affiant three (3) pink carbon copies of what Affiant learned are Det. Carr's "Domestic Incident Report," which modified Affiant's statements on the DIR as well times and location of the incident to Atlantic Ave. and Flatbush Ave.  Also, Patrolman Rosario's report as to the domestic violence incident. **(See Attached)**

28. Thereafter, Affiant arrived home and discovered Ms. Neal's keys on the table, Affiant returned to the 77th Precinct with them, providing the opportunity for Ms. Neal to receive them without Affiant's presence. Affiant provided the keys in an envelope with Det. Carr's name inscribed therewith Ms. Neal's name and phone number with contents noted. Det. Carr was not in the precinct at this time, Ms. Dejesus had called up and informed Affiant of such, to which, Affiant gave the envelope with contents to Ms. DeJesus. **See Paragraph 14**

29. On this date, May 16th, 2018, Affiant went to the 17th Precinct, as referred by Ms. DeJesus, to receive a copy of Patrolman Rosario's DIR. Upon which was provided by Officer Komiko Candelario-Toth at the 17th Precinct.

30. Thereafter on this same date, Affiant went to his regular physician to get examined for the injuries to his face, neck and right bicep. Unfortunately, an exam could not be taken at that time. Affiant scheduled an appointment to the matter nevertheless. **(See Attached)**

31. Affiant then went to the emergency room at New York Presbyterian, 170 Williams Street, New York City. Which advised Affiant's physician could examine the injuries to avoid the $110 payment. Affiant noted to the nurse he had made an appointment and advised to come to the emergency room. The nurse suggested Affiant go to an urgent care facility to get immediate assistance. At this time Affiant contacted his union and

8

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

was provided a list of urgent care facilities. The Advantage Care facility at 195 Montague Street, Brooklyn, New York was by appointment only due to Affiant being a new client. The attendant there suggested an urgent care a block away on Court Street, ProHealth, which accepted walk-ins.

32. Affiant went to ProHealth and received the walk-in examination with a $40.00 co-pay. Dr. Lawrence examined Affiant and documented the results. **(See Attached)**

**AFFIANT** attest and avers the above to be true and to the best of his recollection and knowledge to the events occurring from May 15th to May 23rd, 2018. Hereto, Affiant reasons under the laws of New York City, New York State, and/or Federal Laws, Det. Carr did not read nor advise Affiant of his rights upon being handcuffed and arrested nor received medical attention to the injuries to his face, neck and right bicep. Affiant truly believes Det. Carr's premonition to arrest Affiant was on the premise of discrimination based on Affiant's criminal background and not within the laws governing this domestic violence incident as a victim. Seemingly Det. Carr's objective was to further blemish Affiant's character.

Mark Garnes – Affiant

Sworn to before me this ____2 3____ day of May 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

9

# NOTICE OF CLAIM

**THE CITY OF NEW YORK OFFICE OF THE COMPTROLLER**
1 CENTRE STREET, NEW YORK, N.Y. 10007-2341

Scott M. Stringer
**COMPTROLLER**

015 - 188

Date: 12/14/2018
Claim no: 2018PI032680
Claimant: MARK GARNES
Date of Occur: 08/17/2018

MARK GARNES
POB 160363
BROOKLYN, NY 11216

The above claim is being reviewed. In order to properly evaluate this claim, please complete the items which are marked and return the form.

(X) Claimant's social security # ............................................................

(X) Claimant's date of birth .....May 15th, 1963............................

(X) Copy of final disposition .....See Attached.............................

(X) Precinct of occurrence .....77th Precinct................................

(X) Name and shield # of arresting officer Det. Douglas W. Carr Shield 512b

(X) Copy of arrest report, rap sheet and, if filed, CCRB report - See Attached

(X) Related medical records, particularly emergency room & ambulance records. See Attached

(X) Medicaid and/or Medicare lien?.....N/A.....................................

(X) Medicaid/CIN #.........N/A........................................

(X) Any other information and or documents pertinent to your claim - See Attached

If you have any questions, feel free to contact ANASTASIA PEREZ at (212) 669-2251.

Sincerely yours:

ANASTASIA PEREZ
EXAMINER - PERSONAL INJURY DIVISION
Bureau of Law & Adjustment - Room 1220

CITY: _Brooklyn_ STATE: _New York_ ZIP: _11216_

SOC.  SEC.  #  or  TAX  I.D.  #: _____

**CLAIM INFORMATION**

CITY AGENCY INVOLVED: _New York City Police Department (77th Precinct)_

NATURE OF CLAIM: (ATTACH ADDITIONAL SHEET(S) OF PAPER, IF NECESSARY)

_On 5/15/2018 I was arrested, searched & my rights were not_
_read to me by Det. Douglas Carr (77th Pct). This arrest based on_
_DV Report by NY Highway Patrol officer Rosario which was modified and_
_my DV statement destroyed by Det. Carr. Det. Carr arrested me on_
_the premises of my criminal history discriminately._
_PLEASE SEE ATTACHED OUTLINE OF EVENTS_

(MARK GARNES)

TOTAL   AMOUNT   CLAIMED: $ _5 Million_

IF MORE THAN ONE ITEM IS INCLUDED IN THE TOTAL AMOUNT CLAIMED, SUPPLY BREAKDOWN OF
AMOUNTS AND SPECIFY ITEMS: (ATTACH ADDITIONAL SHEET(S), IF NEEDED)

| ITEM | AMOUNT |
|---|---|
| 1. _Destroyed Sweatpants $18.50_ | $ _____ |
| 2. _____ | $ _____ |
| 3. _____ | $ _____ |
| 4. _____ | $ _____ |
| 5. _____ | $ _____ |

PLEASE ATTACH COPIES OF SUPPORTING DOCUMENTATION, PREVIOUS CORRESPONDENCE, INVOICES,
ETC.

CLAIMANT'S SIGNATURE: _Mark Garnes_

SS: STATE OF N.Y.
    CITY OF N.Y.  SUBSCRIBED AND SWORN TO BEFORE ME THIS ____ DAY OF

    _____, 20____

                                    _____
                                              NOTARY

TO: OFFICE OF THE COMPTROLLER
    DIVISION OF LAW - RM.1225 South
    1 CENTRE STREET
    NEW YORK, N.Y. 10007
    TELEPHONE # (212) 669-4736

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**


Mark Garnes
P.O. Box 160363
Brooklyn, N.Y. 11216


November 13th, 2018


Office of the Comptroller
Division of Law – Rm. 1225 South
1 Centre Street
New York, New York 10007


**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**


To Whom It May Concern Respectfully:


I, the above noted submit this complaint against Detective Douglas Carr of the 77th Precinct on the following grounds:

    a) Destruction of Victim's Domestic Violence Statement (DIR-Claimant here);
    b) Modified/Fraudulent Domestic Violence Report;
    c) Forged Signature of Victim-Claimant;
    d) Illegal/False Arrest and illegal/False Imprisonment;
    e) Illegally searched;
    f) Failure to Read/Advise/Notify Victim-Claimant of His Miranda Rights when Arrested;
    g) Denial/Failure to Provide Medical Assistance to Victim-Claimant;
    h) Destruction of personal property (Strap of jogging pants cut off due to not able to pull out);
    i) Discrimination (Criminal History Discrimination).

1

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
   Arrest Report # K18629833K
   DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
   DIR Complaint # 2951 (77th Pct.) Det. Carr

1. On May 15th, 2018, Claimant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The subsequent report on this same date was filed by Det. Carr there at the 77th Pct. **Ex. 4-6a** In which, Claimant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Claimant's injuries to his face, neck and right bicep. **7-13 (Photos of Claimant's injuries at scene and of location by Claimant's phone) (Photos by Ms. DeJesus (77th Pct., Ex. 14-17)**

2. However, only the photos Ms. DeJesus had taken with Claimant's phone exist. **See Attached Affidavit, Paragraphs 1-13;**

3. Upon Ms. Neal entering the 77th Pct., Claimant notified Ms. Wilson that Ms. Neal was here for me to return her property to her. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Claimant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Claimant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Claimant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Claimant's identification. Upon entering the interview room once more, Det. Carr notified Claimant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

4. Det. Carr placed the handcuffs on Claimant and did not read nor notify Claimant of his rights relevant to this arrest. Claimant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

5. Throughout these occurrences at the 77th Pct., Claimant received no medical assistance which was requested in the initial DIR filled out by Claimant. Ms. DeJesus also inquired whether or not Claimant wanted medical assistance, Claimant affirmed he did. **See Attached Affidavit, Paragraph 15**

2

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

6. On May 16th, 2018, Claimant was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon release Claimant returned to the 77th Pct. to pick up copies of the DIR forms Claimant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Claimant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Claimant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Claimant Det. Carr had discarded the DIR documents Claimant filled out, however, Det. Carr was coming down to speak with Claimant. At this time Det. Carr notified Claimant the DIR statements Claimant inscribed on the forms were discarded. Det. Carr passed Claimant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Claimant's face, neck and right bicep. Nor had Claimant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Claimant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

7. Claimant remained confused as to how he had arrested for being the victim as Det. Carr recognized and verbally indicated to Claimant. Reasoning with the mandatory arrest laws in domestic violence incidents, Claimant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Claimant's criminal history background became an objective, discriminately. Positing here Claimant was illegally and falsely arrested and searched on the premises of discrimination and personal interests of Det. Carr, in addition, to make Claimant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

8. On this same date (May 16th, 2018), Claimant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Claimant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Claimant spoke with Ms. DeJesus upon arriving again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Claimant's house and could Det. Carr give them to her. Claimant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

3

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

9. Hereto on this date, May 16th, Claimant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 1-3**

10. Thereafter leaving the 17th Pct., Claimant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

11. On June 29th, 2018 Claimant's scheduled court hearing was conducted with a return date of August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

Claimant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Claimant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Claimant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

I, Mark Garnes hereby attest the above is true and correct to the best of recollection and knowledge as to the events and dates as they occurred.

Respectfully yours,

*Mark Garnes*

Mark Garnes-Claimant

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

## CERTIFICATE OF SERVICE

    **I hereby certify** that on this November 13th, 2018 a copy of the forgoing Notice of Claim with Outline and Exhibits/Personal Injury Claim Form with Outline and Exhibits were mailed, certified mail, return receipt requested, to: **Corporate Counsel, 100 Church Street, New York, New York 10007**

_____
Mark Garnes -Complainant

Sworn to before me this ___*13*___ day of November 2018.

Notary Public   *Galina Foldman*

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

_____X

Mark Garnes,                          :

         Plaintiff,               :       **COMPLAINT**
                                              **Docket Number:**
                                      :       **PRO SE**
                                              **JURY TRIAL DEMANDED**

                                      :

        -against-                :

City of New York,                     :
New York City Police Department
and Detective Douglas W. Carr,        :
Shield No. 5126 (77th  Pct.),

                                      :

        Defendants.
_____X

Plaintiff here, Mark Garnes, Pro Se, alleges herein the complaint as follows:

I
**PRELIMINARY STATEMENT**

1. This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by 42 U.S.C. 1983, 1988, the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, as well Discrimination under the Fifth Amendment of the United States Constitution.

1

2.  The claims here derived from an incident with subsequent arrest, search and seizure on May 15th, 2018, in which Detective ("Det.") Douglas W. Carr, Shield No. 5126, acting under the color of law, intentionally and willfully subjected Plaintiff to false arrest and false imprisonment fraudulently and discriminately without probable.

3.  Plaintiff seeks monetary damages (special, compensatory, and punitive) against Defendants, as well as an award of costs and attorney fees (should counsel be retained in this instant matter) and further relief as the Honorable Court deems just and proper.

    The Honorable Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments. Jurisdiction of the court is invoked pursuant 28 U.S.C. Section § 1343. Plaintiff further invokes supplemental jurisdiction pursuant 28 U.S.C. Section 1367, above any and all state court law claims. **This court has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.**

4.  The matter in controversy exceeds $75,000.00 excluding interest and costs.

5.  Venue in this instant matter is within the United States District Court for the Eastern District of New York, in which Defendants, City of New York, New York City Police Department and Det. Douglas W. Carr are located within, hereto the pertinent portions of this incident rest to the claims' occurrence within the boundaries of the Eastern District of New York.

2

**II**

**PARTIES**

6.  Plaintiff, Mark Garnes is a legal resident of the United States and at all times here relevant resided in Kings County, Brooklyn, New York, a City and State of New York.

7.  Defendant, the City of New York is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City of New York, acting through Defendant New York City Police Department ("NYPD") is responsible for the policy, practice, supervision, implementation and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

8.  Defendant, Det. Douglas W. Carr, Shield # 5126 was, at all times herewith this instant matter on May 15th, 2018, as a Detective of the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times hereto, Det. Douglas W. Carr was the arresting officer and was under the command of the 77th Precinct of the NYPD. Defendant Detective Douglas W. Carr is being sued in his individual and professional capacity.

3

9. At all times here noted, Defendants were acting under color of State law, to which, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

**III**

**NOTICE OF CLAIM**

10. Within 90 days of this incident on May 15th, 2018, Plaintiff filed a written **NOTICE OF CLAIM** with the New York City Office of the Comptroller. Over 30 days elapsed since the filing of that notice, with this matter absent of settlement or otherwise disposed of in any manner, procedurally and/or legally.

**IV**

**50-H Hearing**

11. On April 25th, 2019, a **50-H Hearing** relevant to this matter was conducted by Daniel L. Schneider, Esq., there at 160 Broadway, 14th Fl., New York, New York 10038. **See Attached** However, to date, Plaintiff has not received the transcripts from this **50-H Hearing** as requested thereon this hearing date as well thereafter. Here also, upon commencement of this action no form of adjustments or payments thereof settlement has incurred thereby disbursement and/or otherwise. Thus, as provided under law, this action has been initiated. In addition, a request for the transcripts were submitted as well a second request thereby FOIL Request. **See Attached**

V

**FACTUAL ALLEGATIONS**

12. Plaintiff is Black/African-American and a citizen residing in the United States.

13. On May 15th, 2018, Plaintiff incurred a domestic issue with ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan (New York County) between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The subsequent report on this same date was filed by Det. Carr there at the 77th Pct. **Ex. 4-6a** In which, Plaintiff's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Plaintiff's injuries to his face, neck and right bicep. **Ex. 7-13 (Photos of Plaintiff's injuries at scene and of location by Plaintiff's phone) (Photos by Ms. DeJesus (77th Pct., Ex. 14-17)** According to Public Safety DeJesus, Det. Carr obtained these mentioned forms and documents and discarded them himself, personally.

14. However, only the photos Ms. DeJesus had taken with Plaintiff's phone exist. **See Attached Affidavit, Paragraphs 1-13;**

15. Upon Ms. Sheniqua Neal ("Ms. Neal") entering the 77th Pct., Plaintiff notified Ms. Wilson that Ms. Neal was here for Plaintiff to return her property as advised by officers assisting Patrolman

5

Rosario. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Plaintiff. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Plaintiff and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Plaintiff again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Plaintiff's identification. Upon entering the interview room once more, Det. Carr notified Plaintiff he would be arrested.   **See Attached Affidavit, Paragraphs 15-24**

16. Det. Carr placed the handcuffs on Plaintiff and did not read nor notify Plaintiff of his rights relevant to this arrest. Plaintiff was not read his rights during the fingerprinting, photo I.D. nor at any time relevant to this arrest, between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

17. Throughout these occurrences at the 77th Pct., Plaintiff received no medical assistance which was requested in the initial DIR filled out by Plaintiff. Ms. DeJesus also inquired whether or not Plaintiff wanted medical assistance, Plaintiff affirmed he did. **See Attached Affidavit, Paragraph 15 See also: NYPD PATROL GUIDE-Section: Prisoners Procedure No:210-04 PRISONERS REQUIRING MEDICAL/PSYCHIATRIC TREATMENT**

18. On May 16th, 2018, Plaintiff was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an **ORDER OF PROTECTION** to remain clear of Ms. Neal was issued.

**Ex. 12-13** Upon release Plaintiff returned to the 77th Pct. to pick up copies of the DIR forms Plaintiff filled out. Upon speaking with Ms. DeJesus, Plaintiff requested copies of the DV Report filed by Patrolman Rosario and Plaintiff's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Plaintiff with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Plaintiff Det. Carr had discarded the DIR documents Plaintiff filled out, however, Det. Carr was coming down to speak with Plaintiff. At this time Det. Carr notified Plaintiff the DIR statements Plaintiff inscribed on the forms were discarded. Det. Carr passed Plaintiff three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Plaintiff's face, neck and right bicep. Nor had Plaintiff signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Plaintiff and Ms. Neal in New York County, not Kings County as purported by Det. Carr. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

19. Plaintiff remained confused relevant to this arrest for being the victim as Det. Carr recognized and verbally indicated to Plaintiff. Reasoning with the mandatory arrest laws in domestic violence incidents, Plaintiff became convinced it was more to it than just the arrest. Det. Carr's insight to Plaintiff's criminal history background became an objective, discriminately. Det. Carr verbally noted to Plaintiff, "You've had 8 incidents and arrests of domestic violence with Ms. Neal." Positing here, Plaintiff was illegally and falsely arrested and searched on the premises of discrimination on the premises of sealed and unsealed arrest records as well personal interests

7

of Det. Carr. In addition, Det. Carr opted to make Plaintiff's birthday unforgettable on this date thereby humiliating Plaintiff with a false arrest and false imprisonment. **See Attached Affidavit, Paragraph 24**

20. On this same date (May 16th, 2018), Plaintiff, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Plaintiff placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Plaintiff spoke with Ms. DeJesus upon arrival again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Plaintiff's house and could Det. Carr give them to her. Plaintiff's objective to avoid contact with Ms. Neal based on the **ORDER OF PROTECTION**. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

21. Hereto on this date, May 16th, Plaintiff went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 1-3**

22. Thereafter leaving the 17th Pct., Plaintiff went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

23. On June 29th, 2018 Plaintiff's scheduled court hearing was conducted with a return date of August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

8

24. In addition, Plaintiff submitted a complaint to the Civilian Complaint Review Board to investigate these matters as outlined above.

25. In/or about March 2019, CCRB noted their investigation was concluded and would be taken up by one of New York City Police Association Boards. To date, Plaintiff has yet to receive any communication and/or contact from any boards, agencies and/or otherwise on this matter from NYPD or otherwise.

**VI**

**FIRST CAUSE OF ACTION:**

**FALSE ARREST**

28. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and illegally confined Plaintiff without probably cause.

29. On this date, May 15th, 2018, Det. Carr, Shield # 5126, modified and falsified documents for domestic violence without probable cause, in that, no reasonable grounds existed that would warrant arrest of Plaintiff. Hereto, noting, no arrest warrant and/or otherwise existed to justify arrest. To which resulted in an inappropriate and false arrest and illegal confinement.

30. Plaintiff avers as a direct result of this false arrest and illegal confinement, Plaintiff suffered injuries of humiliation, shame, indignity, therewith emotional and physical distress.

9

31. Plaintiff further notes the damages hereof exceed the jurisdictional amount of all judicial forums below the Honorable Court hereof this instant matter.

## VII

## SECOND CAUSE OF ACTION

## FALSE IMPRISONMENT

32. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff.

33. On this date, May 15th, 2018, Det. Carr, Shield #: 5126 modified and falsified documents for domestic violence without probable cause, in that, no reasonable grounds and/or justification existed that would warrant Plaintiff to be imprisoned and detained against his will. Det. Carr, within the margins of his employment intentionally and personally imprisoned Plaintiff against his will, reasoning this imprisonment and confinement was not privileged nor optional absent probable cause.

34. Plaintiff avers as a direct result of this false arrest therewith illegal confinement, Plaintiff suffered injuries of humiliation, shame, indignity, therewith emotional and physical distress.

35. Plaintiff avers here damages sustained in this matter exceeds the jurisdictional amount thereof the lower judicial forums hereof the Honorable Court.

## VIII

## THIRD CAUSE OF ACTION
## CIVIL RIGHTS VIOLATION FOR
## DENIAL OF MEDICAL ATTENTION
## WHILE IN CUSTODY

10

36. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield #: 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff without probable cause and denied Plaintiff medical attention while in custody.

37. *On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield #: 5126 were acting and exercising their authority under the color of law maliciously and plausibly with intentional indifference. Defendants failed to secure medical attention required for Plaintiff's injuries. Thus, in such a manner that deprived Plaintiff of his constitutional rights which plausible continual harm (infections from the wounds) and scars from the injuries sustained.*

38. *Reasoning here, Plaintiff had been injured and negated medical attention by Defendants, to which has embedded mental anguish therewith medical and other expenses (travel/transportation to and from for medical attention) and otherwise damaged in the amount to be determined by a jury.*

IX

**FOURTH CAUSE OF ACTION**

**VIOLATIONS OF ARTICLE I, SECTION 6
OF THE NEW YORK CONSTITUTION
AND THE FIFTH AND FOURTEETH
AMENDMENTS OF THE UNITED STATES
CONSTITUTION UPON PLAINTIFF**

11

39. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield #: 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and detained Plaintiff illegally In violation of the Fifth Amendment of the United States Constitution and Article I, Section 6 of the New York Constitution therewith the Fifth and Fourteenth Amendments of the United States Constitution states that, "No person shall be deprived of life, liberty or property without due process of law."

40. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield # 5126 were acting and exercising their authority under the color of law upon the arrest of Plaintiff fueled by the criminal history and sealed records of arrests for previous domestic violence complaints and/or reports hereof parties mentioned involved on this date of May 15th, 2018, as to the latter. Such parties being Plaintiff and Sheniqua Neal, whom Det. Carr averred to Plaintiff, "You've been arrested over eight (8) times for domestic violence with Ms. Neal."

41. In accord with New York City Police Department's **Detectives Guide, Section: Personnel, Procedure No.: 512-05, SEALED RECORDS PROCEDURE** with policy and practice of maintaining, using, and disclosing sealed arrest records, herewith violation of Criminal Procedure Law (CPL) Sections 160.50 and 160.55 (the sealing statutes) and due process rights under the New York State Constitution, posits Defendants here, with Det. Carr infringed upon Plaintiff's constitutional rights, state and federal.

12

42. Reasoning, Defendants nor Det. Carr's actions were permissible under the color of law nor exercised constitutionally, to which, Det. Carr and Defendants failed compliance of the mandatory requirements with CPL § 160.50(d) et. al therewith the Constitutions of New York State and the United States.  Thus, in violation of Plaintiff's right to due process, holding that this unveiling of Plaintiff's criminal history and sealed records here mentioned motivated Defendants and Det. Carr to violate Plaintiff's Fourth, Fifth and Fourteenth Amendments thereby falsely arresting and falsely imprisoning Plaintiff. In that, Plaintiff has a protected interest in the sealing of these records which, in this instant matter deprived Plaintiff of due process.

**\*42 U.S.C. 1983, in addition to other state and federal laws applicable in this instant matter.**

43. On May 15th, 2018, Defendants, therewith Det. Carr acting under the color of law, without probable cause, just cause, provocation or any reasons to believe that Plaintiff was engaged in any criminal activity, deprived Plaintiff of constitutional rights to be free from false arrest, false imprisonment with such being which probable cause was nullified in each instant. Hereto, Plaintiff was denied medical attention, due process of law. Collectively, thereunder the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, therewith Article I, Section 6 of the New York Constitution, Plaintiff's rights were ignored and violated by Defendants.

**X**

**FOURTH CAUSE OF ACTION**

**CIVIL RIGHTS VIOLATION
OF PLAINTIFF**

44. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and detained Plaintiff illegally.

45. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield # 5126 were acting and exercising their authority under the color of law upon falsely arresting and falsely imprisoning, denial of medical attention and advantageous and unwarranted use of Plaintiff's criminal history and sealed criminal records in violation of 42 U.S.C. 1983, in addition to other state and federal laws applicable in this instant matter.

**XI**

**FIFTH CAUSE OF ACTION**

**INTENTIONAL AND NEGLIGENT INFLICTION
OF EMOTIONAL DISTRESS UPON PLAINTFF**

46. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff.

47. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield #: 5126 exercised intentional and reckless disregard to the

14

consequences of their actions and caused Plaintiff severe emotional distress throughout their actions with this incident/ordeal of false arrest and false detainment with denial of medical attention, failure to comply with the rules, regulations, procedures, policies, laws as well violations of Plaintiff's constitutional rights pertinently appended to this instant matter.

48. The actions exercised and emitted upon Plaintiff by Defendants was beyond any form of decency, consideration, exceedingly outrageous, unbelievably shocking which resulted in Plaintiff's emotional and physical distress. Giving the facts, Plaintiff's arrest being on his day and date of birth with falsehoods and allegations therewith the modified and falsified DV Report all devastated Plaintiff to unbelievable horizons.

49. Plaintiff avers here damages sustained in this matter exceeds the jurisdictional amount thereof the lower judicial courts hereof the Honorable Court.

50. Plaintiff further states, as an afterthought, Det. Carr's conduct illustrative above, seemingly has a pattern of being unethical with reprimand. In which, the following case mirrors simulative actions in this instant matter.

      a.   **Case   2011-3643**

      **Disposition Date: June 5, 2012**

      **An internal NYPD disciplinary case opened on 5/20/2011 alleged that this officer engaged in the following conduct: 1) Wrongfully Classified A Complaint Report Incorrectly - Guilty. The officer Vacation Days.**

**See Also:**               NYPD  PATROL GUIDE (Page 1 of 1)

      Section: General Regulations Procedure No: 203-08

      **MAKING FALSE STATEMENTS**

15

XII

**SIXTH CAUSE OF ACTION:**
**MUNICIPAL AND SUPERVISORY LIABILITY**

51. Defendants, the City of New York therewith the New York City Police Department are liable for the damages suffered by Plaintiff as a result of the conduct of their employees, agents and servants, subsequent to notification of their employee's violations Plaintiff's constitutional rights, Defendants here, the City of New York and NYPD failed to remedy the errors of Det. Douglas W. Carr who has a prior incident parallel to Plaintiff's cause of actions outlined herein.

52. Seemingly, procedures and policies relevant to this matter are nullified and ignored with the customs of this unethical behavior clearly acceptable. It is here where the Defendants, City of New York and NYPD have exercised gross neglect in managing the professionalism, actions, and conduct of subordinates and precisely in this manner, Defendant Det. Douglas W. Carr. Plaintiff notes here, Defendants, City of New York and NYPD are cognizant of Det. Carr's prior offense mirroring this instant matter and has exhibited deliberate indifference to the false arrest, false imprisonment, denial of medical attention, violation of due process, discriminatory use of Plaintiff's criminal history and sealed records, therein violation of Plaintiff's constitutional rights apprised herein.

53. Plaintiff states here, the Defendants, City of New York and NYPD are liable for the damages incurred upon Plaintiff by its subordinate employee, agent and servant herein this instant

16

matter. Defendant, Det. Douglas W. Carr's modification and falsification of government documents to justify an arrest and detainment without probable cause, therewith denial of medical attention, exceedingly violated Plaintiff's constitutional rights, state and federal. In that, the Defendants here named in their supervisory positions and authority failed to remedy the matter officially and/or otherwise. Thus, deliberately evincing indifference to the totality of the matter here before the Honorable Court.

## XIII
## DAMAGES

As a direct result of Defendants actions, Plaintiff suffered the following injuries and damages:

54. Violation of Constitutional rights afforded therewith the Fourth, and Fourteenth Amendments to be free from false and illegal search and seizure of one's person without and/or probable cause. and denial of medical attention;

55. Violation of Constitutional right afforded therewith the Fifth Amendment due process of law;

56. Physical pain, harm and suffering;

57. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience and anxiety;

58. Loss of Liberty;

17

**XIV**

**RELIEF REQUESTED**

59. Plaintiff seeks $5,000,000 in damages due to Det. Carr's falsifying, modifying city and state official documents to justify the false arrest and illegal detainment of Plaintiff thereby an illegal search and seizure of Plaintiff's person and property on May 15th, 2018, in violation of Plaintiff's constitutional rights. This amount sought/requested therein the Formal Claim Information submitted within 90 days thereof the statute of limitations prescribed;

60. Award Plaintiff compensatory damages against Defendants jointly and severally. To which, Plaintiff seeks, as denoted there at the 50-H Hearing on April 25th, 2019, $1,000,000.00 in damages. Reasoning Det. Carr's actions seemingly are repetitive and absent official reprimand from Defendants, City of New York and NYPD to deter such unethical conduct. Defendant Det. Carr's modifying and falsifying documents to arrest Plaintiff negated probable cause thereby falsifying the arrest complaint/report. Positing such warrants significant damages to deter Det. Carr's actions forthcoming upon others arrested and detained under his authority unethically and illegally;

61. Plaintiff avers $500,000 in damages premised on the combined injuries inclusive of nearly 24 hours of lost liberty, handcuffing-related wrist pain, substantial emotional harms as a result of being handcuffed and imprisoned on Plaintiff's birthday. Extreme distress while being arrested, and from the trauma, embarrassment and humiliation that accompanied exposure both during the arrest and thereafter;

62. Hereto, Plaintiff seeks $15.OO for the damage caused to Plaintiff's jogging pants, which Det. Carr cut the string tie due to such connected and not an independent string tie standard on jogging pants;

63. In addition, Plaintiff further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegally/falsely concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr and the New York City Police Department, under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Plaintiff resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the colors of law, legally as well illegally within the margins of objective authority.

64. In addition, Plaintiff seeks an award to cover costs of this instant matter;

65. Award of any Attorney fees in the event counsel is retained/hired during the course of this matter pursuant to 42 U.S.C. 1988.

**JURY TRIAL DEMAND**

Plaintiff respectfully request a jury trial pursuant to Federal Rules of Civil Procedure 38, this demand is premised on all cause of actions illustrative and evinced herein capable of being determined by a jury trial.

I, Mark Garnes hereby attest the above is true and correct to the best of recollection and knowledge as to the events and dates as they occurred.

Respectfully yours,

Mark Garnes-Plaintiff – Pro Se
P.O. Box 160363
Brooklyn, New York 11216

Brooklyn, New York
Kings County
Dated: July 24th, 2020

Subscribed and sworn to before me this ____24____ day of July 2020

Notary Public

DIANA G. HILBIG
Notary Public - State of New York
NO. 01HI6310596
Qualified in New York County
My Commission Expires Aug 25, 2022

20

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

_____X

Mark Garnes,                                    :

          Plaintiff,                          :          **AFFIRMATION OF SERVICE**
                                                             **Docket Number:**
                                                 :          **PRO SE**

                                                 :

         -against-                          :

City of New York,                               :
New York City Police Department
and Detective Douglas W. Carr,                  :
Shield No. 5126 (77th  Pct.),

                                                 :

         Defendants.
_____X


      I, Mark Garnes, Pro Se, declares under Penalty of Perjury that I have dropped off the

following:


- **AFFIRMATION OF SERVICE**

- **CIVIL RIGHTS COMPLAINT Form (EDNY)**

- **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

- **Plaintiff's Complaint**

- **Plaintiff's Attachments and Exhibits**


1

Plaintiff here, Mark Garnes, attest original signature endorse Plaintiff's Complaint with two (2) copies of each dropped off with date and time stamped at the United States District Court, Eastern District of New York, 225 Cadman Plaza, Brooklyn, New York 11201.

Plaintiff notes here, the following:   **AFFIRMAITON OF SERVICE; APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS (EDNY Form); CIVIL RIGHTS COMPLAINT Form (EDNY) and COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (EDNY Form)** was dropped off on July 23rd, 2020 accordingly to meet the statute of limitation requirements. Here now, each is being included to confirm therewith the AFFIRMATOIN OF SERVICE date and time stamped.

The above mentioned documents were dropped off on July 24th, 2020 with date and time stamp accordingly. Such are Plaintiff's Complaint and Attachments with Exhibits to support the standard Complaint Form of the Honorable Court submitted on July 23rd, 2020.

Respectfully,

Mark Garnes – Pro Se
P.O. Box 160363
Brooklyn, New York
        11216

DATED: July 24th, 2020
Brooklyn, New York

cc: Mark Garnes

Sworn to before me this _24_ day of July 2020.

Notary Public

DIANA G. HILBIG
Notary Public - State of New York
NO. 01HI6310596
Qualified in New York County
My Commission Expires Aug 25, 2022

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

—————————————————————X

Mark Garnes,                                      :

        Plaintiff,                                :

                                 :

                                 :

        -against-                                :

City of New York,                                 :
New York City Police Department
and Detective Douglas W. Carr,        :
Shield No. 5126 (77th  Pct.),

                                 :

          Defendants.

—————————————————————X

**AFFIRMATION OF SERVICE**
**Docket Number:**
**PRO SE**

I, Mark Garnes, Pro Se, declares under Penalty of Perjury that I have dropped off the

following:

- **APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS (EDNY Form)**

- **CIVIL RIGHTS COMPLAINT Form (EDNY)**

- **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

Plaintiff here, Mark Garnes, attest original signatures endorse the above documents

accordingly, with two (2) copies of each dropped off with date and time stamped at the Uinted

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

_____X

Mark Garnes,                                :

             Plaintiff,                  :        **AFFIRMATION OF SERVICE**
                                                     **Docket Number:**
                                            :        **PRO SE**

                                            :

           -against-                 :

City of New York,                           :
New York City Police Department
and Detective Douglas W. Carr,              :
Shield No. 5126 (77th  Pct.),

                                            :

           Defendants.
_____X


      I, Mark Garnes, Pro Se, declares under Penalty of Perjury that I have dropped off the

following:


- **AFFIRMATION OF SERVICE**

- **CIVIL RIGHTS COMPLAINT Form (EDNY)**

- **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

- **Plaintiff's Complaint**

- **Plaintiff's Attachments and Exhibits**


1

Plaintiff here, Mark Garnes, attest original signature endorse Plaintiff's Complaint with two (2) copies of each dropped off with date and time stamped at the United States District Court, Eastern District of New York, 225 Cadman Plaza, Brooklyn, New York 11201.

Plaintiff notes here, the following: **AFFIRMAITON OF SERVICE; APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS (EDNY Form); CIVIL RIGHTS COMPLAINT Form (EDNY) and COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (EDNY Form)** was dropped off on July 23rd, 2020 accordingly to meet the statute of limitation requirements. Here now, each is being included to confirm therewith the AFFIRMATOIN OF SERVICE date and time stamped.

2

The above mentioned documents were dropped off on July 24th, 2020 with date and time stamp accordingly. Such are Plaintiff's Complaint and Attachments with Exhibits to support the standard Complaint Form of the Honorable Court submitted on July 23rd, 2020.

Respectfully,

Mark Garnes – Pro Se
P.O. Box 160363
Brooklyn, New York
          11216

DATED: July 24th, 2020
Brooklyn, New York

cc: Mark Garnes

Sworn to before me this ___24___ day of July 2020.

Notary Public

DIANA G. HILBIG
Notary Public - State of New York
NO. 01HI6310596
Qualified in New York County
My Commission Expires Aug 25, 2022

3

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------------------X

Mark Garnes,                            :

        Plaintiff,                  :

                            :

                            :

        -against-                     :

City of New York,                       :
New York City Police Department         :
and Detective Douglas W. Carr,
Shield No. 5126 (77th  Pct.),           :

           Defendants.             :

----------------------------------------------X

**AFFIRMATION OF SERVICE**
**Docket Number:**
**PRO SE**

I, Mark Garnes, Pro Se, declares under Penalty of Perjury that I have dropped off the

following:

- **APPLICATION TO PROCEED WITHOUT PREPAYING FEES OR COSTS (EDNY Form)**

- **CIVIL RIGHTS COMPLAINT Form (EDNY)**

- **COMPLAINT FOR VIOLATION OF CIVIL RIGHTS**

      Plaintiff here, Mark Garnes, attest original signatures endorse the above documents

accordingly, with two (2) copies of each dropped off with date and time stamped at the Uinted

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

_____X

Mark Garnes,                           :

        Plaintiff,                    :          **COMPLAINT**
                                                  **Docket Number:**
                                       :          **PRO SE**
                                                  **JURY TRIAL DEMANDED**
                                       :

      -against-                      :

City of New York,                      :
New York City Police Department
and Detective Douglas W. Carr,         :
Shield No. 5126 (77th  Pct.),

                                       :

        Defendants.
_____X

Plaintiff here, Mark Garnes, Pro Se, alleges herein the complaint as follows:


I
**PRELIMINARY STATEMENT**


1. This is a civil rights action in which Plaintiff seeks relief for the violation of his rights secured by

   42 U.S.C. 1983, 1988, the Fourth, Fifth and Fourteenth Amendments to the United States

   Constitution, as well Discrimination under the Fifth Amendment of the United States

   Constitution.

1

2. The claims here derived from an incident with subsequent arrest, search and seizure on May 15th, 2018, in which Detective ("Det.") Douglas W. Carr, Shield No. 5126, acting under the color of law, intentionally and willfully subjected Plaintiff to false arrest and false imprisonment fraudulently and discriminately without probable.

3. Plaintiff seeks monetary damages (special, compensatory, and punitive) against Defendants, as well as an award of costs and attorney fees (should counsel be retained in this instant matter) and further relief as the Honorable Court deems just and proper.

   The Honorable Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, the Fourth, Fifth and Fourteenth Amendments. Jurisdiction of the court is invoked pursuant 28 U.S.C. Section § 1343. Plaintiff further invokes supplemental jurisdiction pursuant 28 U.S.C. Section 1367, above any and all state court law claims. **This court has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.**

4. The matter in controversy exceeds $75,000.00 excluding interest and costs.

5. Venue in this instant matter is within the United States District Court for the Eastern District of New York, in which Defendants, City of New York, New York City Police Department and Det. Douglas W. Carr are located within, hereto the pertinent portions of this incident rest to the claims' occurrence within the boundaries of the Eastern District of New York.

**II**

**PARTIES**

6. Plaintiff, Mark Garnes is a legal resident of the United States and at all times here relevant resided in Kings County, Brooklyn, New York, a City and State of New York.

7. Defendant, the City of New York is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City of New York, acting through Defendant New York City Police Department ("NYPD") is responsible for the policy, practice, supervision, implementation and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

8. Defendant, Det. Douglas W. Carr, Shield # 5126 was, at all times herewith this instant matter on May 15th, 2018, as a Detective of the NYPD and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times hereto, Det. Douglas W. Carr was the arresting officer and was under the command of the 77th Precinct of the NYPD. Defendant Detective Douglas W. Carr is being sued in his individual and professional capacity.

3

9. At all times here noted, Defendants were acting under color of State law, to which, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

III

**NOTICE OF CLAIM**

10. Within 90 days of this incident on May 15th, 2018, Plaintiff filed a written **NOTICE OF CLAIM** with the New York City Office of the Comptroller. Over 30 days elapsed since the filing of that notice, with this matter absent of settlement or otherwise disposed of in any manner, procedurally and/or legally.

IV

**50-H Hearing**

11. On April 25th, 2019, a **50-H Hearing** relevant to this matter was conducted by Daniel L. Schneider, Esq., there at 160 Broadway, 14th Fl., New York, New York 10038. **See Attached** However, to date, Plaintiff has not received the transcripts from this **50-H Hearing** as requested thereon this hearing date as well thereafter. Here also, upon commencement of this action no form of adjustments or payments thereof settlement has incurred thereby disbursement and/or otherwise. Thus, as provided under law, this action has been initiated. In addition, a request for the transcripts were submitted as well a second request thereby FOIL Request. **See Attached**

4

V

**FACTUAL ALLEGATIONS**

12. Plaintiff is Black/African-American and a citizen residing in the United States.

13. On May 15th, 2018, Plaintiff incurred a domestic issue with ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan (New York County) between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The subsequent report on this same date was filed by Det. Carr there at the 77th Pct. **Ex. 4-6a** In which, Plaintiff's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Plaintiff's injuries to his face, neck and right bicep. **Ex. 7-13 (Photos of Plaintiff's injuries at scene and of location by Plaintiff's phone) (Photos by Ms. DeJesus (77th Pct., Ex. 14-17)** According to Public Safety DeJesus, Det. Carr obtained these mentioned forms and documents and discarded them himself, personally.

14. However, only the photos Ms. DeJesus had taken with Plaintiff's phone exist. **See Attached Affidavit, Paragraphs 1-13;**

15. Upon Ms. Sheniqua Neal ("Ms. Neal") entering the 77th Pct., Plaintiff notified Ms. Wilson that Ms. Neal was here for Plaintiff to return her property as advised by officers assisting Patrolman

Rosario. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Plaintiff. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Plaintiff and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Plaintiff again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Plaintiff's identification. Upon entering the interview room once more, Det. Carr notified Plaintiff he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

16. Det. Carr placed the handcuffs on Plaintiff and did not read nor notify Plaintiff of his rights relevant to this arrest. Plaintiff was not read his rights during the fingerprinting, photo I.D. nor at any time relevant to this arrest, between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

17. Throughout these occurrences at the 77th Pct., Plaintiff received no medical assistance which was requested in the initial DIR filled out by Plaintiff. Ms. DeJesus also inquired whether or not Plaintiff wanted medical assistance, Plaintiff affirmed he did. **See Attached Affidavit, Paragraph 15 See also: NYPD PATROL GUIDE-Section: Prisoners Procedure No:210-04 PRISONERS REQUIRING MEDICAL/PSYCHIATRIC TREATMENT**

18. On May 16th, 2018, Plaintiff was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an **ORDER OF PROTECTION** to remain clear of Ms. Neal was issued.

6

**Ex. 12-13** Upon release Plaintiff returned to the 77th Pct. to pick up copies of the DIR forms Plaintiff filled out. Upon speaking with Ms. DeJesus, Plaintiff requested copies of the DV Report filed by Patrolman Rosario and Plaintiff's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Plaintiff with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Plaintiff Det. Carr had discarded the DIR documents Plaintiff filled out, however, Det. Carr was coming down to speak with Plaintiff. At this time Det. Carr notified Plaintiff the DIR statements Plaintiff inscribed on the forms were discarded. Det. Carr passed Plaintiff three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Plaintiff's face, neck and right bicep. Nor had Plaintiff signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Plaintiff and Ms. Neal in New York County, not Kings County as purported by Det. Carr. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

19. Plaintiff remained confused relevant to this arrest for being the victim as Det. Carr recognized and verbally indicated to Plaintiff. Reasoning with the mandatory arrest laws in domestic violence incidents, Plaintiff became convinced it was more to it than just the arrest. Det. Carr's insight to Plaintiff's criminal history background became an objective, discriminately. Det. Carr verbally noted to Plaintiff, "You've had 8 incidents and arrests of domestic violence with Ms. Neal." Positing here, Plaintiff was illegally and falsely arrested and searched on the premises of discrimination on the premises of sealed and unsealed arrest records as well personal interests

7

of Det. Carr. In addition, Det. Carr opted to make Plaintiff's birthday unforgettable on this date thereby humiliating Plaintiff with a false arrest and false imprisonment. **See Attached Affidavit, Paragraph 24**

20. On this same date (May 16th, 2018), Plaintiff, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Plaintiff placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Plaintiff spoke with Ms. DeJesus upon arrival again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Plaintiff's house and could Det. Carr give them to her. Plaintiff's objective to avoid contact with Ms. Neal based on the **ORDER OF PROTECTION**. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

21. Hereto on this date, May 16th, Plaintiff went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 1-3**

22. Thereafter leaving the 17th Pct., Plaintiff went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

23. On June 29th, 2018 Plaintiff's scheduled court hearing was conducted with a return date of August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

8

24. In addition, Plaintiff submitted a complaint to the Civilian Complaint Review Board to investigate these matters as outlined above.

25. In/or about March 2019, CCRB noted their investigation was concluded and would be taken up by one of New York City Police Association Boards. To date, Plaintiff has yet to receive any communication and/or contact from any boards, agencies and/or otherwise on this matter from NYPD or otherwise.

VI

**FIRST CAUSE OF ACTION:**

**FALSE ARREST**

28. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and illegally confined Plaintiff without probably cause.

29. On this date, May 15th, 2018, Det. Carr, Shield # 5126, modified and falsified documents for domestic violence without probable cause, in that, no reasonable grounds existed that would warrant arrest of Plaintiff. Hereto, noting, no arrest warrant and/or otherwise existed to justify arrest. To which resulted in an inappropriate and false arrest and illegal confinement.

30. Plaintiff avers as a direct result of this false arrest and illegal confinement, Plaintiff suffered injuries of humiliation, shame, indignity, therewith emotional and physical distress.

31. Plaintiff further notes the damages hereof exceed the jurisdictional amount of all judicial forums below the Honorable Court hereof this instant matter.

**VII**

**SECOND CAUSE OF ACTION**

**FALSE IMPRISONMENT**

32. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff.

33. On this date, May 15th, 2018, Det. Carr, Shield #: 5126 modified and falsified documents for domestic violence without probable cause, in that, no reasonable grounds and/or justification existed that would warrant Plaintiff to be imprisoned and detained against his will. Det. Carr, within the margins of his employment intentionally and personally imprisoned Plaintiff against his will, reasoning this imprisonment and confinement was not privileged nor optional absent probable cause.

34. Plaintiff avers as a direct result of this false arrest therewith illegal confinement, Plaintiff suffered injuries of humiliation, shame, indignity, therewith emotional and physical distress.

35. Plaintiff avers here damages sustained in this matter exceeds the jurisdictional amount thereof the lower judicial forums hereof the Honorable Court.

**VIII**

**THIRD CAUSE OF ACTION**
**CIVIL RIGHTS VIOLATION FOR**
**DENIAL OF MEDICAL ATTENTION**
**WHILE IN CUSTODY**

36. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield #: 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff without probable cause and denied Plaintiff medical attention while in custody.

37. *On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield #: 5126 were acting and exercising their authority under the color of law maliciously and plausibly with intentional indifference. Defendants failed to secure medical attention required for Plaintiff's injuries. Thus, in such a manner that deprived Plaintiff of his constitutional rights which plausible continual harm (infections from the wounds) and scars from the injuries sustained.*

38. *Reasoning here, Plaintiff had been injured and negated medical attention by Defendants, to which has embedded mental anguish therewith medical and other expenses (travel/transportation to and from for medical attention) and otherwise damaged in the amount to be determined by a jury.*

IX

**FOURTH CAUSE OF ACTION**

**VIOLATIONS OF ARTICLE I, SECTION 6
OF THE NEW YORK CONSTITUTION
AND THE FIFTH AND FOURTEETH
AMENDMENTS OF THE UNITED STATES
CONSTITUTION UPON PLAINTIFF**

11

39. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield #: 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and detained Plaintiff illegally In violation of the Fifth Amendment of the United States Constitution and Article I, Section 6 of the New York Constitution therewith the Fifth and Fourteenth Amendments of the United States Constitution states that, "No person shall be deprived of life, liberty or property without due process of law."

40. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield # 5126 were acting and exercising their authority under the color of law upon the arrest of Plaintiff fueled by the criminal history and sealed records of arrests for previous domestic violence complaints and/or reports hereof parties mentioned involved on this date of May 15th, 2018, as to the latter. Such parties being Plaintiff and Sheniqua Neal, whom Det. Carr averred to Plaintiff, "You've been arrested over eight (8) times for domestic violence with Ms. Neal."

41. In accord with New York City Police Department's **Detectives Guide, Section: Personnel, Procedure No.: 512-05, SEALED RECORDS PROCEDURE** with policy and practice of maintaining, using, and disclosing sealed arrest records, herewith violation of Criminal Procedure Law (CPL) Sections 160.50 and 160.55 (the sealing statutes) and due process rights under the New York State Constitution, posits Defendants here, with Det. Carr infringed upon Plaintiff's constitutional rights, state and federal.

12

42. Reasoning, Defendants nor Det. Carr's actions were permissible under the color of law nor exercised constitutionally, to which, Det. Carr and Defendants failed compliance of the mandatory requirements with CPL § 160.50(d) et. al therewith the Constitutions of New York State and the United States. Thus, in violation of Plaintiff's right to due process, holding that this unveiling of Plaintiff's criminal history and sealed records here mentioned motivated Defendants and Det. Carr to violate Plaintiff's Fourth, Fifth and Fourteenth Amendments thereby falsely arresting and falsely imprisoning Plaintiff. In that, Plaintiff has a protected interest in the sealing of these records which, in this instant matter deprived Plaintiff of due process.

**\*42 U.S.C. 1983, in addition to other state and federal laws applicable in this instant matter.**

43. On May 15th, 2018, Defendants, therewith Det. Carr acting under the color of law, without probable cause, just cause, provocation or any reasons to believe that Plaintiff was engaged in any criminal activity, deprived Plaintiff of constitutional rights to be free from false arrest, false imprisonment with such being which probable cause was nullified in each instant. Hereto, Plaintiff was denied medical attention, due process of law. Collectively, thereunder the Fourth, Fifth and Fourteenth Amendments of the United States Constitution, therewith Article I, Section 6 of the New York Constitution, Plaintiff's rights were ignored and violated by Defendants.

**X**

## FOURTH CAUSE OF ACTION

### CIVIL RIGHTS VIOLATION
### OF PLAINTIFF

44. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department falsely arrested and detained Plaintiff illegally.

45. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield # 5126 were acting and exercising their authority under the color of law upon falsely arresting and falsely imprisoning, denial of medical attention and advantageous and unwarranted use of Plaintiff's criminal history and sealed criminal records in violation of 42 U.S.C. 1983, in addition to other state and federal laws applicable in this instant matter.

**XI**

## FIFTH CAUSE OF ACTION

### INTENTIONAL AND NEGLIGENT INFLICTION
### OF EMOTIONAL DISTRESS UPON PLAINTFF

46. This instant matter, as noted above in Paragraphs 1 thru 26, Det. Carr, Shield # 5126, employed within the perimeters of his duties as a New York City Detective for the City of New York and the New York City Police Department arrested and confined Plaintiff.

47. On this date, May 15th, 2018, the Defendants, City of New York, New York City Police Department and Det. Carr, Shield #: 5126 exercised intentional and reckless disregard to the

14

consequences of their actions and caused Plaintiff severe emotional distress throughout their actions with this incident/ordeal of false arrest and false detainment with denial of medical attention, failure to comply with the rules, regulations, procedures, policies, laws as well violations of Plaintiff's constitutional rights pertinently appended to this instant matter.

48. The actions exercised and emitted upon Plaintiff by Defendants was beyond any form of decency, consideration, exceedingly outrageous, unbelievably shocking which resulted in Plaintiff's emotional and physical distress. Giving the facts, Plaintiff's arrest being on his day and date of birth with falsehoods and allegations therewith the modified and falsified DV Report all devastated Plaintiff to unbelievable horizons.

49. Plaintiff avers here damages sustained in this matter exceeds the jurisdictional amount thereof the lower judicial courts hereof the Honorable Court.

50. Plaintiff further states, as an afterthought, Det. Carr's conduct illustrative above, seemingly has a pattern of being unethical with reprimand. In which, the following case mirrors simulative actions in this instant matter.

**a.   Case   2011-3643**

**Disposition Date: June 5, 2012**

An internal NYPD disciplinary case opened on 5/20/2011 alleged that this officer engaged in the following conduct: 1) Wrongfully Classified A Complaint Report Incorrectly - Guilty. The officer Vacation Days.

**See Also:**                    NYPD  PATROL GUIDE (Page 1 of 1)

Section: General Regulations Procedure No: 203-08

**MAKING FALSE STATEMENTS**

XII

### SIXTH CAUSE OF ACTION:
### MUNICIPAL AND SUPERVISORY LIABILITY

51. Defendants, the City of New York therewith the New York City Police Department are liable for

the damages suffered by Plaintiff as a result of the conduct of their employees, agents and

servants, subsequent to notification of their employee's violations Plaintiff's constitutional

rights, Defendants here, the City of New York and NYPD failed to remedy the errors of Det.

Douglas W. Carr who has a prior incident parallel to Plaintiff's cause of actions outlined herein.


52. Seemingly, procedures and policies relevant to this matter are nullified and ignored with the

customs of this unethical behavior clearly acceptable. It is here where the Defendants, City of

New York and NYPD have exercised gross neglect in managing the professionalism, actions, and

conduct of subordinates and precisely in this manner, Defendant Det. Douglas W. Carr. Plaintiff

notes here, Defendants, City of New York and NYPD are cognizant of Det. Carr's prior offense

mirroring this instant matter and has exhibited deliberate indifference to the false arrest, false

imprisonment, denial of medical attention, violation of due process, discriminatory use of

Plaintiff's criminal history and sealed records, therein violation of Plaintiff's constitutional rights

apprised herein.


53. Plaintiff states here, the Defendants, City of New York and NYPD are liable for the damages

incurred upon Plaintiff by its subordinate employee, agent and servant herein this instant

matter. Defendant, Det. Douglas W. Carr's modification and falsification of government documents to justify an arrest and detainment without probable cause, therewith denial of medical attention, exceedingly violated Plaintiff's constitutional rights, state and federal. In that, the Defendants here named in their supervisory positions and authority failed to remedy the matter officially and/or otherwise. Thus, deliberately evincing indifference to the totality of the matter here before the Honorable Court.

## XIII
## DAMAGES

As a direct result of Defendants actions, Plaintiff suffered the following injuries and damages:

54. Violation of Constitutional rights afforded therewith the Fourth, and Fourteenth Amendments to be free from false and illegal search and seizure of one's person without and/or probable cause. and denial of medical attention;

55. Violation of Constitutional right afforded therewith the Fifth Amendment due process of law;

56. Physical pain, harm and suffering;

57. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience and anxiety;

58. Loss of Liberty;

17

**XIV**

**RELIEF REQUESTED**

59. Plaintiff seeks $5,000,000 in damages due to Det. Carr's falsifying, modifying city and state official documents to justify the false arrest and illegal detainment of Plaintiff thereby an illegal search and seizure of Plaintiff's person and property on May 15th, 2018, in violation of Plaintiff's constitutional rights. This amount sought/requested therein the Formal Claim Information submitted within 90 days thereof the statute of limitations prescribed;

60. Award Plaintiff compensatory damages against Defendants jointly and severally. To which, Plaintiff seeks, as denoted there at the 50-H Hearing on April 25th, 2019, $1,000,000.00 in damages. Reasoning Det. Carr's actions seemingly are repetitive and absent official reprimand from Defendants, City of New York and NYPD to deter such unethical conduct. Defendant Det. Carr's modifying and falsifying documents to arrest Plaintiff negated probable cause thereby falsifying the arrest complaint/report. Positing such warrants significant damages to deter Det. Carr's actions forthcoming upon others arrested and detained under his authority unethically and illegally;

61. Plaintiff avers $500,000 in damages premised on the combined injuries inclusive of nearly 24 hours of lost liberty, handcuffing-related wrist pain, substantial emotional harms as a result of being handcuffed and imprisoned on Plaintiff's birthday. Extreme distress while being arrested, and from the trauma, embarrassment and humiliation that accompanied exposure both during the arrest and thereafter;

18

62. Hereto, Plaintiff seeks $15.OO for the damage caused to Plaintiff's jogging pants, which Det. Carr cut the string tie due to such connected and not an independent string tie standard on jogging pants;

63. In addition, Plaintiff further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegally/falsely concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr and the New York City Police Department, under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Plaintiff resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the colors of law, legally as well illegally within the margins of objective authority.

64. In addition, Plaintiff seeks an award to cover costs of this instant matter;

65. Award of any Attorney fees in the event counsel is retained/hired during the course of this matter pursuant to 42 U.S.C. 1988.

**JURY TRIAL DEMAND**

Plaintiff respectfully request a jury trial pursuant to Federal Rules of Civil Procedure 38, this

demand is premised on all cause of actions illustrative and evinced herein capable of being

determined by a jury trial.

I, Mark Garnes hereby attest the above is true and correct to the best of recollection and

knowledge as to the events and dates as they occurred.

Respectfully yours,

Mark Garnes-Plaintiff – Pro Se
P.O. Box 160363
Brooklyn, New York 11216

Brooklyn, New York
Kings County
Dated: July 24th, 2020

Subscribed and sworn to before me this ___24___ day of July 2020

Notary Public

20

DIANA G. HILBIG
Notary Public - State of New York
NO. 01HI6310596
Qualified in New York County
My Commission Expires Aug 25, 2022

# NOTICE OF CLAIM

CITY: Brooklyn          STATE: New York          ZIP: 11216

SOC. SEC. # or TAX I.D. #: _____

CLAIM INFORMATION

CITY AGENCY INVOLVED: New York City Police Department (77th Precinct)

NATURE OF CLAIM: (ATTACH ADDITIONAL SHEET(S) OF PAPER, IF NECESSARY)

On 5/15/2018 I MARK GARNES was arrested, searched & my rights were not read to me by Det. Douglas Carr (77th Pct). This arrest based on DV Report by NY Highway Patrol officer Rosario which was modified and my DV statement destroyed by Det. Carr. Det. Carr arrested me on the premises of my criminal history discriminately

PLEASE SEE ATTACHED OUTLINE OF EVENTS

TOTAL AMOUNT CLAIMED: $ 5 Million

IF MORE THAN ONE ITEM IS INCLUDED IN THE TOTAL AMOUNT CLAIMED, SUPPLY BREAKDOWN OF AMOUNTS AND SPECIFY ITEMS: (ATTACH ADDITIONAL SHEET(S), IF NEEDED)

| ITEM | AMOUNT |
|------|--------|
| 1. Destroyed Sweatpants $45.00 | $_____ |
| 2. _____ | $_____ |
| 3. _____ | $_____ |
| 4. _____ | $_____ |
| 5. _____ | $_____ |

PLEASE ATTACH COPIES OF SUPPORTING DOCUMENTATION, PREVIOUS CORRESPONDENCE, INVOICES, ETC.

CLAIMANT'S SIGNATURE: Mark Garnes

SS: STATE OF N.Y.
    CITY OF N.Y.   SUBSCRIBED AND SWORN TO BEFORE ME THIS ___ DAY OF

    _____, 20___

    _____
    NOTARY

TO: OFFICE OF THE COMPTROLLER
    DIVISION OF LAW - RM.1225 South
    1 CENTRE STREET
    NEW YORK, N.Y. 10007
    TELEPHONE # (212) 669-4736

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Mark Garnes
P.O. Box 160363
Brooklyn, N.Y. 11216

November 13th, 2018

Office of the Comptroller
Division of Law – Rm. 1225 South
1 Centre Street
New York, New York 10007

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Douglas Carr of the 77th Precinct on the following grounds:

    a) Destruction of Victim's Domestic Violence Statement (DIR-Claimant here);
    b) Modified/Fraudulent Domestic Violence Report;
    c) Forged Signature of Victim-Claimant;
    d) Illegal/False Arrest and illegal/False Imprisonment;
    e) Illegally searched;
    f) Failure to Read/Advise/Notify Victim-Claimant of His Miranda Rights when Arrested;
    g) Denial/Failure to Provide Medical Assistance to Victim-Claimant;
    h) Destruction of personal property (Strap of jogging pants cut off due to not able to pull out);
    i) Discrimination (Criminal History Discrimination).

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
   **Arrest Report # K18629833K**
   **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
   **DIR Complaint # 2951 (77th Pct.) Det. Carr**

1. On May 15th, 2018, Claimant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The subsequent report on this same date was filed by Det. Carr there at the 77[th] Pct. **Ex. 4-6a** In which, Claimant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Claimant's injuries to his face, neck and right bicep. **7-13 (Photos of Claimant's injuries at scene and of location by Claimant's phone) (Photos by Ms. DeJesus (77[th] Pct., Ex. 14-17)**

2. However, only the photos Ms. DeJesus had taken with Claimant's phone exist. **See Attached Affidavit, Paragraphs 1-13;**

3. Upon Ms. Neal entering the 77th Pct., Claimant notified Ms. Wilson that Ms. Neal was here for me to return her property to her. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Claimant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Claimant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Claimant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Claimant's identification. Upon entering the interview room once more, Det. Carr notified Claimant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

4. Det. Carr placed the handcuffs on Claimant and did not read nor notify Claimant of his rights relevant to this arrest. Claimant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

5. Throughout these occurrences at the 77th Pct., Claimant received no medical assistance which was requested in the initial DIR filled out by Claimant. Ms. DeJesus also inquired whether or not Claimant wanted medical assistance, Claimant affirmed he did. **See Attached Affidavit, Paragraph 15**

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

6. On May 16th, 2018, Claimant was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon release Claimant returned to the 77th Pct. to pick up copies of the DIR forms Claimant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Claimant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Claimant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Claimant Det. Carr had discarded the DIR documents Claimant filled out, however, Det. Carr was coming down to speak with Claimant. At this time Det. Carr notified Claimant the DIR statements Claimant inscribed on the forms were discarded. Det. Carr passed Claimant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Claimant's face, neck and right bicep. Nor had Claimant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Claimant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

7. Claimant remained confused as to how he had arrested for being the victim as Det. Carr recognized and verbally indicated to Claimant. Reasoning with the mandatory arrest laws in domestic violence incidents, Claimant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Claimant's criminal history background became an objective, discriminately. Positing here Claimant was illegally and falsely arrested and searched on the premises of discrimination and personal interests of Det. Carr, in addition, to make Claimant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

8. On this same date (May 16th, 2018), Claimant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Claimant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Claimant spoke with Ms. DeJesus upon arriving again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Claimant's house and could Det. Carr give them to her. Claimant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

3

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
**Arrest Report # K18629833K**
**DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
**DIR Complaint # 2951 (77th Pct.) Det. Carr**

9.  Hereto on this date, May 16th, Claimant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 1-3**

10. Thereafter leaving the 17th Pct., Claimant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

11. On June 29th, 2018 Claimant's scheduled court hearing was conducted with a return date of August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

Claimant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Claimant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Claimant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

I, Mark Garnes hereby attest the above is true and correct to the best of recollection and knowledge as to the events and dates as they occurred.

Respectfully yours,

Mark Garnes-Claimant

4

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
**Arrest Report # K18629833K**
**DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
**DIR Complaint # 2951 (77th Pct.) Det. Carr**

<u>**CERTIFICATE OF SERVICE**</u>

    **I hereby certify** that on this November 13th, 2018 a copy of the forgoing Notice of Claim with Outline and Exhibits/Personal Injury Claim Form with Outline and Exhibits were mailed, certified mail, return receipt requested, to: **Corporate Counsel, 100 Church Street, New York, New York 10007**

Mark Garnes -Complainant

Sworn to before me this ___13___ day of November 2018.

Notary Public

    GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

5

# ATTACHMENTS



**THE CITY OF NEW YORK OFFICE OF THE COMPTROLLER**
1 CENTRE STREET, NEW YORK, N.Y. 10007-2341

Scott M. Stringer
**COMPTROLLER**

015 - 188

Date: 12/14/2018
Claim no: 2018PI032680
Claimant: MARK GARNES
Date of Occur: 08/17/2018

MARK GARNES
POB 160363
BROOKLYN, NY 11216

The above claim is being reviewed. In order to properly evaluate this claim, please complete the items which are marked and return the form.

( X ) Claimant's social security # ...........................................................................

( X ) Claimant's date of birth ..... May 15th, 1963 ...........................................

( X ) Copy of final disposition ..... See Attached ...........................................

 ( X ) Precinct of occurrence ..... 77th Precinct ...........................................

( X ) Name and shield # of arresting officer ..... Dct. Douglas W. Carr Sheild# 512b

( X ) Copy of arrest report, rap sheet and, if filed, CCRB report - See Attached

( X ) Related medical records, particularly emergency room & ambulance records. See Attached

( X ) Medicaid and/or Medicare lien? ..... N/A ...........................................

( X ) Medicaid/CIN # ......... N/A ...........................................

(X) Any other information and or documents pertinent to your claim - See Attached

If you have any questions, feel free to contact ANASTASIA PEREZ at (212) 669-2251.

Sincerely yours:

ANASTASIA PEREZ
EXAMINER - PERSONAL INJURY DIVISION
Bureau of Law & Adjustment - Room 1220

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

**CRIMINAL COURT OF THE CITY OF NEW YORK**

**COUNTY OF KINGS: PART DVI**

PEOPLE OF THE STATE OF NEW YORK,

      -against-

**MARK GARNES,**

      Affiant.

**AFFIDAVIT**

**Case # 2018KN023543**
**Arrest Report #18629833K**
**DV Report # 2018-017-298**
**ICAD #D18051516234**
**DIR Complaint # 2951**

**Part: DVI**

**STATE OF NEW YORK**
**COUNTY OF KINGS**
**ss.:**

Mark Garnes, being duly sworn, hereby deposes and says:

1. On May 15th, 2018 at approximately 1:15 p.m. affiant picked up his ex-girlfriend, Sheniqua Neal from her school, Medgar Evers College at Bedford Ave. and Carroll Street. Upon entering the vehicle, Sheniqua Neal took the driver's seat. This was to improve upon her driving skills.

2. This date and day being Affiant's birthday was suppose to include eating at Jacob's Restaurant or Amy Ruth's in Harlem. In which Ms. Neal was suppose to be driving there. En route at Atlantic Ave. and Boreum Pl., Ms. Neal failed to take the far right lane from the left lane accordingly and hesitated, nearly causing the vehicle to our right to clip the rear of Affiant's vehicle. Affiant explained to Ms. Neal she has to move quickly when the lane is open and not hesitate.

3. While making the right turn onto Boerum Pl., Ms. Neal failed to yield to a pedestrian crossing, to which the pedestrian was inches from the left corner bumper of the vehicle. At this time Affiant demanded Ms. Neal pull over and stop the vehicle, she did. Affiant

1

exited the vehicle and took the driver's seat. At this time Affiant proceded to Harlem thereon Boreum Pl. and Adams Street to the Brooklyn Bridge.

4.  En route to the FDR Drive Ms. Neal debated with Affiant as to the two occurrences that had taken place, averring she was not at fault nor was wrong in her decisions as a driver. Affiant asserted each incident could result in accidents and lawsuits, Ms. Neal refused to accept these facts and argued on the matters.

5.  At the Houston Street exit of the FDR Drive, Affiant opted to return to Brooklyn and drop Ms. Neal off at her home. Upon pulling up and stopping to allow Ms. Neal to exit the vehicle, she refused, stating, "My things and keys are at your house, I need to get them." Affiant replied by noting, "I will go get them and bring them back to you." This matter went back and forth for several moments with Ms. Neal refusing to exit and wait for Affiant's return.

6.  Affiant opted to pick up his granddaughter from school as a result of things not going well with Ms. Neal, thus, celebrating his birthday with his granddaughter at Amy Ruth's. Affiant made a right turn on 3rd Ave. and Atlantic Ave., then a right turn at Pacific Street off 3rd Ave. Ms. Neal inquired as to where Affiant was going, Affiant stated, "I am going to get Amaiya, I'm not wasting my birthday away like this with you." At this time Ms. Neal began to get angry and defiant as to why things were changing, it wasn't her fault. This discussion led into her becoming more hyper and resulted in Ms. Neal opening the passenger side car door twice as Affiant drove along Pacific Street, westbound. Each time Affiant stopped the car and asked Ms. Neal not to do it because it would cause damage to the door as well possibly injure her. Ms. Neal refused to heed this advice and at 335 Pacific Street, Ms. Neal opened the car door again. Affiant stopped the car, asked her to exit, she refused. Affiant stepped out of the car with the intention of having Ms. Neal exit, she refused. Affiant waited at this location in hopes someone would call the police, due to Affiant's phone in the middle console and Ms. Neal not allowing Affiant to have it, as she made attempts to cross over into the driver's seat.

7.  After several minutes and no officers arrival, Affiant pulled off and went to the 84th Precinct in hopes of getting assistance from officers to have Ms. Neal exit the vehicle. No officers were in and out of the precinct. Affiant drove off, en route to the Bronx to pick up his granddaughter.

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

8. During the drive across the Brooklyn Bridge and northbound on the FDR Drive, Ms. Neal continuously stated she wanted her things and keys, back and forth Affiant went with her on this matter. Ms. Neal was opportune to have her things and keys upon exiting the vehicle and allowing Affiant to retrieve them and bring them back to her. She refused.

9. Upon passing the 34th Street exit on the NB side of FDR Drive, Ms. Neal struck out at Affiant with her open hands to Affiant's face. Affiant immediately stopped the car to prevent an accident. Affiant asked Ms. Neal to not do that, it would cause an accident that could possibly kill us both. Ms. Neal stated, "It don't matter, so what." After several seconds Affiant began to drive off, some 10 to 50 feet, Ms. Neal struck out again to Affiant's face. Affiant stopped the car, stretched out his right hand to stop Ms. Neal's attack, opened the driver's side door and jumped out of the vehicle. Upon exiting, Affiant noted to Ms. Neal again, "You gonna f---ing kill us with this dumb sh-t. Are you crazy?" Ms. Neal screamed, "i don't care!!" over and over. At this time Affiant stood on the median dividing FDR Drive southbound and northbound, awaiting police officers to pass by. Affiant's phone once again in the middle console.

10. After several minutes, officers on the southbound side stopped and asked did Affiant need help? Affiant explained his ex-girlfriend attacked him while driving and was afraid to drive again due to her actions. The officer stated he would exit and come around to assist in the matter. Some moments later, DEP Police officers pulled up, southbound and inquired of assistance, Affiant noted officers were en route. However, after some twenty minutes or so, NYPD School Safety Division van pulled up next to Affiant's car and inquired of the matter. Ms. Neal jumped out and stated Affiant would not let her leave the car. Officer Diez and his partner exited their vehicle and commenced assistance.

11. At this time Officer Diez separated Affiant and Ms. Neal, speaking with Affiant first who explained Ms. Neal visited over the weekend, because she wanted to practice driving. Affiant helped Ms. Neal get her driver's license August 25th, 2017 and she had not been driving frequently thereafter. This was based on Affiant and Ms. Neal not being intimate since that time. Affiant further explained he asked Ms. Neal to exit his vehicle at Ms. Neal's home (510 Atlantic Ave., Brooklyn, New York), so Affiant could retrieve her things from his home and bring them back to her, she refused. Affiant noted Ms. Neal's opening the passenger side car door twice while Affiant driving on Pacific Street in Brooklyn. Therewith driving to the 84th Precinct to get assistance from officers to have

3

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

Ms. Neal exit the vehicle and then here onto the FDR Drive headed to the Bronx to pick up Affiant's granddaughter. Officer Diez then spoke with Ms. Neal. Several moments upon speaking with Ms. Neal, other officers arrived to assist in this matter. Highway Patrol Officer Emanuel Rosario seemingly held jurisdiction and commanded the matter while Officer Diez and his partner as well another officer stood by.

12. Patrolman Rosario discussed the matter with Officer Diez initially, then spoke with Ms. Neal and Affiant lastly. Patrolman Rosario advised after taking Affiant and Ms. Neal's identification and phone numbers the DV Report could be picked up at the local precincts where each lived. Patrolman Rosario advised Affiant to retrieve Ms. Neal's things and keys and return them to her, adding he would drive Ms. Neal to the nearest subway station to return to Brooklyn. Affiant notes here that the officers (Diez and Patrolman Rosario) believed the vehicle belonged to Ms. Neal, after retrieving Affiant's registration and insurance card from the inner pocket of the driver's door, the matter of ownership was confirmed. This belief derived from Ms. Neal sitting in the driver's seat upon the officers and patrolman's arrival. As Affiant stated to the officers and patrolman, Ms. Neal jumped in the driver's seat when Affiant attempted to retrieve his phone, refusing to let him have it. Affiant was only able to possess the phone when one of several officers stopped and Affiant advised he could not contact officers due to Ms. Neal refusing to let Affiant have the phone from the console.

13. Patrolman Rosario returned Affiant's identification with a yellow slip of paper with the DV Report and ICAD numbers inscribed. Officer Diez and his partner advised Affiant to file a domestic violence report once obtaining the DV Report of Patrolman Rosario. Officer Diez stating, "it's clear who caused this to happen." The officers' advised that Affiant have Ms. Neal pick her things up at the precinct to avoid Affiant getting in a confrontation with her again, moreso to protect Affiant in case Ms. Neal gets crazy again. However, no photographs of Affiant's face and neck with injuries thereon being clear were taken by Officer Diez and his partner nor by Patrolman Rosario. No medical assistance was obliged at the scene either. It is Affiant's understanding upon this writing that Patrolman Rosario should have taken these photos to accompany the DV Report and sought medical assistance for Affiant.

14. Affiant returned to his home, retrieved Ms. Neal's things (backpack with laptop and papers, clothing she had for the weekend and week, etc.) Affiant believed Ms. Neal's keys were in her backpack, they were not. Affiant learned this subsequent to his arrest and returning home on May 16th, 2018 after release from the Kings County Criminal

4

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298
ICAD #D18051516234 - DIR Complaint # 2951**

Court at approximately 11:00 a.m. Affiant placed the keys in an envelope, took them to the 77th Precinct inscribing Det. Carr's name on it with Sheniqua Neal's name, the contents (keys) with Ms. Neal's phone number. Ms. DeJesus was at the Public Service Desk and called up to see whether or not Det. Carr was in, he was not, Affiant left the envelope with keys with Ms. DeJesus and exited the 77th Precinct.

-------------------------------------------------

15. On May 15th, 2018 at approximately 3:30 p.m. Affiant went to the 77th Precinct to file a domestic violence report against Sheniqua Neal, Affiant's ex-girlfriend. This filing on the advice of Officer Diez and his partner as well Patrolman Rosario. Affiant inquired about the DV Report submitted by Patrolman Rosario to Ms. DeJesus there at the 77th Precinct, Affiant provided Ms. DeJesus with the yellow slip of paper with information inscribed by Patrolman Rosario. Ms. DeJesus scanned the computer and located the DV Report, however, Ms. DeJesus stated, "I cannot provide you with this report. You have to go to the 17th Precinct to get it." Affiant replied, "The highway patrol officer who wrote the report told me I could pick it up here and file my domestic violence report with it." Ms. DeJesus noted she would speak with a supervisor as there were no DV officers in the precinct at that time. Several moments later, Ms. DeJesus shifted the duties of Affiant filing the domestic violence report to Ms. Wilson who gave Affiant the DIR form to fill out. Affiant commenced with inscribing the events that occurred as noted above (Paragraphs 1-14). Ms. DeJesus asked Affiant whether or not Affiant wanted medical assistance, seeing the injuries to Affiant's face. Affiant affirmed yes he wanted medical assistance. Ms. DeJesus noted she would contact the ambulance once the paperwork completed. During this time, Officer LeRoux photographed Affiant's face and next and right bicep.

16. Thereafter, Ms. Wilson filled out several forms inclusive to Affiant's DIR statements, as to Ms. Neal's profile: height, weight, hair color, eye color, hair length, etc. Thereafter, Ms. Wilson requested Affiant's vehicle registration, which was in Affiant's car, upon getting up to go get these documents, Ms. Neal walked into the 77th Precinct. Affiant notified Ms. Wilson that was Ms. Neal. Upon returning inside the precinct, Affiant noticed Det. Carr speaking with Ms. Neal. Affiant provided the vehicle documents to Ms. Wilson who continued to complete the documents adjacent to the DIR.

17. Det. Carr entered the area and told Ms. Wilson not to complete the paperwork on the DIR/DV. Det. Carr asked Affiant to step out of the room and we entered the entry way to

5

the precinct to speak. Det. Carr asked Affiant what occurred, Affiant stated to Det. Carr he had written down the statement on the DIR form and could read it. Det. Carr said, "No, just tell me what happened." Affiant outlined the incident for Det. Carr, who advised that Ms. Neal would be arrested on this matter as well as Affiant and asked did Affiant want that to happen?" Affiant inquired as to how he was going to be arrested for being a victim? Det. Carr stated, "Because she said you hit her also." Affiant explained to Det. Carr that Affiant stretched his right hand out to prevent Ms. Neal from attacking him any more while driving and to exit the car. That's hitting her to prevent us from an accident or worst?" Det. Carr advised Affiant to go back into the area with Ms. Wilson and Ms. DeJesus as he spoke with Ms. Neal further.

18. Several moments later, Det. Carr scooped up all the paperwork from Ms. Wilson, who asked Det. Carr what was to be done? Det. Carr responded, "I will handle it." At this time Det. Carr advised Affiant and Ms. Neal to come with him. Det. Carr escorted Affiant and Ms. Neal to the second floor of the precinct. Affiant was placed inside of an interview room to the left of the stairway and Ms. Neal to a location unknown to Affiant.

19. Det. Carr noted to Affiant, "Sit here for a minute so we can get this straightened out. I'll be right back." Det. Carr exited the room and returned some moments later. Sitting across from Affiant, Det. Carr explained again that Affiant could be arrested on this matter because Ms. Neal is insisting Affiant hit her. Again, Affiant outlined the day and up until the point of the incident and occurrences before and thereafter with Patrolman Rosario's advice that led Affiant to the 77th Precinct. Det. Carr stressed Affiant's arrest on the premise of the DIR being filed. Affiant inquired how can he be arrested when he is the victim, also, the incident occurred in Manhattan, why is it Patrolman Rosario or Officer Diez did not arrest Affiant for being the victim. Det. Carr was absent an answer on this, only to say Affiant came to the 77th Precinct to file the complaint. Brooklyn does not operate like Manhattan Det. Carr added. Det. Carr once again exited the interview room and noted he would speak to his supervisor. Upon returning minutes later Affiant provided his identification to Det. Carr who noted he would be right back. Moments later, Det. Carr advised Affiant he was being arrested. Det. Carr stated, "You also have eight other incidents Ms. Neal filed against you on domestic violence, so you are being arrested." After securing all Affiant's property with advice to notify someone to pick it up, Affiant was handcuffed. During the placement of the cuffs upon Affiant, as well during the fingerprinting, Affiant was not read his rights nor given notice to his rights

6

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

regarding this arrest. At no time during Affiant's presence therein the 77th Precinct was Affiant notified of his rights.

20. During this arrest process, Det. Carr noted Affiant would most likely be "DP'd" due to Ms. Neal being the primary aggressor. Again, upon this statement, Affiant inquired then, "Why am I being arrested should that be clearly recognized?" Det. Carr replied because it's a domestic violence incident and both parties have to be arrested." Affiant was confused to this and again wanted to know "Why didn't Highway Patrol arrest us, then?" Det. Carr had no logical answer only that highway patrol did not do his job right.

21. During the attempts to fingerprint Ms. Neal, officers struggled with her, being in a hysterical state due to the arrest, Ms. Neal lunged at the holding cell where Affiant was placed. Ms. Neal hollered and yelled at Affiant, Affiant remained quiet and still.

22. Affiant and Ms. Neal were escorted by Officers Burke and Seliman to the Kings County Criminal Court lock up for further processing, clearly evident were the injuries to Affiant's face caused by Ms. Neal's attack.  During this transportation, Affiant was placed in the rear of the van, Ms. Neal in the front row behind Officer Burke, who drove. Officer Seliman sat in the middle row separating Affiant and Ms. Neal, who had calmed down but continued to make harsh remarks directed at Affiant. Affiant remained quiet.

23. Upon being processed at the Kings County Criminal Courthouse, Affiant notified the EMT/FDNY staff on-hand at the courthouse processing of his injuries. No medical assistance was provided at no time throughout this matter.

24. Affiant firmly believes Det. Carr filtered Affiant's name in the criminal database and/or discovered thereon the DV Report of Patrolman Rosario and opted to arrest Affiant on the premises of Affiant's background, discriminately.

25. On May 16th, 2018, Affiant was interviewed by Steven C. Kuza, Staff Attorney, Criminal Defense Practice, 111 Livingston Street, Brooklyn, New York 11201, therein the holding cell at Kings County Criminal Court at about 8:30 a.m. Affiant outlined the incidents leading up to the domestic violence occurring on FDR Drive Northbound, Attorney Kuza inscribed these events therein his file. Attorney Kuza inquired whether or not Ms. Neal was arrested, Affiant affirmed she had been, to which Mr. Kuza asserted, "That's a good thing."

7

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

26. On this same date, at approximately 11:00 a.m., Affiant went before the Honorable Court and was released, an order of protection to stay away from Sheniqua Neal appended and a court date of June 29th, 2018 imposed.

27. Upon release, Affiant went directly to the 77th Pct. and requested a copy of the DIR form inscribed by Affiant on the 15th of May 2018, Ms. DeJesus advised Det. Carr had all the paperwork. Ms. DeJesus phoned Det. Carr who advised the paperwork had been discarded, upon hanging up the phone, Affiant asked Ms. DeJesus, "Why was the papers discarded?" Ms. DeJesus stated, "Det. Carr is coming down to speak with you." Seconds later Det. Carr arrived, Affiant requested copies of the DIR Forms filled out by Affiant and Ms. Wilson on May 15th. Det. Carr reiterated the papers were discarded. Affiant asked, "How is that, you arrest me based on my DIR, so how are they now discarded?" At this time, Det. Carr hands Affiant three (3) pink carbon copies of what Affiant learned are Det. Carr's "Domestic Incident Report," which modified Affiant's statements on the DIR as well times and location of the incident to Atlantic Ave. and Flatbush Ave.  Also, Patrolman Rosario's report as to the domestic violence incident. **(See Attached)**

28. Thereafter, Affiant arrived home and discovered Ms. Neal's keys on the table, Affiant returned to the 77th Precinct with them, providing the opportunity for Ms. Neal to receive them without Affiant's presence. Affiant provided the keys in an envelope with Det. Carr's name inscribed therewith Ms. Neal's name and phone number with contents noted. Det. Carr was not in the precinct at this time, Ms. Dejesus had called up and informed Affiant of such, to which, Affiant gave the envelope with contents to Ms. DeJesus. **See Paragraph 14**

29. On this date, May 16th, 2018, Affiant went to the 17th Precinct, as referred by Ms. DeJesus, to receive a copy of Patrolman Rosario's DIR. Upon which was provided by Officer Komiko Candelario-Toth at the 17th Precinct.

30. Thereafter on this same date, Affiant went to his regular physician to get examined for the injuries to his face, neck and right bicep. Unfortunately, an exam could not be taken at that time. Affiant scheduled an appointment to the matter nevertheless. **(See Attached)**

31. Affiant then went to the emergency room at New York Presbyterian, 170 Williams Street, New York City. Which advised Affiant's physician could examine the injuries to avoid the $110 payment. Affiant noted to the nurse he had made an appointment and advised to come to the emergency room. The nurse suggested Affiant go to an urgent care facility to get immediate assistance. At this time Affiant contacted his union and

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

was provided a list of urgent care facilities. The Advantage Care facility at 195 Montague Street, Brooklyn, New York was by appointment only due to Affiant being a new client. The attendant there suggested an urgent care a block away on Court Street, ProHealth, which accepted walk-ins.

32. Affiant went to ProHealth and received the walk-in examination with a $40.00 co-pay. Dr. Lawrence examined Affiant and documented the results. **(See Attached)**

**AFFIANT** attest and avers the above to be true and to the best of his recollection and knowledge to the events occurring from May 15th to May 23rd, 2018. Hereto, Affiant reasons under the laws of New York City, New York State, and/or Federal Laws, Det. Carr did not read nor advise Affiant of his rights upon being handcuffed and arrested nor received medical attention to the injuries to his face, neck and right bicep. Affiant truly believes Det. Carr's premonition to arrest Affiant was on the premise of discrimination based on Affiant's criminal background and not within the laws governing this domestic violence incident as a victim. Seemingly Det. Carr's objective was to further blemish Affiant's character.

Mark Garnes – Affiant

Sworn to before me this _2 3_ day of May 2018.

Notary Public   _Galina Feldman_

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

9

**AFFIDAVIT - Case # 2018KN023543 - Arrest Report #18629833K - DV Report # 2018-017-298**
**ICAD #D18051516234 - DIR Complaint # 2951**

was provided a list of urgent care facilities. The Advantage Care facility at 195 Montague Street, Brooklyn, New York was by appointment only due to Affiant being a new client. The attendant there suggested an urgent care a block away on Court Street, ProHealth, which accepted walk-ins.

32. Affiant went to ProHealth and received the walk-in examination with a $40.00 co-pay. Dr. Lawrence examined Affiant and documented the results. **(See Attached)**

**AFFIANT** attest and avers the above to be true and to the best of his recollection and knowledge to the events occurring from May 15th to May 23rd, 2018. Hereto, Affiant reasons under the laws of New York City, New York State, and/or Federal Laws, Det. Carr did not read nor advise Affiant of his rights upon being handcuffed and arrested nor received medical attention to the injuries to his face, neck and right bicep. Affiant truly believes Det. Carr's premonition to arrest Affiant was on the premise of discrimination based on Affiant's criminal background and not within the laws governing this domestic violence incident as a victim. Seemingly Det. Carr's objective was to further blemish Affiant's character.

Mark Garnes – Affiant

Sworn to before me this _23_ day of May 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

9

# CCRB

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Mark Garnes
1355 Pacific St., Apt. #1B
Brooklyn, N.Y. 11216

May 23rd, 2018

Civilian Complaint Review Board (CCRB)
100 Church Street, 10th Floor
New York, New York 10007

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Carr of the 77th Precinct on the following grounds:

a) Destruction of Victim's Domestic Violence Statement (DIR-Complainant here)
b) Modified/Fraudulent Domestic Violence Report;
c) Forged Signature of Victim-Complainant;
d) Illegal/False Arrest and illegal/False Imprisonment;
e) Fail to Read/Advise/Notify Victim-Complainant of His Miranda Rights when Arrested;
f) Denial/Failure to Provide Medical Assistance to Victim-Complainant;
g) Discrimination;

1

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

1. On May 15th, 2018, Complainant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. The subsequent report on this same date was filed by Det. Carr there at the 77th Pct. In which, Complainant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Complainant's injuries to his face, neck and right bicep. However, the photos Ms. DeJesus had taken with Complainant's phone exist. **See Attached Affidavit, Paragraphs 1-13; See Exhibits 1-11 (Photos of Complainant's injuries at scene and of location; 5-7) (Photos by Ms. DeJesus, Ex. 8-9)**

2. Upon Ms. Neal entering the 77th Pct., Complainant notified Ms. Wilson who she was, Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Complainant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Complainant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Complainant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Complainant's identification. Upon entering the interview room once more, Det. Carr notified Complainant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

3. Det. Carr placed the handcuffs on Complainant and did not read nor notify Complainant of his rights relevant to this arrest. Complainant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

4. Throughout these occurrences at the 77th Pct., Complainant received no medical assistance which was requested in the initial DIR filled out by Complainant. Ms. DeJesus also inquired whether or not Complainant wanted medical assistance, Complainant affirmed he did. **See Attached Affidavit, Paragraph 15**

5. On May 16th, 2018, Complainant was released by the Honorable Court with a court date to appear, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon

2

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

release Complainant returned to the 77th Pct. to pick up copies of the DIR forms Complainant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Complainant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Complainant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Complainant Det. Carr had discarded the DIR documents Complainant filled out, however, Det. Carr was coming down to speak with Complainant. At this time Det. Carr notified Complainant the DIR statements Complainant inscribed on the forms were discarded. Det. Carr passed Complainant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident and only summarized the attack by Ms. Neal upon Complainant's face, neck and right bicep. Nor had Complainant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Complainant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 14-16**

6. Complainant was still confused as to how he was arrested for being the victim and not the primary aggressor as Det. Carr recognized and verbally indicated to Complainant. Reasoning with the mandatory arrest laws in domestic violence incidents, Complainant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Complainant's background became an objective, discriminately. Positing here Complainant was illegally and/or falsely arrested on the premises of discrimination and personal interests of Det. Carr, in addition, to make Complainant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

7. On this same date, Complainant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Complainant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Complainant spoke with Ms. DeJesus upon arriving again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Complainant's house and could Det. Carr give them to her. Complainant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
    Arrest Report # K18629833K
    DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
    DIR Complaint # 2951 (77th Pct.) Det. Carr

8. Hereto on this date, May 16th, Complainant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 17-19**

9. Thereafter leaving the 17th Pct., Complainant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-27**

Complainant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Complainant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Complainant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

4

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
  **Arrest Report # K18629833K**
  **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
  **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Thanking you in advance for your time, attention, and assistance to these matters. Complainant can be contacted at 347-421-1384 or at the noted address above, and/or come to your office to discuss these matters.

Respectfully yours,

Mark Garnes

cc: MG

Sworn to before me this ___23___ day of May 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

5

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
    Arrest Report # K18629833K
    DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
    DIR Complaint # 2951 (77th Pct.) Det. Carr

Mark Garnes
P.O. Box 160363
Brooklyn, N.Y. 11216

November 13th, 2018

Civilian Complaint Review Board (CCRB)
100 Church Street, 10th Floor
New York, New York 10007

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
    Arrest Report # K18629833K
    DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
    DIR Complaint # 2951 (77th Pct.) Det. Carr

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Douglas Carr of the 77th Precinct on the following grounds:

    a)  Destruction of Victim's Domestic Violence Statement (DIR-Complainant here);
    b)  Modified/Fraudulent Domestic Violence Report;
    c)  Forged Signature of Victim-Complainant;
    d)  Illegal/False Arrest and illegal/False Imprisonment;
    e)  Illegally searched;
    f)  Failure to Read/Advise/Notify Victim-Complainant of His Miranda Rights when Arrested;
    g)  Denial/Failure to Provide Medical Assistance to Victim-Complainant;
    h)  Destruction of personal property (Strap of jogging pants cut off due to not able to pull out);
    i)  Discrimination (Criminal History Discrimination).

1

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
   Arrest Report # K18629833K
   DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
   DIR Complaint # 2951 (77th Pct.) Det. Carr

1. On May 15th, 2018, Complainant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. **See Exhibits 1-3a (Hereinafter "Ex.)** The subsequent report on this same date was filed by Det. Carr there at the 77th Pct. **Ex. 4-6a** In which, Complainant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Complainant's injuries to his face, neck and right bicep. **7-13 (Photos of Complainant's injuries at scene and of location by Complainant's phone) (Photos by Ms. DeJesus (77th Pct., Ex. 14-17)**

2. However, only the photos Ms. DeJesus had taken with Complainant's phone exist. **See Attached Affidavit, Paragraphs 1-13;**

3. Upon Ms. Neal entering the 77th Pct., Complainant notified Ms. Wilson that Ms. Neal was here for me to return her property to her. Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Complainant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Complainant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Complainant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Complainant's identification. Upon entering the interview room once more, Det. Carr notified Complainant he would be arrested. **See Attached Affidavit, Paragraphs 15-24**

4. Det. Carr placed the handcuffs on Complainant and did not read nor notify Complainant of his rights relevant to this arrest. Complainant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

5.  Throughout these occurrences at the 77th Pct., Complainant received no medical assistance which was requested in the initial DIR filled out by Complainant. Ms. DeJesus also inquired whether or not Complainant wanted medical assistance, Complainant affirmed he did. **See Attached Affidavit, Paragraph 15**

6.  On May 16th, 2018, Complainant was released by the Honorable Court with a court date to appear on June 29th, 2018, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon release Complainant returned to the 77th Pct. to pick up copies of the DIR forms Complainant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Complainant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Complainant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Complainant Det. Carr had discarded the DIR documents Complainant filled out, however, Det. Carr was coming down to speak with Complainant. At this time Det. Carr notified Complainant the DIR statements Complainant inscribed on the forms were discarded. Det. Carr passed Complainant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident (Atlantic and Flatbush) and only summarized the attack by Ms. Neal upon Complainant's face, neck and right bicep. Nor had Complainant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Complainant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 18-19**

7.  Complainant remained confused as to how he had arrested for being the victim as Det. Carr recognized and verbally indicated to Complainant. Reasoning with the mandatory arrest laws in domestic violence incidents, Complainant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Complainant's criminal history background became an objective, discriminately. Positing here Complainant was illegally and falsely arrested and searched on the premises of discrimination and personal interests of Det. Carr, in addition, to make Complainant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

8.  On this same date (May 16th, 2018), Complainant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Complainant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip

3

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
   Arrest Report # K18629833K
   DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
   DIR Complaint # 2951 (77th Pct.) Det. Carr


Gloss" on it. Complainant spoke with Ms. DeJesus upon arriving again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Complainant's house and could Det. Carr give them to her. Complainant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

9.  Hereto on this date, May 16th, Complainant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 1-3a**

10. Thereafter leaving the 17th Pct., Complainant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-28**

11. On June 29th, 2018 Complainant's scheduled court hearing was conducted with a return date of August 17th, 2018. On this latter date the matter was dismissed. **Ex. 29**

Complainant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Complainant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Complainant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

4

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
   **Arrest Report # K18629833K**
   **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
   **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Complainant attest the above and herein are true and correct to the best recollection of his knowledge as the events occurred on the dates noted.

Thanking you in advance for your time, attention, and assistance to these matters. Complainant can be contacted at 347-421-1384 or at the noted address above, and/or come to your office to discuss these matters.

Respectfully yours,

Mark Garnes

cc: MG

Sworn to before me this _____ day of November 13th, 2018.

Notary Public   *Galina Feldman*

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

5





**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET ROOM 1200**
**NEW YORK, N.Y. 10007-2341**

WWW.COMPTROLLER.NYC.GOV

015 - 151

Scott M. Stringer
**COMPTROLLER**

Date: 11/20/2018
Claim No: 2018PI032680
RE: Acknowledgment of Claim
Your Claim/Policy#:

MARK GARNES
POB 160363
BROOKLYN, NY 11216

Dear Claimant:

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim, **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

If you have any questions regarding your claim, you may contact us at 212-669-2478 for claims involving personal injury.

Sincerely,

Bureau of Law & Adjustment



**CIVILIAN COMPLAINT REVIEW BOARD**
100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ♦ TELEPHONE (212) 912-7235
www.nyc.gov/ccrb



BILL DE BLASIO
MAYOR

FREDERICK DAVIE
CHAIR

November 21, 2018

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that members of the New York City Police Department engaged in misconduct on May 15, 2018, at the 77th Precinct stationhouse in Brooklyn.

In order to fully investigate this complaint, I need to speak with you as soon as possible. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,

Magdalena Azmitia
Investigator

CCRB CTS - Confidential



# CIVILIAN COMPLAINT REVIEW BOARD
### 100 CHURCH STREET 10th FLOOR
### NEW YORK, NEW YORK 10007 ♦ TELEPHONE (212) 912-7235
### www.nyc.gov/ccrb



**BILL DE BLASIO**
**MAYOR**

**FREDERICK DAVIE**
**CHAIR**

November 29, 2018

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that (a) member(s) of the New York City Police Department engaged in misconduct on May 15, 2018, at the 77th Precinct stationhouse in Brooklyn.

I have previously tried to get in touch with you by phone and mail and have not heard from you. In order to investigate this complaint, I need to speak with you as soon as possible. If I do not hear from you, the CCRB may have to close this case without conducting a full and thorough investigation. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,

Magdalena Azmitia
Investigator



**CIVILIAN COMPLAINT REVIEW BOARD**
100 CHURCH STREET 10th FLOOR
NEW YORK, NEW YORK 10007 ♦ TELEPHONE (212) 912-7235
www.nyc.gov/ccrb



BILL DE BLASIO
MAYOR

FREDERICK DAVIE
CHAIR

January 3, 2019

Mr. Mark Garnes
PO Box 160363
Brooklyn, NY 11216

Re: CCRB case number 201809684

Dear Mr. Garnes:

I am the investigator assigned to the above-referenced complaint, which was filed with the Civilian Complaint Review Board. The CCRB, which is staffed entirely by civilians, is a city agency independent of the New York City Police Department. I am currently investigating an allegation that (a) member(s) of the New York City Police Department engaged in misconduct on May 15, 2018, at 77th Precinct stationhouse in Brooklyn.

I have previously tried to get in touch with you by phone and mail and have not heard from you. In order to investigate this complaint, I need to speak with you as soon as possible. If I do not hear from you, the CCRB may have to close this case without conducting a full and thorough investigation. Please call me immediately at (212) 912-7296. If I am not in my office when you call, please leave a telephone number and a time at which you can be reached.

Thank you very much for your cooperation.

Sincerely,

Magdalena Azmitia
Investigator

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Mark Garnes
1355 Pacific St., Apt. #1B
Brooklyn, N.Y. 11216

May 23rd, 2018

Civilian Complaint Review Board (CCRB)
100 Church Street, 10th Floor
New York, New York 10007

**RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

To Whom It May Concern Respectfully:

I, the above noted submit this complaint against Detective Carr of the 77th Precinct on the following grounds:

    a)  Destruction of Victim's Domestic Violence Statement (DIR-Complainant here)
    b)  Modified/Fraudulent Domestic Violence Report;
    c)  Forged Signature of Victim-Complainant;
    d)  Illegal/False Arrest and illegal/False Imprisonment;
    e)  Fail to Read/Advise/Notify Victim-Complainant of His Miranda Rights when Arrested;
    f)  Denial/Failure to Provide Medical Assistance to Victim-Complainant;
    g)  Discrimination;

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
    Arrest Report # K18629833K
    DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
    DIR Complaint # 2951 (77th Pct.) Det. Carr

1. On May 15th, 2018, Complainant incurred a domestic issue with his ex-girlfriend, Sheniqua Neal that occurred on the FDR Drive, Northbound in Manhattan between East 34th and East 42nd Street (Exits 8 and 9). This matter was ultimately handled by Patrolman Emanuel Rosario whose report was initially filed on this incident. The subsequent report on this same date was filed by Det. Carr there at the 77th Pct. In which, Complainant's DIR statements inscribed on the DIR forms were discarded, as well all other forms/documents completed and nearly completed by Public Safety Staff Wilson and DeJesus and possibly the photos taken by Officer LeRoux of Complainant's injuries to his face, neck and right bicep. However, the photos Ms. DeJesus had taken with Complainant's phone exist. **See Attached Affidavit, Paragraphs 1-13; See Exhibits 1-11 (Photos of Complainant's injuries at scene and of location; 5-7) (Photos by Ms. DeJesus, Ex. 8-9)**

2. Upon Ms. Neal entering the 77th Pct., Complainant notified Ms. Wilson who she was, Ms. DeJesus contacted Det. Carr, seemingly due to no domestic violence officers on duty. Det. Carr spoke with Ms. Neal, then to Complainant. After several moments Det. Carr advised Ms. Wilson to discontinue writing the DIR paperwork. Complainant and Ms. Neal were escorted to the second floor of the 77th Pct. After speaking with Complainant again and listening to the events that led up to the incident on the FDR Drive, Det. Carr left the interview room. Returning some moments later, Det. Carr requested Complainant's identification. Upon entering the interview room once more, Det. Carr notified Complainant he would be arrested.  **See Attached Affidavit, Paragraphs 15-24**

3. Det. Carr placed the handcuffs on Complainant and did not read nor notify Complainant of his rights relevant to this arrest. Complainant was not read his rights during the fingerprinting, photo I.D. nor at any time between or thereafter nor up until the point of standing before the Honorable Court on May 16th, 2018. **See Attached Affidavit, Paragraph 19-23**

4. Throughout these occurrences at the 77th Pct., Complainant received no medical assistance which was requested in the initial DIR filled out by Complainant. Ms. DeJesus also inquired whether or not Complainant wanted medical assistance, Complainant affirmed he did. **See Attached Affidavit, Paragraph 15**

5. On May 16th, 2018, Complainant was released by the Honorable Court with a court date to appear, as well an ORDER OF PROTECTION to remain clear of Ms. Neal. **Ex. 12-13** Upon

2

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
Arrest Report # K18629833K
DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
DIR Complaint # 2951 (77th Pct.) Det. Carr

release Complainant returned to the 77th Pct. to pick up copies of the DIR forms Complainant filled out. Upon speaking with Ms. DeJesus, requesting copies of the DV Report filed by Patrolman Rosario and Complainant's inscribed DIR statements and forms, Ms. DeJesus noted she could not provide Complainant with the DV Report of Patrolman Rosario because it was an internal document. Also, Ms. DeJesus advised Complainant Det. Carr had discarded the DIR documents Complainant filled out, however, Det. Carr was coming down to speak with Complainant. At this time Det. Carr notified Complainant the DIR statements Complainant inscribed on the forms were discarded. Det. Carr passed Complainant three (3) pink sheets of carbon copy documents which were Det. Carr's version of the domestic violence incident. The inscriptions of the incident were modified as to the place of the incident and only summarized the attack by Ms. Neal upon Complainant's face, neck and right bicep. Nor had Complainant signed this document. Det. Carr's version of this incident did not equate to Patrolman Rosario's version who had initial contact with Complainant and Ms. Neal. **See Attached Affidavit, Paragraphs 27, See also Ex. 14-16**

6. Complainant was still confused as to how he was arrested for being the victim and not the primary aggressor as Det. Carr recognized and verbally indicated to Complainant. Reasoning with the mandatory arrest laws in domestic violence incidents, Complainant here now became convinced it was more to it than just the arrest. Det. Carr's insight to Complainant's background became an objective, discriminately. Positing here Complainant was illegally and/or falsely arrested on the premises of discrimination and personal interests of Det. Carr, in addition, to make Complainant's birthday unforgettable on this date. **See Attached Affidavit, Paragraph 24**

7. On this same date, Complainant, upon returning home from the 77th Pct. discovered Ms. Neal's house keys on the table. Complainant placed them in an envelope, inscribed Det. Carr's name on it, therewith Ms. Neal's name and phone with "Keys and Lip Gloss" on it. Complainant spoke with Ms. DeJesus upon arriving again at the 77th Pct. on this date, advising her Ms. Neal's keys were at Complainant's house and could Det. Carr give them to her. Complainant's objective to avoid contact with Ms. Neal based on the ORDER OF PROTECTION. Ms. DeJesus phoned up to Det. Carr who was not in and noted she would give them to Det. Carr upon his return. **See Attached Affidavit, Paragraphs 27**

RE: People of the State of New York v. Mark Garnes, Case # 2018KN023543
  Arrest Report # K18629833K
  DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario
  DIR Complaint # 2951 (77th Pct.) Det. Carr

8. Hereto on this date, May 16th, Complainant went to the 17th Pct. to retrieve a copy of the DV Report filed by Patrolman Emanuel Rosario. Upon which was provided by DV Officer Candelario-Toth. **See Attached Affidavit, Paragraph 28 and Ex. 17-19**

9. Thereafter leaving the 17th Pct., Complainant went to get an examination of the injuries to his face, neck and right bicep. **See Attached Affidavit, Paragraphs 29-31; Ex. 20-27**

Complainant here respectfully request the Civilian Complaint Review Board investigate these matters as outlined above, herewith the attached affidavit in support and exhibits illustrating the matters accordingly.

In addition, Complainant further request there are no retaliatory actions; harassment; false and/or concocted arrest(s); illegal/concocted vehicle stop(s); and/or otherwise thereby Det. Carr or any law enforcement officers, agents, and/or otherwise affiliated/associated/related therewith Det. Carr under the banners of law enforcement and/or personally herein the United States and most significantly New York City where Complainant resides. The premise of this request rest with law enforcement officers' overwhelming authority profoundly prevalent to administer their duties under the laws, legally as well illegally.

4

RE: **People of the State of New York v. Mark Garnes, Case # 2018KN023543**
    **Arrest Report # K18629833K**
    **DV Report # 2018-017-298/ICAD #D18051516234 (17th Pct.) Patrolman Emanuel Rosario**
    **DIR Complaint # 2951 (77th Pct.) Det. Carr**

Thanking you in advance for your time, attention, and assistance to these matters. Complainant can be contacted at 347-421-1384 or at the noted address above, and/or come to your office to discuss these matters.

Respectfully yours,

Mark Garnes

cc: MG

Sworn to before me this ___23___ day of May 2018.

Notary Public

GALINA FELDMAN
Notary Public, State of New York
No. 01FE6051186
Qualified in Kings County
Commission Expires November 20, 2018

5

# 50 – H HEARING

# DANIEL L. SCHNEIDER, ESQ.
## ATTORNEY AT LAW

49 WALWORTH AVENUE                    TEL   (914) 725-5374
SCARSDALE, NEW YORK 10583             FAX  (914) 713-1136
                                     EMAIL: danielschneideresq@gmail.com
                                              Date:   December 12, 2018

### NOTICE OF 50-H HEARING

015 – 280

Mark Garnes
P.O. Box 160363
Brooklyn, NY 11216
***SENT BY CERTIFIED MAIL***

                          Re: Claimant Name:   Mark Garnes
                              Claim Number:   2018PI032680

Dear Sir / Madam:

Please take notice that, pursuant to Section 50-h of the General Municipal Law (GML), claimant is mandated by law to appear at the following location, at the date and time specified below, to be orally examined under oath relative to the occurrence and extent of injuries for which the above claim is made:

Date of Hearing:   January 18, 2019
Time of Hearing:   4:00 P.M.

Location of Hearing: DAN SCHNEIDER – LEX REPORTING SERVICES
160 BROADWAY, 14TH FLOOR
NEW YORK, NY 10038
914-725-5374

**PLEASE CALL THIS OFFICE UPON RECEIPT OF THIS LETTER.**
The Comptroller's Office of the City of New York requests that you bring with you an executed copy of an authorization to release records pursuant to Criminal Procedure Law Section 160.50. This authorization is needed to access sealed records covered by Criminal Procedure Law Section 160.50. If you have a question about the 160.50 authorization please consult with an attorney.

The claimant should be accompanied by his/ her attorney. Claimant is further mandated, pursuant to Section 93(d) of the New York City Charter and Section 50-h of the GML, to present him/herself for a physical examination at a date and location to be provided under separate cover.

Please note that all infant claimants must appear. The hearing will begin promptly at the time indicated and there will be no office space to meet with and prepare your client.

Upon receipt of this notice, please contact us if a language interpreter for your client is necessary. One day prior to the hearing, we will call your office to confirm the date and time of the hearing. If you confirm the hearing date at that time and you subsequently fail to appear for the hearing, you will be charged by the City for any legal fee, interpreter fee and stenographic fee incurred.

All applications for adjournments should be directed via email to FIRM CONTACT

Claimants will be permitted one adjournment without cause. Application for such adjournments should be made at least one week prior to the hearing date. Applications for additional adjournments must include the reason for the request, and will be granted for good cause only.

If a claimant fails to appear for a scheduled hearing, a default will be declared and claimant's failure to appear will be raised as an affirmative defense in any lawsuit subsequently filed.

In order to prevent fraud, you are required to present proper identification prior to commencement of the hearing. Additionally, you are requested to bring to the hearing original photographs of the accident scene and copies of all documents relevant to this claim including but not limited to:

(1) prior written notice map;
(2) all medical and hospital records;
(3) authorizations for the Comptroller's Office to obtain, as applicable, medical, criminal, employment and/or school records, and loss of income documentation;
(4) police reports.

Pursuant to State and Federal law, the Comptroller's Office, through its attorneys taking hearings, is authorized to obtain, social security and Medicare or Medicaid numbers for tax and reporting purposes, and to allow for the collection of liens held by the City and State.

Please be advised that nothing contained herein shall be construed as extending the statute of limitations beyond the statutory time.

Please note that the office does not provide day care services. Therefore infants and small children will not be permitted in the office.

All questions with regard to this notice should be addressed to the undersigned at FIRM CONTACT. **ONE DAY PRIOR TO THE HEARING, YOU MUST CALL OR E-MAIL OUR OFFICE TO CONFIRM THE DATE AND TIME OF THE HEARING.**

**Please be aware that filing a false claim or aiding and abetting the filing of a false claim is a crime. Violators will be prosecuted to the fullest extent of the law.**

Sincerely,
Daniel L. Schneider

cc: Comptroller's office
1 Centre Street
NY, NY 10007

# NOTICE OF ADJOURNMENT

015 - 229

Law Firm:

Mark Garnes
P.O. Box 160363
Brooklyn, NY 11216

**_SENT BY CERTIFIED MAIL_**

Date: January 17, 2019

Re: ADJOURNMENT OF

50-H HEARING

Re: Claimant Name:   Mark Garnes
    Claim Number:   2018PI032680

Dear Sir / Madam:

    This is to confirm that the hearing for the above referenced claim has been adjourned and has been rescheduled for the following location and time:

HEARING DATE:  April 24, 2019

HEARING TIME:  3:30 P.M.

LAW OFFICES OF: DAN SCHNEIDER – LEX REPORTING SERVICES
160 BROADWAY, 14TH FLOOR
NEW YORK, NY 10038

## PLEASE CALL THIS OFFICE UPON RECEIPT OF THIS LETTER: 914-725-5374

    Please note that, as stated in the Notice of Hearing, claimant is permitted only one adjournment without cause. Applications for all additional adjournments must include the reason for the request and will be granted for good cause only. Applications for adjournments must be made in writing to FIRM CONTACT

    _All questions with regard to this notice should be addressed to the undersigned at_ FIRM CONTACT. **ONE DAY PRIOR TO THE HEARING, YOU MUST CALL OR E-MAIL OUR OFFICE TO CONFIRM THE DATE AND TIME OF THE HEARING.**

    **Please be aware that filing a false claim or aiding and abetting the filing of a false claim is a crime. Violators will be prosecuted to the fullest extent of the law**.

Sincerely,
Daniel L. Schneider, Esq.
49 Walworth Avenue
Scarsdale, NY 10583
914-725-5374
danielschneideresq@gmail.com

Cc: Comptroller's Office
1 Centre Street
NY, NY 10007

*OCA-335*

OCA Official Form No.: 960

**AUTHORIZATION FOR RELEASE OF HEALTH INFORMATION PURSUANT TO HIPAA**
**[This form has been approved by the New York State Department of Health]**

| Patient Name | Date of Birth | Social Security Number |
|---|---|---|
| Mark Barnes | 5/15/1963 | |

| Patient Address |
|---|
| 1355 Pacific St. #B, Bklyn, NY 11266 |

I, or my authorized representative, request that health information regarding my care and treatment be released as set forth on this form:

In accordance with New York State Law and the Privacy Rule of the Health Insurance Portability and Accountability Act of 1996 (HIPAA), I understand that:

1. This authorization may include disclosure of information relating to **ALCOHOL and DRUG ABUSE, MENTAL HEALTH TREATMENT**, except psychotherapy notes, and **CONFIDENTIAL HIV* RELATED INFORMATION** only if I place my initials on the appropriate line in Item 9(a). In the event the health information described below includes any of these types of information, and I initial the line on the box in Item 9(a), I specifically authorize release of such information to the person(s) indicated in Item 8.

2. If I am authorizing the release of HIV-related, alcohol or drug treatment, or mental health treatment information, the recipient is prohibited from redisclosing such information without my authorization unless permitted to do so under federal or state law. I understand that I have the right to request a list of people who may receive or use my HIV-related information without authorization. If I experience discrimination because of the release or disclosure of HIV-related information, I may contact the New York State Division of Human Rights at (212) 480-2493 or the New York City Commission of Human Rights at (212) 306-7450. These agencies are responsible for protecting my rights.

3. I have the right to revoke this authorization at any time by writing to the health care provider listed below. I understand that I may revoke this authorization except to the extent that action has already been taken based on this authorization.

4. I understand that signing this authorization is voluntary. My treatment, payment, enrollment in a health plan, or eligibility for benefits will not be conditioned upon my authorization of this disclosure.

5. Information disclosed under this authorization might be redisclosed by the recipient (except as noted above in Item 2), and this redisclosure may no longer be protected by federal or state law.

6. **THIS AUTHORIZATION DOES NOT AUTHORIZE YOU TO DISCUSS MY HEALTH INFORMATION OR MEDICAL CARE WITH ANYONE OTHER THAN THE ATTORNEY OR GOVERNMENTAL AGENCY SPECIFIED IN ITEM 9 (b).**

7. Name and address of health provider or entity to release this information:

8. Name and address of person(s) or category of person to whom this information will be sent:
OFFICE OF THE COMPTROLLER, ONE CENTRE ST, 12th FL, NY, NY 10007

9(a). Specific information to be released:
☐ Medical Record from (insert date) 5/16/2018 to (insert date) _____
☐ Entire Medical Record, including patient histories, office notes (except psychotherapy notes), test result, radiology studies, films, referrals, consults, billing records, insurance records, and records sent to you by other health care providers.
☐ Other: _____

Include: *(Indicate by Initialing)*

_____ Alcohol/Drug Treatment
_____ Mental Health Information
_____ HIV-Related Information

**Authorization to Discuss Health Information**

(b) ☐ By initialing here _____ I authorize _____
       Initials                                Name of individual health care provider

to discuss my health information with my attorney, or a governmental agency, listed here:

_____
(Attorney/Firm Name or Governmental Agency Name)

| 10. Reason for release of information: | 11. Date or event on which this authorization will expire: |
|---|---|
| ☐ At request of individual<br>☒ Other: LITIGATION | END OF LITIGATION |
| 12. If not the patient, name of person signing form: | 13. Authority to sign on behalf of patient: |

All items on this form have been completed and my questions about this form have been answered. In addition, I have been provided a copy of the form.

X _Mark Barnes_ Date: 4/25/2019
Signature of patient or representative authorized by law.

* Human Immunodeficiency Virus that causes AIDS. The New York State Public Health Law protects information which reasonably could identify someone as having HIV symptoms or infection and information regarding a person's contacts.

NYHIPAA 8/09

STEPHANIE ANN MCELROY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01MC6262370
Qualified in New York County
My Commission Expires 05-21-2020

5/25/19

Mark Garnes
P.O. Box 160363
Brooklyn, New York
                 11216

June 21st, 2019

Daniel L. Schneider, Esq.
49 Walworth Avenue
Scarsdale New York 10583

**RE: Mark Garnes – Claimant**
   **Claim No.: 2018P1032680**

Dear Mr. Schneider:

I forward this letter of request for the transcripts to the 50-H Hearing conducted on April 25th, 2019 at 3:30 P.M., at 160 Broadway, 14th Floor, New York, N.Y. 10038. To date, I have yet to receive a copy of the hearing transcripts, as indicated would be available and forward two weeks after the hearing.

Please advise on the status of the transcripts being provided at your nearest convenience. Thanking you in advance to this matter before your office.

Respectfully,

Mark Garnes

cc:

Scott Stringer
New York City Comptroller

Mark Garnes
P.O. Box 160363
Brooklyn, New York
                11216

March 23rd, 2020

**New York City Comptroller's Office**
Attn: FOIL
One Centre Street, Suite 602
Municipal Building
New York, NY 10007

RE:   **FOIL Request for Transcripts-50-H Hearing Per Subdivision (3)-Hearing Date-4/25/2019**
      **Mark Garnes – Claimant**
      **Claim No.: 2018P1032680**

To Whom It May Concern, Respectfully:

I, the above noted submit this **FOIL Request** for the transcripts thereof the April 25th, 2019 **50-H Hearing** conducted at 160 Broadway, 14th Floor, New York, N.Y. 10014. This matter was heard by Daniel L. Schneider, Esq., with an address being: 49 Walworth Avenue, Scarsdale, New York, N.Y. 10583.

In accord with subdivision (3) of section 50-h of the General Municipal Law states in part that "The transcript of the record of an examination shall not be subject to or available for public inspection, except upon order the court upon good cause shown, **but shall be furnished to the claimant** or his attorney upon request."

1

Thanking you in advance to the matter here before your office. This FOIL Request can be forwarded to the above noted address.

Sincerely,

Mark Garnes

cc:     MG


Scott Stringer
New York City Comptroller
1 Centre Street, #530
New York, New York
        10007


Daniel L. Schneider, Esq.
49 Walworth Avenue
Scarsdale, New York
        10583


Sworn to before me this ___25___ day of March 2020.

Notary Public

LILLIAN BOWMAN
Notary Public - State of New York
NO. 01BO4977472
Qualified in Kings County
My Commission Expires Feb 4, 2023

2

# EXHIBITS 1 - 29

## DOMESTIC INCIDENT REPORT

| | Crime/Condition | Command |
|---|---|---|
| | | 017-17TH PRECINCT |
| | | Date of This Report |
| | | 05/16/2018 |

| Date of UF61 | Complaint No. | Date Case Assigned 05/15/2018 | Case No. 2018 - 354 | Unit Reporting | Follow-Up No. 1 |
|---|---|---|---|---|---|

| Topic/Subject (DOMESTIC INCIDENT REPORT) DIR INFORMATION | Activity Date 05/15/2018 | Activity Time 00:00 |
|---|---|---|

| Agency N.Y. POLICE DEPT | ORI NY03030002 | **NYPD DOMESTIC INCIDENT REPORT** | | Incident # 2018-017-000298 | | Complaint # |
|---|---|---|---|---|---|---|
| Date of Report 05/15/2018 | Time of Report 1530 | Date of Occur 05/15/2018 | Time of Occur 1458 | Response Type RADIO RUN | ICAD # D18051516234 | ICAD N/A Reason: | Other Reason: |
| Unfounded NO | Address of Occurrence FDR DRIVE MANHATTAN NY | | | Pct 17 | PSA | Sector C | Body Worn Camera No |

### Victim: GARNES, MARK A

| Victim's Last Name, First M.I. GARNES, MARK A | Alias | Address 1355 PACIFIC STREET 1B BROOKLYN NY | Pct 77 | PSA |
|---|---|---|---|---|
| Sex: MALE Self-Identified: Race: BLACK Ethnicity: UNKNOWN Language: ENGLISH | Date of Birth: 05/15/1963 Age: 55 | Home Phone: 347 421-1384 Other Phone: | Member of Service: NO |
| SAFE# or way to contact   AT PHONE NUMBER PROVIDED ABOVE | Other Identifier | |

### Suspect: NEAL, SHENIQUA CHARISSE

| Suspect's Last Name, First M.I.. NEAL, SHENIQUA CHARISSE | Alias | Address 510 ATLANTIC AVENUE 822 BROOKLYN NY | Pct 84 | PSA |
|---|---|---|---|---|
| Sex: FEMALE Self-Identified: Race: BLACK Ethnicity: UNKNOWN Language: ENGLISH | Date of Birth: 01/16/1990 Age: 28 | Home Phone: 718 413 -0253 Other Phone: | Member of Service: NO |
| Do suspect and victim live together? NO | Suspect (P2) Relationship to Victim (P1): INTIMATE PARTNER/DATING | Suspect/P2 Present: YES | Was suspect injured? NO |
| Do the suspect and victim have a child in common? NO | Possible drug or alcohol use? NO | | Suspect supervised? Status Unknown |

### Victim Interview

Emotional condition of VICTIM?

What were the first words that VICTIM said to the Responding Officers at the scene regarding the incident?
I TOOK HER TO HER PLACE AND SHE DID NOT WANT TO GET OFF THE CAR. NOW I JUST STOPPED BEACUSE I KNOW HOOW IT WOULD GO FOR ME.

| Weapon Used? | Gun: | Access to Guns? NO | Injured? NO | In Pain? NO |
|---|---|---|---|---|

Ex. 1

| Did suspect make victim fearful? NO | | | |
|---|---|---|---|
| Suspect Threats? | | Strangulation? NO | Visible Marks? NO |

**Suspect**

What did the SUSPECT say (Before and After Arrest) :
FEMALE STATED THAT SHE JUST WANTED HER APARTMENT KEYS WHICH ARE AT VICTIM'S APARTMENT.

710.30 completed? NO

**Child/Witness**

| Person's Last Name,First M.I. | Alias | Address | Relationship | Date of Birth | Phone |
|---|---|---|---|---|---|
| | | | | | |

**Incident Narrative**

Briefly Describe the circumstances of this incident:
WHILE TRAVELING N/B BOTH PARTIES INVOLVED GOT INTO AN AGREEMENT ABOUT THE APARTMENT KEYS OF THE APARTMENT OF SUSPECT. ACCORDING TO VICTIM, HE TOOK SUSPECT TO HIS PLACE SO SHE CAN GET HER KEYS OUT HIS APARTMENT BUT SUSPECT REFUSED TO EXIT HIS VEHICLE. SUSPECT STATED THAT SHE JUST WANTED HER APARTMENT KEYS. TO AVOID FURTHER ARGUMENT, VICTIM STOPPED ON THE HIGHWAY AND WAITED FOR POLICE TO RESPOND. THEY BOTH STATED THAT THEY USED TO DATE. SYSTEM IS NOT TAKE THE ICAD# 18051516234

| DIR Repository checked NO | Order of Protection Registry checked? NO | Order of Protection in effect? NO | Order of Protection Type? |
|---|---|---|---|

**Evidence**

| Evidence Present NO | Photos Taken: | Other Evidence: | Destruction of Property? NO |
|---|---|---|---|

**Prior History**

Describe Victim's prior domestic incidents with this suspect (Last, Worst, First):
NONE

**Has Suspect ever:**

| If the Victim answers "yes" to any questions in this box refer to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider. | | | | | Local Domestic Violence Service Provider Phone No. |
|---|---|---|---|---|---|
| Threatened to kill you or your children? NO | Strangled or "choked" you? NO | Beaten you while you were pregnant? NO | Is suspect capable of killing you or children? NO | Is suspect violently and constantly jealous of you? NO | Has the physical violence increased in frequency or severity over the past 6 months? NO |

**Interpreter**

| Interpreter Used | Interpreter Requested | Interpreter's Last Name, First | Internet Service Provider |
|---|---|---|---|
| | | | |

**Statement of Allegations/Supporting Desposition**
VERBAL ARGUMENT OVER KEYS APARTMENT

Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endagerment?

Ex. 2

| Was DIR given to the victim at scene?<br>NO | If No, Why?:<br>TYPED ON COMPUTER | Was Victim Rights Notice given to victim<br>YES | If No, Why?: | Entered By<br>TaxID<br>946190 | Entered By<br>Date<br>05/15/2018 |
|---|---|---|---|---|---|
| Reporting Officer: | Jurisdiction<br>N.Y. POLICE DEPT | Name<br>ROSARIO , ENMANUEL | Rank<br>POM | Tax ID<br>946190 | Date<br>05/15/2018 |
| Detective Assigned: | Name | | Rank | Tax ID | Date |
| Supervisor Sign-off: | Name<br>GRASSO , JACLYN | | Rank<br>SGT | Tax ID<br>939294 | Date<br>05/16/2018 |

| Reporting Officer: | Rank<br>POF | | Name<br>KOMIKO CANDELARIOTOTH | | Tax Reg. No.<br>936291 | Command<br>017-17TH PRECINCT |
|---|---|---|---|---|---|---|
| Reviewing Supervisor: | Manner of Closing | Date Reviewed<br>05/16/2018 | Date of Next Review | Name<br>JACLYN GRASSO | | Supv. Tax No.<br>939294 |

Ex. 3

K18629833K

DV Report   Mark
                Garnes

2018-017-298  05/15/63

Icad # D1805151623Y

Complaint Report #
2018-077-002952

Arrest Report #
K18629833

DIR

Ex 3a

**New York State**
**DOMESTIC INCIDENT REPORT**

**A**

**Incident**

| Agency: | | | | | | | | Incident # |
|---|---|---|---|---|---|---|---|---|

| Reported Date (MM/DD/YYYY) | Time (24 hours) | Occurred Date (MM/DD/YYYY) | Time (24 hours) | ☐ Officer Initiated | ☐ Radio Run | ☐ Walk-in | Complaint # |
|---|---|---|---|---|---|---|---|
| | | | | ☐ ICAD (NYC) | | | |

| Address (Street No., Street Name, Bldg. No., Apt No.) | City, State, Zip |
|---|---|

**Suspect (P2)**

| Name (Last, First, M.I.) (Include Aliases) | | DOB (MM/DD/YYYY) | Age: | ☐ Female ☐ Male |
|---|---|---|---|---|
| Charisse, Shanique Nia | | | | ☐ Self-Identified: |

| Address (Street No., Street Name, Bldg. No., Apt No.) | Suspect Phone Number: | Language: |
|---|---|---|

| City, State, Zip | ☐ White ☐ Black ☐ Asian | ☐ Hispanic ☐ Non Hispanic ☐Unknown |
|---|---|---|
| | ☐ American Indian ☐ Other | ☐ Other Identifier: |

| Do suspect and victim live together ? ☐ Yes ☐ No | Suspect/P2 present? ☐ Yes ☐ No | Was suspect injured? ☐ Yes ☐ No If yes describe: | Possible drug or alcohol use? ☐ Yes ☐ No | Suspect supervised? ☐ Probation ☐ Parole ☐ Not Supervised ☐ Status Unknown |
|---|---|---|---|---|

| Suspect (P2) Relationship to Victim (P1) ☐ Married ☐ Intimate Partner/Dating ☐ Formerly Married ☐ Former Intimate Partner ☐ Parent of Victim (P1) ☐ Child of Victim ☐ Relative: ☐ Other: | Do the suspect and victim have a child in common? ☐ Yes ☐ No |
|---|---|

**Victim Interview**

| Emotional condition of **VICTIM**? ☐ Upset ☐ Nervous ☐ Crying ☐ Angry ☐ Other: |
|---|

| What were the first words that **VICTIM** said to the Responding Officers at the scene regarding the incident? |
|---|

| Did suspect make victim fearful? ☐ Yes ☐ No If yes, describe: |
|---|

| Weapon Used? ☐ Yes ☐ No Gun: ☐ Yes ☐ No Other, describe: | Suspect Threats? ☐ Yes ☐ No If Yes, Threats to: ☐ Victim ☐ Child(ren) ☐ Pet ☐ Commit Suicide ☐ Other Describe: |
|---|---|
| Access to Guns? ☐ Yes ☐ No If yes, describe: | |

| Injured? ☐ Yes ☐ No If yes, describe: | Strangulation? ☐ Yes ☐ No ☐ Loss of Consciousness ☐ Urination/Defecation ☐ Red eyes/Petechia ☐ Sore Throat ☐ Breathing Changed ☐ Difficulty Swallowing |
|---|---|
| In Pain ? ☐ Yes ☐ No If yes, describe: | Visible Marks? ☐ Yes ☐ No If yes, describe: |

**Suspect**

| What did the **SUSPECT** say (Before and After Arrest): |
|---|

| 710.30 completed? ☐ Yes ☐ No |
|---|

**Incident Narrative**

| Briefly describe the circumstances of this incident: |
|---|

**Evid**

| DIR Repository checked? ☐ Yes ☐ No | Order of Protection Registry checked? ☐ Yes ☐ No | Order of Protection in effect? ☐ Yes ☐ No ☐ Refrain ☐ Stay Away |
|---|---|---|
| Evidence Present? ☐ Yes ☐ No | Photos taken: ☐ Victim Injury ☐ Suspect Injury ☐ Other: | Other Evidence: ☐ Damaged Property ☐ Videos ☐ Electronic Evidence ☐ Other: | Destruction of Property? ☐ Yes ☐ No If yes, Describe: |

**Offense**

| Offense Committed? ☐ Yes ☐ No | Was suspect arrested? ☐ Yes ☐ No If no, explain: | Offense 1 | Law (e.g. PL) | Offense 2 | Law (e.g. PL) |
|---|---|---|---|---|---|

Ex. 4

| Agency: | B | Incident # | Complaint # |
|---|---|---|---|

**Prior History**

Describe Victim's prior domestic incidents with this suspect (Last, Worst, First):

If the Victim answers "yes" to any questions in this box refer to the NYS Domestic and Sexual Violence Hotline at 1-800-942-6906 or Local Domestic Violence Service Provider: (       ) _____.

| Has Suspect ever: | | | Is suspect capable of killing you or children? | ☐ Yes | ☐ No |
|---|---|---|---|---|---|
| Threatened to kill you or your children? ☐ Yes ☐ No | | | Is suspect violently and constantly jealous of you? | ☐ Yes | ☐ No |
| Strangled or "choked" you? ☐ Yes ☐ No | | | Has the physical violence increased in frequency or severity over the past 6 months? | | |
| Beaten you while you were pregnant? ☐ Yes ☐ No | | | | ☐ Yes | ☐ No |

Is there reasonable cause to suspect a child may be the victim of abuse, neglect, maltreatment or endangerment?  ☐ Yes  ☐ No

If Yes, the Officer must contact the **NYS Child Abuse Hotline Registry # 1-800-635-1522.**

| Was DIR given to the Victim at the scene? ☐ Yes ☐ No if NO, Why: | Was Victim Rights Notice given to the Victim? ☐ Yes ☐ No if NO, Why: |
|---|---|

**Signatures:**

| Reporting Officer (Print and Sign include Rank and ID#) | Supervisor (Print and Sign include Rank and ID#) |
|---|---|

## STATEMENT OF ALLEGATIONS/SUPPORTING DEPOSITION

* Officers are encouraged to assist the Victim in completing this section of the form.

**Suspect Name** (Last, First, M.I.)   _Charisse Shaniqua_

I _Maze Chavis_ (Victim/Deponent Name) state that on __/__/__, (Date)

at _3 Avenue of Flatbush_ (Location of incident) in the County/City/Town/Village

of the State of New York, the following did occur: _He a verbal dispute_
_with his girlfriend – Shaniqua Charisse. Then Shaniqua attacked the deponent_
_Maze by scratching him/her in the face & neck_

(Use additional page as needed)

**False Statements made herein are punishable as a Class A Misdemeanor, pursuant to section 210.45 of the Penal Law.**

| Victim/Deponent Signature | Date | **Note:** | Page |
|---|---|---|---|
| Witness or Officer Signature | Date | *Whether or not this form is signed, this DIR Form will be filed with Law Enforcement.* | ___ Of ___ |
| Interpreter Signature and Interpreter Service Provider Name Interpreter Requested ☐ Yes ☐ No Interpreter Used ☐ Yes ☐ No | Date   Ex. 5 | | |

VICTIM / COMPLAINANT COPY      NYS DOMESTIC AND SEXUAL VIOLENCE HOTLINE 1-800-942-6906      3221 03/2016 DC IS Copyright © 2016 by NYS DC IS

**What the Police Can Do:**
*Assist you with finding a safe place, a place away from the violence.
*Inform you about how the court can help protect you from the violence.
*Help you and your children get medical care for any injuries you received.
*Assist you in getting necessary belongings from your home.
*Provide you with copies of police reports about the violence.
*File a complaint in criminal court, and tell you where your local criminal and family courts are located.

**What the Courts Can Do:**
*If the person who harmed you or threatened you is a relative by blood or marriage, or is someone you've had a child with, or is someone with whom you are or have had an intimate relationship, then you have the right to take your case to family court, criminal court or both.
*The forms you need are available from the family court and the criminal court.
*The courts can decide to provide a temporary order of protection for you, your children and any witnesses who may request one.
*The family court may appoint a lawyer to help you if the court finds that you cannot afford one.
*The family court may order temporary child support and temporary custody of your children.

**New York Law States:** If you are the victim of domestic violence, you may request that the officer assist in providing for your safety and that of your children, including providing information on how to obtain a temporary order of protection. You may also request that the officer assist you in obtaining your essential personal effects and locating and taking you, or assist in making arrangements to take you, and your children to a safe place within such officer's jurisdiction, including but not limited to a domestic violence program, a family member's or a friend's residence, or a similar place of safety. When the officer's jurisdiction is more than a single county, you may ask the officer to take you or make arrangements to take you and your children to a place of safety in the county where the incident occurred. If you or your children are in need of medical treatment, you have the right to request that the officer assist you in obtaining such medical treatment. You may request a copy of any incident reports at no cost from the law enforcement agency. You have the right to seek legal counsel of your own choosing and if you proceed in family court and if it is determined that you cannot afford an attorney, one must be appointed to represent you without cost to you. You may ask the district attorney or a law enforcement officer to file a criminal complaint. You also have the right to file a petition in the family court when a family offense has been committed against you. You have the right to have your petition and request for an order of protection filed on the same day you appear in court, and such request must be heard that same day or the next day court is in session. Either court may issue an order of protection from conduct constituting a family offense which could include, among other provisions, an order for the respondent or defendant to stay away from you and your children. The family court may also order the payment of temporary child support and award temporary custody of your children. If the family court is not in session, you may seek immediate assistance from the criminal court in obtaining an order of protection. The forms you need to obtain an order of protection are available from the family court and the local criminal court. The resources available in this community for information relating to domestic violence, treatment of injuries, and places of safety and shelters can be accessed by calling the following 800 numbers. Filing a criminal complaint or a family court petition containing allegations that are knowingly false is a crime.
*(NYS Criminal Procedure Law, Section 530.11 (6))*

| NEW YORK STATE 24 HOUR DOMESTIC AND SEXUAL VIOLENCE HOTLINE | COURT INFORMATION |
|---|---|
| **NEW YORK STATE** **24 HOUR DOMESTIC AND SEXUAL** **VIOLENCE HOTLINE** **1-800-942-6906** **English and Español, Multi-language Accessibility** **National Relay Service for Deaf or Hard of Hearing:711** **NEW YORK CITY** (all languages) **1-800-621-Hope (4673) or 311** | **COURT INFORMATION** New York City—Criminal Court Information **1-646-386-4500** To obtain court information for other areas of NYS, ask the responding officer for court numbers, consult your phone directory, or call the Domestic and Sexual Violence Hotline (1-800-942-6906) |

**VICTIM INFORMATION AND NOTIFICATION EVERYDAY (VINE)**

Victims may receive information relating to the status and release dates of persons incarcerated in state prison or local jails in New York State. For more information on this program and how you can register, call

**1-888-VINE-4NY (1-888-846-3469) or www.vinelink.com**

**STATEWIDE AUTOMATED VICTIM INFORMATION AND NOTIFICATION (SAVIN-NY)**
Victim notification program which allows domestic violence victims to register to be notified when an
Order of Protection has been served
**www.nyalert.gov**

Ex. 6

## CENTRAL BOOKING

### PRISONER'S PROPERTY FORM

PRISONER'S NAME _Coarnes, Mark_   ARREST # _K16-298336_   DATE _5-15-18_   PCT. _077_

FUNDS COUNTED AND RETURNED (Include total value of coins). $_100.00_

**THE BELOW LISTED ITEMS WERE REMOVED FROM PRISONER FOR RETURN TO PRISONER AT COURT OR ON RELEASE ON D.A.T.**

### PROPERTY - DESCRIBE

☑ SHOE LACES ☐ HAIR PICK/ COMB ☐ PEN ☐ LIGHTER ☐ HANDBAG ☐ BELTS ☐ KEYS ☐ NAIL CLIPPER

☐ OTHER (DESCRIBE) _____

_____
(Signature Prisoner)

_____   18083   077
(Signature Arresting Officer)   (Shield)   (Command)

_____
(Member searching 1 other than A.O.)
(Reviewing Officer)

** **NOTE**: If no funds counted and returned, indicate "NONE". If no property removed and safeguarded, indicate "NONE".
**Distribution - Original to C.B. - Duplicate to prisoner - Triplicate to Court Package**

Misc. 917-H (Rev. 04-08)

Ex. 6a



Ex. 9



Ex. 8



Ex. 9.



Ex. 10



Ex. 11.



Ex. 12



Ex. 13



Ex. 14







Ex. 16



Ex. 17.

RI No: NY023033J
rder No: 2018-014488
YSID No: 04556247R
JTN No:

**Ex10**

Criminal Form 1 12/2013

At a term of the New York City Criminal Court, Kings County Branch, County of Kings, at the Courthouse at 120 Schermerhorn Street, Brooklyn, NY 11201, State of New York

RESENT:  Honorable Raymond Rodriguez

**ORDER OF PROTECTION**
Family Offenses - C.P.L. 530.12

**EOPLE OF THE STATE OF NEW YORK**

- against -

IARK GARNES ,
efendant

☐ Youthful Offender (check if applicable)

Part: **APAR2**     Case No.: 2018KN023543

Charges: PL 120.00 01 AM, 1 count(s) of A Misd, 1 count(s) of B Misd

'OB: 05/15/1963

Defendant Present in Court

OTICE: YOUR FAILURE TO OBEY THIS ORDER MAY SUBJECT YOU TO MANDATORY ARREST AND CRIMINAL PROSECUTION WHICH MAY ESULT IN YOUR INCARCERATION FOR UP TO SEVEN YEARS FOR CONTEMPT OF COURT. IF THIS IS A TEMPORARY ORDER OF PROTECTION ND YOU FAIL TO APPEAR IN COURT WHEN YOU ARE REQUIRED TO DO SO, THIS ORDER MAY BE EXTENDED IN YOUR ABSENCE AND ONTINUE IN EFFECT UNTIL A NEW DATE SET BY THE COURT.

HIS ORDER OF PROTECTION WILL REMAIN IN EFFECT EVEN IF THE PROTECTED PARTY HAS, OR CONSENTS TO HAVE, CONTACT OR OMMUNICATION WITH THE PARTY AGAINST WHOM THE ORDER IS ISSUED. THIS ORDER OF PROTECTION CAN ONLY BE MODIFIED OR ERMINATED BY THE COURT. THE PROTECTED PARTY CANNOT BE HELD TO VIOLATE THIS ORDER NOR BE ARRESTED FOR VIOLATING THIS RDER.

☒ **TEMPORARY ORDER OF PROTECTION** - Whereas good cause has been shown for the issuance of a temporary order of protection

☐ **ORDER OF PROTECTION** - Whereas defendant has been convicted of [specify crime or violation]:

And the Court having made a determination in accordance with section 530.12 of the Criminal Procedure Law,

' IS HEREBY ORDERED that the above-named defendant MARK GARNES (DOB: 05/15/1963) observe the following conditions of :havior:

1]    Stay away from [A]      SHENIQUA NEAL;

[B]    the home of SHENIQUA NEAL;

[C]    the school of SHENIQUA NEAL;

[D]    the business of SHENIQUA NEAL;

[E]    the place of employment of SHENIQUA NEAL;

4]    Refrain from communication or any other contact by mail, telephone, e-mail, voice-mail or other electronic or any other means with SHENIQUA NEAL;

2]    Refrain from assault, stalking, harassment, aggravated harassment, menacing, reckless endangerment, strangulation, criminal obstruction of breathing or circulation, disorderly conduct, criminal mischief, sexual abuse, sexual misconduct, forcible touching, intimidation, threats, identity theft, grand larceny, coercion or any criminal offense against SHENIQUA NEAL;

2]    Surrender any and all handguns, pistols, revolvers, rifles, shotguns and other firearms owned or possessed, including, but not limited to, the following: ANY AND ALL and do not obtain any further guns or other firearms. Such surrender shall take place immediately, but in no event later than IMMEDIATELY at LOCAL PRECINCT;

)]    Observe such other conditions as are necessary to further the purposes of protection: NO THIRD PARTY CONTACT;

' IS FURTHER ORDERED that the above-named Defendant's license to carry, possess, repair, sell or otherwise dispose of a firearm or earms, if any, pursuant to Penal Law §400.00, is hereby [13A] suspended, and [13C] the Defendant shall remain ineligible to receive a earm license during the period of this order.

' IS FURTHER ORDERED that this order of protection shall remain in force until and including 11/30/2018, but if you fail to appear in urt on this date, the order may be extended and continue in effect until a new date set by the Court.

ATED: 05/16/2018

Honorable Raymond Rodriguez

☐ Defendant advised in Court of issuance and contents of Order.
☐ Order to be served by other means [specify]: _____
☐ Warrant issued for Defendant
☐ Order personally served on Defendant in Court

(Defendant's signature)

☐ **ADDITIONAL SERVICE INFORMATION** [specify]: _____

: Criminal Procedure Law provides that presentation of a copy of this order of protection to any police officer or peace officer acting pursuant to his or her special duties ll authorize and in some situations may require, such officer to arrest a defendant who is alleged to have violated its terms and to bring him or her before the Court to face alties authorized by law.

leral law requires that this order be honored and enforced by state and tribal courts, including courts of a state, the District of Columbia, a commonwealth, territory or session of the United States, if the person against whom the order is sought is an intimate partner of the protected party and has been or will be afforded reasonable notice and ortunity to be heard in accordance with state law sufficient to protect that person's rights (18 USC §§2265, 2266).

: a federal crime to:
oss state lines to violate this order or to stalk, harass or commit domestic violence against an intimate partner or family member;
uy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition while this Order remains in effect (Note: there is a limited exception for military or law orcement officers but only while they are on duty); and
uy, possess or transfer a handgun, rifle, shotgun or other firearm or ammunition after a conviction of a domestic violence-related crime involving the use or attempted use of sical force or a deadly weapon against an intimate partner or family member, even after this Order has expired. (18 U.S.C. 922(g)(8), §§922(g)(9), 2261, 2261A, 2262).

Ex. 1p

Ex 19

## CRIMINAL COURT OF THE CITY OF NEW YORK

| Docket Number | Arraignment Date | Arraignment Judge |
| --- | --- | --- |

You are to appear in Court on ___6/29___ by 9:30 A.M. at Part ___DV1 (8th fl.)___ located at 120 Schermerhorn Street, Brooklyn, N.Y. 11201.

Your bail has been fixed at     $ _____    Insurance Company Bail Bond.
                                   or
                             $ _____    Cash Bail.

If you are released and you fail to appear at the time, date, and place indicated above,
     A Warrant for your Arrest will be issued.
     Your Bail, if any, will be forfeited.
     You may be charged with the crime of Bail Jumping.

If you are committed:
     You have the right to communicate with relatives or friends by letter or telephone free of charge.
     You have the right to the aid of counsel at every stage of the proceedings.

If you desire counsel and are financially unable to obtain counsel, counsel shall be assigned to you.

## PLEASE BRING THIS NOTICE WITH YOU WHENEVER YOU APPEAR IN COURT.



**Weill Cornell**   ⌐ **NewYork-Presbyterian**
⌐ Weill Cornell Medical Center

**Trenton Collier, MD**

Phone: 646-962-5665
Fax: 646-962-5687

156 William Street
7th Floor
New York, NY 10038

Mr. Mark Garnes
1355 PACIFIC STREET
APT #1B
BROOKLYN, NY 11216

5/16/2018

Dear Mark Garnes,

This is a reminder for your upcoming appointment with Trenton Collier, MD.

Date:  5/23/18
Time:  2:00 PM
Department: WCMC INTERNAL MEDICINE 156 WILLIAM ST 7 FL
WEILL CORNELL INTERNAL MEDICINE ASSOCIATES
156 William St. 7th Floor
New York NY 10038-5327
Location: 156 William St. 7th Floor
New York NY 10038-5327
Visit Type:New Patient Visit

Instructions:

If for any reason you are unable to keep this appointment, please contact the office at
646-962-5665 to reschedule.

Sincerely,

Trenton Collier, MD

 **Weill Cornell** ⌐ **NewYork-Presbyterian**
Medicine ⌐ Lower Manhattan Hospital

**Trenton Collier, M.D.**

Assistant Professor of Clinical Medicine       156 William Street
Adult Internal Medicine                        7ᵗʰ Floor
Department of Medicine                         New York, NY 10038

T 646.962.5665
F 646.962.5687

Ex. 20

| Practice LLP, Job #81633: Run by KWASH on 05/16/2018. Job Title: PAYMENT RECEIPT | **Close** |
|---|---|

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
    ACCOUNT NUMBER: 3173010 / 1        RECEIPT DATE: 05/16/2018
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PATIENT: MARK GARNES
ADDRESS: 1355 PACIFIC STREET
         1B
         BROOKLYN NY 11216


* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

PRACTICE..........:      PROHEALTH CARE ASSOC, LLP
DATE OF SERVICE...:      05/16/2018
PLACE OF SERVICE..:      PROHEALTH URGENTCARE MEDICINE,BKHGT
PAYMENT RECEIVED..:      $40.00
PAYMENT TYPE......:      CO-PAYMENT (CASH)
PROVIDER..........:      BROOKLYN 26 COURT STREET URGENT CAR / PROVGRP: PROHEALTH URGENT CARE
CHARGE SLIP NUMBER:      21061196
BILLING AREA......:      0000
USER..............:      KWASH
```

Ex. 21

May 16, 2018

**Brooklyn Heights Urgent Care**
26 Court Street  Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

Page 1
Office Visit

Home: (347)421-1384

**MARK GARNES**
Male  DOB: 05/15/1963

**05/16/2018 - Office Visit: Urgent Care Visit_new_rm 7**
**Provider: Tanesha Lawrence, MD**
**Location of Care: Brooklyn Heights Urgent Care**

## Urgent Care Visit

**Accompanied By:** Patient
**Source:** Patient

## Vital Signs
| | |
|---|---|
| **Height:** | 69 inches |
| **Weight:** | 175 pounds |
| **Weight:** | 79.55 kg |
| **BMI:** | 25.84 |
| **BMI Classification:** Normal. | |

| | |
|---|---|
| **Pulse Rate:** | 92 /min |
| **Resp:** | 16 /min |
| **O2 Sat:** | 98 % |
| **Temp:** | 98.4 deg F |
| **Temp Site:** | oral |
| **BP sitting:** | 116 / 85 (L arm) |
| **BP Follow-Up:** Normal Blood Pressure reading – No follow-up required. | |

Vitals Entered By: Chanel Sanchez (May 16, 2018 3:21 PM)
Vitals Reviewed By: Tanesha Lawrence, MD (May 16, 2018 3:28 PM)

**CC:** Skin Complaint

**History of Present Illness:**
55 y.o. here for evaluation of scratches on face after domestic dispute with ex-girlfriend. Patient reports he
was driving in his car with a female friend--his ex-girlfriend who was standing on the corner jumped into
the car and began assaulting him. He sustained scratches to the L side of his face and R upper arm.  He
cleaned the wounds with peroxide. He is here for medical evaluation and for assessment for infection. He
denies fever, chills, n/v/d, CP, SOB, wheezing, HA, dizziness, focal weakness.

## Past Medical History
Unremarkable/No Significant Hx

## Past Surgical History
No surgeries

## Social History
Denies tobacco/ETOH and drug use

Ex. 22

**Brooklyn Heights Urgent Care**
26 Court Street  Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

May 16, 2018
Page 2
Office Visit

Home: (347)421-1384

**MARK GARNES**
Male  DOB: 05/15/1963

**Medications:**
Medications were reviewed with the patient during this visit.

No known medications.

**Allergies:**
Allergies were reviewed with the patient during this visit.

No known allergies.

**Problems:**
Problems were reviewed with the patient during this visit.

## Review of Systems

**General:**
　　　Denies recent illness, fever

**Eyes**
　　　Denies redness, discharge

**ENT**
　　　Denies sore throat, congestion, nasal discharge

**CV**
　　　Denies chest pain, palpitations, lightheadedness

**Resp**
　　　Denies cough, sputum production

**MSK**
　　　Denies joint pain, muscle aches

**GI**
　　　Denies nausea, vomiting, diarrhea

**GU**
　　　Denies urgency, frequency

**Skin**
　　　**Complains of abrasion**

**Neuro**
　　　Denies lightheadedness, dizziness

## Physical Exam

**General:**

Ex. 23

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

May 16, 2018
Page 3
Office Visit

**MARK GARNES**
Male  DOB: 05/15/1963

Home: (347)421-1384

|  | Patient in no acute distress. |
|---|---|
| **Head:** | Normocephalic |
| **Eyes:** | EOM intact, conjunctiva clear, no discharge. |
| **Ears:** | TMs and canals without erythema. |
| **Mouth/Throat:** | No erythema or exudate. |
| **Resp/Lungs:** | Clear to auscultation, no wheezing or rhonchi. |
| **CV:** | Regular rate and rhythm without murmurs. |
| **Skin:** | R upper arm with 1-2 minor abrasions above antecubital area |

L face= linear red abrasions just inferior to L eye going across L maxilla and around to L posterior scalp.
No open skin. No pus drainage, bleeding, warmth, swelling, tenderness

## Impression and Plan

### Problem 1:
**Problem:** ABRASION OF OTHER PART OF HEAD, INITIAL ENCOUNTER (ICD-910.0)
**Comment:** No signs of acute infection at this time
 Monitor for signs and symptom of infection including increasing redness, warmth, tenderness, swelling
-Continue wound care
-Monitor for self resolution

### Problem 2:
**Problem:** ASSAULT (ICD-E968.9)

### Patient Instructions
Wound Care

Wound care helps prevent pain and infection.
You may need a tetanus shot if:
- You cannot remember when you had your last tetanus shot.
- You have never had a tetanus shot.
- The injury broke your skin.
If you need a tetanus shot and you choose not to have one, you may get tetanus. Sickness from tetanus
can be serious.

HOME CARE
- Only take medicine as told by your doctor.
- Clean the wound daily with mild soap and water.
- Change any bandages (dressings) as told by your doctor.

*Ex. 24*

**Brooklyn Heights Urgent Care**
26 Court Street  Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

May 16, 2018
Page 4
Office Visit

## MARK GARNES
Male  DOB: 05/15/1963

Home: (347)421-1384

- Put medicated cream and a bandage on the wound as told by your doctor.
- Change the bandage if it gets wet, dirty, or starts to smell.
- Take showers. Do not take baths, swim, or do anything that puts your wound under water.
- Rest and raise (elevate) the wound until the pain and puffiness (swelling) are better.
- Keep all doctor visits as told.

GET HELP RIGHT AWAY IF:
- Yellowish-white fluid (pus) comes from the wound.
- Medicine does not lessen your pain.
- There is a red streak going away from the wound.
- You have a fever.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

Open Wound, Forearm

An open wound is a break in the skin because of an injury. An open wound can be a scrape, cut, or puncture to the skin. Good wound care will help to:
- Reduce pain.
- Prevent infection.
- Reduce scaring.

HOME CARE
- Rest and raise (elevate) the injured arm on a pillow. This will help keep the puffiness (swelling) down.
- Wash all dirt off the wound.
- Clean the wounds daily with gentle soap and water.
- Apply medicated cream after the wound has been cleaned or as told by your doctor.
- Apply a clean bandage (dressing) daily if necessary.

GET HELP RIGHT AWAY IF:
- There is increased redness or puffiness in or around the wound.
- Your pain increases.
- You or your child has a temperature by mouth above 102 degrees F (38.9 degrees C), not controlled by medicine.
- Your baby is older than 3 months with a rectal temperature of 102 degrees F (38.9 degrees C) or higher.
- Your baby is 3 months old or younger with a rectal temperature of 100.4 degrees F (38 degrees C) or higher.
- A yellowish white fluid (pus) comes from the wound.
- Your pain is not controlled with pain relievers.
- You cannot move or feel your fingers.
- There is red streaking of the skin that goes above or below the wound.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

AFTER DISCHARGE

Ex. 25

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

May 16, 2018
Page 5
Office Visit

**MARK GARNES**
Male  DOB: 05/15/1963

Home: (347)421-1384

After you are discharged, you must monitor your condition and watch for any worsening of symptoms. If you do not improve, or your symptoms worsen, do one of the following.

- contact your primary care physician
- return here for re evaluation
- call here to speak with a physician.

**Additional Instructions:** Today you were seen for abrasions to the face and arm after a reported assault. There are no  signs of acute infection at this time.  Please monitor for signs and symptoms of infection including increasing redness, warmth, tenderness, swelling, bleeding, etc.   If you experience any of these symptoms or any worsening symptoms please seek additional medical attention.

Patient advised to avoid assailant as much as possible

Discharge instructions printed at: May 16, 2018 3:41 PM

**Electronically Signed by Tanesha Lawrence, MD on 05/16/2018 at 3:42 PM**

Ex. 26

**Brooklyn Heights Urgent Care**
26 Court Street  Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

*May 16, 2018*
Page 1

# Patient Information – Wound care

**For:** MARK GARNES



**PROHEALTH URGENT CARE**
26 Court Street
Brooklyn, NY 11242
T: 347-335-0062
www.prohealthurgentcare.com

**Today's Provider:** Tanesha Lawrence, MD

### Wound Care

Wound care helps prevent pain and infection.
**You may need a tetanus shot if:**
- You cannot remember when you had your last tetanus shot.
- You have never had a tetanus shot.
- The injury broke your skin.

If you need a tetanus shot and you choose not to have one, you may get tetanus. Sickness from tetanus can be serious.

HOME CARE
- Only take medicine as told by your doctor.
- Clean the wound daily with mild soap and water.
- Change any bandages (*dressings*) as told by your doctor.
- Put medicated cream and a bandage on the wound as told by your doctor.
- Change the bandage if it gets wet, dirty, or starts to smell.
- Take showers. **Do not** take baths, swim, or do anything that puts your wound under water.
- Rest and raise (*elevate*) the wound until the pain and puffiness (*swelling*) are better.
- Keep all doctor visits as told.

GET HELP RIGHT AWAY IF:
- Yellowish-white fluid (*pus*) comes from the wound.
- Medicine does not lessen your pain.
- There is a red streak going away from the wound.
- You have a fever.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

Document Released: 09/26/2009 Document Revised: 03/11/2013 Document Reviewed: 04/22/2012
ExitCare® Patient Information ©2013 ExitCare, LLC.

### Open Wound, Forearm

An open wound is a break in the skin because of an injury. An open wound can be a scrape, cut, or puncture to the skin. Good wound care will help to:
- Reduce pain.
- Prevent infection.
- Reduce scaring.

HOME CARE
- Rest and raise (*elevate*) the injured arm on a pillow. This will help keep the puffiness (*swelling*) down.
- Wash all dirt off the wound.

Ex.27

**Brooklyn Heights Urgent Care**
26 Court Street   Brooklyn, NY 11242
347-335-0062  Fax: 347-335-0264

*May 16, 2018*
Page 2

## Patient Information - Wound care

**For:** MARK GARNES

- Clean the wounds daily with gentle soap and water.
- Apply medicated cream after the wound has been cleaned or as told by your doctor.
- Apply a clean bandage (*dressing*) daily if necessary.

GET HELP RIGHT AWAY IF:
- There is increased redness or puffiness in or around the wound.
- Your pain increases.
- You or your child has a temperature by mouth above 102° F (38.9° C), not controlled by medicine.
- Your baby is older than 3 months with a rectal temperature of 102° F (38.9° C) or higher.
- **Your baby is 3 months old or younger with a rectal temperature of 100.4° F (38° C) or higher.**
- A yellowish white fluid (*pus*) comes from the wound.
- Your pain is not controlled with pain relievers.
- You cannot move or feel your fingers.
- There is red streaking of the skin that goes above or below the wound.

MAKE SURE YOU:
- Understand these instructions.
- Will watch your condition.
- Will get help right away if you are not doing well or get worse.

### MEDICATIONS AND FOLLOW UP

### AFTER DISCHARGE

After you are discharged, you must monitor your condition and watch for any worsening of symptoms. If you do not improve, or your symptoms worsen, do one of the following.

-contact your primary care physician
-return here for re evaluation
-call here at 347-335-0062 to speak with a physician.

**Additional Instructions:**
Today you were seen for abrasions to the face and arm after a reported assault. There are no signs of acute infection at this time.  Please monitor for signs and symptoms of infection including increasing redness, warmth, tenderness, swelling, bleeding, etc.   If you experience any of these symptoms or any worsening symptoms please seek additional medical attention.

Patient advised to avoid assailant as much as possible

Ex. 28

Certificate #: U-000001616-N

Page 1 of 1



# KINGS CRIMINAL COURT

120 Schermerhorn St., Brooklyn, NY 11201

Phone: (646) 386-4500  Fax: (718) 643-7733

**NO FEE**

Non-Public
Version

The People of the State of New York

vs.

**Mark Garnes**

Defendant DOB: **05/15/1963**

**Certificate of Disposition**
Docket Number:          **CR-023543-18KN**
Legacy Docket Number:   **2018KN023543**

Arrest Date: **05/15/2018**     Arraignment Date: **05/16/2018**

THIS IS TO CERTIFY that the undersigned has examined the files of the **Kings Criminal Court** concerning the above entitled matter and finds the following:

| Count | Arraignment Charge | Charge Weight | Disposition | Disposition Date |
|-------|-------------------|---------------|-------------|------------------|
| 1 | PL 120.00 01 AM Aslt 3-W/Int Cause Phys Injury **SEALED 160.50** | AM | Dismissed (Speedy Trial (CPL 170.30 (1)(e)), Sealed 160.50) | 08/17/2018 |
| 2 | PL 110-120.00 01 BM Attempted Aslt 3-W/Int Cause Phys Injury **SEALED 160.50** | BM | Dismissed (Speedy Trial (CPL 170.30 (1)(e)), Sealed 160.50) | 08/17/2018 |
| 3 | PL 120.15 BM Menacing-3rd **SEALED 160.50** | BM | Dismissed (Speedy Trial (CPL 170.30 (1)(e)), Sealed 160.50) | 08/17/2018 |
| 4 | PL 240.26 01 V Harassment-2nd:Physical Cntact **SEALED 160.50** | V | Dismissed (Speedy Trial (CPL 170.30 (1)(e)), Sealed 160.50) | 08/17/2018 |

Dated:  **September 17, 2018**

**Chief Clerk/Clerk of the Court**

## CAUTION: THIS DOCUMENT IS NOT OFFICIAL UNLESS EMBOSSED WITH THE COURT SEAL

It shall be an unlawful discriminatory practice, unless specifically required or permitted by statute, for any person, agency, bureau, corporation or association, including the state and any political subdivision thereof, to make any inquiry about, whether in any form of application or otherwise, or to act upon adversely to the individual involved, any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law, in connection with the licensing, employment or providing of credit or insurance to such individual; provided, further, that no person shall be required to divulge information pertaining to any arrest or criminal accusation of such individual not then pending against that individual which was followed by a termination of that criminal action or proceeding in favor of such individual, as defined in subdivision two of section 160.50 of the criminal procedure law, or by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.55 of the criminal procedure law, or by a conviction which is sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. The provisions of this subdivision shall not apply to the licensing activities of governmental bodies in relation to the regulation of guns, firearms and other deadly weapons or in relation to an application for employment as a police officer or peace officer as those terms are defined in subdivisions thirty-three and thirty-four of section 1.20 of the criminal procedure law; provided further that the provisions of this subdivision shall not apply to an application for employment or membership in any law enforcement agency with respect to any arrest or criminal accusation which was followed by a youthful offender adjudication, as defined in subdivision one of section 720.35 of the criminal procedure law, or by a conviction for a violation sealed pursuant to section 160.58 or 160.59 of the criminal procedure law. [Executive Law § 296 (16)] Arraignment charges may not be the same as the original arrest charges.

CPL 160.50:          All official records (excluding published court decisions or opinions or records and briefs on appeal) related to the arrest or prosecution on file with the Division of Criminal Justice Services, any court, police agency or prosecutor's office shall not be available to any person or public or private agency.



SEALED

pursuant to Section 160.50 of the CPL

Ex. 29

DISPOSITION OF DISCIPLINARY

COMMAND
PRESENT DATE OF
RANK NAME TAX HA HAHGES
DT3 DOUGLAS CARE 907 77 0 QUAD 05/20/2011

1. WRONGFULLY CLASSIFIED A COMPLAINT REPORT INCORRECTLY.GUILTY
PENALTY: DATE 9F 06/05/2012

ForfEIKure of fifteen (15) vacatlon days.

2009-2314 Fo KEVIN MORRIS 944. TD 4 IAD 10/25/2009

1. WHILE nu-ry A DEPARTMENT INVESTIGATION oF A POLICE INCIDENT.GUILTV

PENALTY: DATE 9F 06/05/2012

Forfeiture of twenty (20) vacation days.

2011-4509 PO KEVIN MORRIS 9448- TD 4 IAE 11/08/2011

1. FAILED To NOTIFY COMMANDING OFFICER OF CHANGES To RESIDENTIAL
ADDRESS.GUILTV

PENALTY: DATE 9F 06/05/2012
'ee caseb 2009-2314 for penalty

2011-4247 1212 EEATRICE EALAGUEN 9140- MAN.CT. IAD 06/02/2011
SECT.

SPECIFICATIONSIDISPOSITIONS

1. WRONGFULLY REPORTED AND FILED A FALSE COMPLAINT REPORT ALLEGING A BURGLARY
AND
AN ASSAULT IN SAID RESIDENCE.GUILTY

2. WRONGFULLY BROKE A GLASS DOOR BELONGING To ANOTHER INDIVIDUAL KNOWN To THE

DEPARTMENT .GUILTY
PENALTY: DATE OF 06/05/2012

Dismissal from the New York City Police Department; however, judgment is
suspended and
respondent will be placed on Dismissal Probation for a period one (1) year.
Forfeiture

1

E₁.3υ

of time/leave balances, Service retirement on completion of twenty (20)
years, thirty (30]
vacation days.

- 5 - ED. 218

Ex. 3Da

Clerk of the Court
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

Mark Gomes
P.O. Box 140363
Brooklyn, NY 11214





IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

Mark Barnes

_____

*(Write the full name of each plaintiff who is filing
this complaint. If the names of all the plaintiffs
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names.)*

-against-

City of New York, New York
City Police Department, Detective
Douglas W. Carr, Sheill# 5726

*(Write the full name of each defendant who is
being sued. If the names of all the defendants
cannot fit in the space above, please write "see
attached" in the space and attach an additional
page with the full list of names. Do not include
addresses here.)*

**Complaint for Violation of Civil
Rights**
(Non-Prisoner Complaint)

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial:   ☑ Yes   ☐ No
*(check one)*

RECEIVED
JUL 23 2020
PRO SE OFFICE

---

## NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting
from public access to electronic court files. Under this rule, papers filed with the court should
*not* contain: an individual's full social security number or full birth date; the full name of a
person known to be a minor; or a complete financial account number. A filing may include
*only*: the last four digits of a social security number; the year of an individual's birth; a
minor's initials; and the last four digits of a financial account number.

Plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other
materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an
application to proceed in *forma pauperis*.

**I.     The Parties to This Complaint**

**A.     The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

Name                       Mark Garnes
Street Address             1205 Atlantic Ave., Unit 363
City and County            Brooklyn, N.Y. - Kings County
State and Zip Code         New York  11216
Telephone Number           732-799-8862
E-mail Address             _____

**B.     The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1
Name                       City of New York
Job or Title               Office of the Comptroller
(if known)
Street Address             One Centre Street
City and County            New York - New York
State and Zip Code         New York  10007
Telephone Number           212-669-3916
E-mail Address             _____
(if known)

Defendant No. 2

    Name    New York City Police Department

    Job or Title
    (if known)

    Street Address    One Police Plaza

    City and County    New York - New York

    State and Zip Code    New York    10038

    Telephone Number    (146- 610- 5000

    E-mail Address
    (if known)


Defendant No. 3

    Name    Detective Douglas W. Carr

    Job or Title    Detective
    (if known)

    Street Address    127 Utica Ave. (77th Precinct)

    City and County    Brooklyn - Kings County

    State and Zip Code    New York  11213

    Telephone Number

    E-mail Address
    (if known)


Defendant No. 4

    Name

    Job or Title
    (if known)

    Street Address

    City and County

    State and Zip Code

    Telephone Number

    E-mail Address
    (if known)

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

☑   State or local officials (a § 1983 claim)

☐   Federal officials (a *Bivens* claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Fourth, Fifth, Fourteenth Amendments

C.   Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights.  If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

D.   Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.

PLEASE SEE ATTACHED COMPLAINT OF PLAINTIFF (Pages 1-20)

4

III.   **Statement of Claim**

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   Where did the events giving rise to your claim(s) occur?

Brooklyn, N.Y. at 127 Utica Ave, the 77th Precinct

B.   What date and approximate time did the events giving rise to your claim(s) occur?

May 15th, 2018 at approximately 4:30 p.m.

C.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Falsely arrested, illegally searched and seized of person and property without due process of law based upon discriminately using prior criminal history if sealed and unsealed arrests, convictions, prosecutions for criminal activity

SEE ATTACHED COMPLAINT FOR FULL OUTLINE.

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

SEE ATTACHED COMPLAINT (Plaintiff's)
AT 1 thru 20

## V.   Relief

State briefly what you want the court to do for you.   Make no legal arguments. Do not cite any cases or statutes.  If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

SEE ATTACHED COMPLAINT (Plaintiff's)
at -18 to 20

## VI.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.**     **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: __2 3 d__ , 20_20_.

Signature of Plaintiff __Mark Garnes__

Printed Name of Plaintiff __Mark Garnes__



**United States Attorney's Office**
*Eastern District of New York*

## Civil Rights Complaint Form

The United States Attorney's Office is charged with enforcing the federal civil rights laws within the Eastern District of New York, which includes Brooklyn, Queens, Staten Island in New York City and Nassau and Suffolk counties in Long Island.    We therefore welcome information that brings to our attention possible violations of our nations civil rights laws.

| Person Filing Complaint: | Person / Entity you are filing complaint about: |
|---|---|
| Mark Garnes | |
| Name | Name of Person or Entity |
| 1205 Atlantic Ave., Unit 363 | |
| Address 1 | Address 1 |
| P.O.Box 160363 | |
| Address 2 | Address 2 |
| Brooklyn, NY    11216 | |
| City, State    Zip | City, State    Zip |
| Kings    732-799-8662 | |
| County    Phone | County    Phone |
| | |
| E-mail Address | |

**Nature of Alleged Civil Rights Violation:**

[ ] Disability Rights or Access          [ ] Housing Discrimination

[ ] Education          [X] Police / Law Enforcement Misconduct

[ ] Employment Discrimination          [ ] Prisoner / Rights of other Institutional Persons

[ ] Bias / Hate Crimes          [ ] Voting Rights

[ ] Other (specify) :

Please clearly describe the incident.   Include as much information as possible, including the date, place, nature of the incident, contact information for any witnesses and any relevant documents (do not send original documents):

PLEASE SEE THE ATTACHED
COMPLAINT, ATTACHMENTS, EXHIBITS

*(Attach additional page(s) if necessary)*

**Are you represented by an attorney in this matter?**

[ ] Yes     [X] No          If yes, please provide name of attorney, address and phone number.

Firm Name _____

Name of Attorney _____     Phone _____

Address

**Have you filed a lawsuit concerning this matter?** [ ] Yes     [X] No     If yes, please provide the case name, court in which the case was filed, and the status of the case.

**Have you filed a complaint about this matter with any other federal, state or local agency?**

[ ✓ ] Yes     [ ] No     If yes, please list the agency, contact person and phone number.

— Civilian Complaint Review Board
— Office of the Comptroller

**The volume of complaints prevents us from responding to every complaint we receive.   However, be assured that we will carefully consider the information you have provided us to determine whether a violation of the federal civil rights laws may have occurred and if so, whether this Office has enforcement authority with respect to such a violation.   If we determine that your complaint raises a potential violation of federal civil rights laws that would be within the jurisdiction of this Office to investigate and /or that further information from you is necessary for our investigation, you will be contacted.**

SUBMITTING THIS COMPLAINT FORM HAS NO EFFECT ON ANY STATUTE OF LIMITATIONS OR OTHER FILING REQUIREMENTS THAT MIGHT APPLY TO ANY CLAIM YOU MAY HAVE. FURTHER, BY SUBMITTING THIS CLAIM YOU HAVE NOT COMMENCED A LAWSUIT OR OTHER LEGAL PROCEEDING, AND THIS OFFICE HAS NOT INITIATED A SUIT OR PROCEEDING ON YOUR BEHALF.  IF YOU BELIEVE YOUR CIVIL RIGHTS HAVE BEEN VIOLATED, AND INTEND TO BRING A LAWSUIT, YOU SHOULD ALSO CONTACT A PRIVATE ATTORNEY.

Signature: _Mark Barnes_   Date: _July 23, 2020_

Send completed complaint form and relevant documents to the following address:

Attn: Civil Rights Chief, Civil Division
United States Attorney's Office
271 Cadman Plaza East
Brooklyn, New York 11201
(718) 254-7000 (Phone)
(718) 254-6081 (Fax)
(718) 254-6180 (Fax)
Email: USANYE-CivilRights@usdoj.gov

FILED
2020 JUL 23  PM 2:56

Mark Garnes
P.O. Box 160363
Bklyn, NY 11216

Clerk of the Court
United States District Court
Eastern District of New York
225 Cadman Plaza
Brooklyn, N.Y.
11201